No. 24-10760

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

SCOTT MCNUTT, HOBBY DISTILLERS ASSOCIATION,
*Plaintiffs-Appellees*,

RICK MORRIS, THOMAS O. COWDREY III, JOHN PRINCE III,
*Plaintiffs-Cross-Appellants*,

v.

U.S. DEPARTMENT OF JUSTICE,
ALCOHOL AND TOBACCO TAX AND TRADE BUREAU,
*Defendants-Appellants/Cross-Appellees*.

On Appeal from the United States District Court
for the Northern District of Texas

**PLAINTIFFS' OPPOSITION TO DEFENDANTS-APPELLANTS'
MOTION TO EXPEDITE APPEAL**

Devin Watkins
Dan Greenberg
COMPETITIVE ENTERPRISE INSTITUTE
1310 L Street NW, 7th Floor
Washington, DC 20005
(202) 331-1010
devin.watkins@cei.org

*Counsel for Plaintiffs*

## CERTIFICATE OF INTERESTED PERSONS

Counsel certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Plaintiffs:**
Hobby Distillers Association
Scott McNutt
Rick Morris
Thomas O. Cowdrey III
John Princie III

**Counsel for Plaintiffs:**
Devin Watkins
Dan Greenberg

**Counsel for Plaintiffs is Employed by:**
Competitive Enterprise Institute

**Defendants:**
U.S. Department of Justice
Alcohol and Tobacco Tax Trade Bureau

**Counsel for Defendants:**
Elizabeth Murray Tulis
Sarah Jane Clark

/s/ *Devin Watkins*
Devin Watkins

## SUMMARY

Defendants-appellants have asked this Court to expedite this appeal's briefing and oral argument schedule. Defendants-appellants must show good cause to persuade this Court to expedite matters. Plaintiffs[1] do not oppose a faster schedule for oral argument; however, Plaintiffs do oppose expediting the appellate briefing schedule, essentially because the reasons that Defendants-appellants provide for a departure from normal briefing appear weak and because there are strong reasons not to rush such an important case.

## BACKGROUND

Plaintiffs have successfully challenged the constitutionality of the federal ban on at-home distilling. Plaintiffs believe that the statute at issue is unconstitutional: it invites the federal government to act in a manner that is incompatible with the constitutionally limited powers set out in the U.S. Constitution and to make decisions that are properly left to state governments.

---

[1] In this brief, we use the label "plaintiffs" to denote our clients for reasons of concision; technically, our clients include both "plaintiffs-appellants" and "plaintiffs-appellees."

In March of 2024, Plaintiffs sought a preliminary injunction to prevent enforcement of this unconstitutional prohibition. The district court, which heard this motion, converted it to a motion for summary judgment under FRCP 65(a)(1) without objection from any party.

The district court then found that the ban on at-home distilling was beyond the enumerated powers of Congress to enact. Although Defendants-appellants argued that the ban was permissible under either the Constitution's taxing power or commerce power, the district court rejected this argument and issued the injunction that Plaintiffs requested. The district court also stayed its own injunction "for fourteen days from the date of this Order to allow the federal government to seek emergency relief at the appellate level, should they choose to do so." *Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau,* No. 4:23-CV-1221-P, ECF No. 49 (N.D. Tex. July 10, 2024). Notably, the government did not accept the district court's invitation to seek such emergency relief by requesting a stay.

At present, the only consequence of the injunction (upon information and belief) is that Plaintiffs are now allowed to apply for the federal permit that is required to legally distill beverage alcohol

near their home; previously, the government summarily rejected such requests. It will take some time for the government to process each permit request in what is apparently an arduous approval process: the government must ensure that the permits it grants meet the many other statutory requirements that are not challenged in this litigation.

## ARGUMENT

This case concerns the scope of the federal government's powers. The investigation of those powers is at the core of the judiciary's expertise and responsibility. "[T]he judicial department has imposed upon it by the constitution, the solemn duty to interpret the laws, in the last resort; and however disagreeable that duty may be, in cases where its own judgment shall differ from that of other high functionaries." *United States v. Dickson*, 40 U.S. 141, 162 (1841). As a general matter, judicial deliberation about complex constitutional matters should not be unduly hurried. "[I]t is both unnecessary and profoundly unwise for the Court to order expedited briefing" in such circumstances, and therefore "consideration of them surely should be undertaken with the utmost deliberation, rather than unseemly haste." *Felker v. Turpin*, 517 U.S.

1182 (1996) (Stevens, J., joined by Souter, Ginsberg, Breyer, JJ., dissenting from granting of a motion to expedite).

The matter at hand is anything but a typical case or controversy. Plaintiffs' preference for a normal briefing schedule, not a shorter one, is especially justified by this case's subject matter and its atypical research demands. Some judges have argued that originalist historical and constitutional analysis, by its very nature, is in significant tension with the limited time available in a normal briefing schedule. *Def. Distributed v. Bonta*, No. CV 22-6200-GW-AGRX, 2022 WL 15524977, at *5 n.9 (C.D. Cal. Oct. 21, 2022) adopted, No. CV 22-6200-GW-AGRX, 2022 WL 15524983 (C.D. Cal. Oct. 24, 2022) ("[T]here is no possibility this Court would expect Defendants to be able to present the type of historical analysis conducted in *Bruen* on 31 days' notice (or even 54 days' notice)."). The scheduling compression that defendants-appellants request would, in this case, constrain the ability of litigants to perform necessary research.

Defendants-appellants argue that there are two reasons that there is good cause to expedite this appeal. Both arguments fail.

4

Defendant-appellants first suggest that there is good cause for an expedited appeal because the parties have an interest in resolving the matter expeditiously. Of course it is true that the parties have an interest in resolving the matter expeditiously, but that is because most or all parties have some kind of interest in resolving most or all cases expeditiously. Indeed, as a general matter, most litigants want most cases to be resolved as fast as they reasonably can be. But that truism proves nothing here. For Defendant-appellants' argument to work, they would have to show—in order to demonstrate good cause—that this matter deserves to be resolved faster than *other* matters before this Court. That would be difficult to do, and appellants certainly haven't done it—presumably because they are aware that other parties and other cases before this Court deserve equally expeditious resolution.

Defendant-appellants' second argument is that because the injunction at issue will lead to more applicants for permits and thus result in slower permit processing, "[a]ll applicants will thus benefit from expedited resolution of this appeal." The word "thus" cannot bear the load the government wants to place on it here, because that second argument is a non sequitur: speedy resolution of this matter won't make

5

the government's permit processing move any faster. If the Plaintiffs win, the applicants will still have to wait just as long for the government to process their permit applications (the lower court's injunction certainly didn't include increased staffing or funding for permit processing operations). If the Plaintiffs lose, it is highly unclear how the applicants will benefit from expedited processing at all, because the government will have disposed of the right to apply for a permit that those applicants previously had. And of course all of this discussion of the applicants' gains from expedited resolution has an air of unreality, because there is a live prospect that whichever party is dissatisfied with the resolution of this appeal—whether expedited or not—will immediately appeal again. Obviously, that subsequent appeal could once again postpone this matter's resolution and eliminate the gains that would supposedly justify a faster briefing schedule.

In short, the Defendants have supplied no good reason to accelerate the briefing schedule. However, there are good reasons not to: Plaintiffs have already been contacted by multiple outside organizations and public officials eager to file amicus briefs to assist the Court in its deliberations in this case. Any acceleration of the briefing

schedule would make it more difficult for outside experts to provide such assistance.

Plaintiffs' attorneys are mindful that cooperation and coordination between adversarial attorneys in our system is favored. As a matter of professional courtesy, we do not ordinarily oppose motions from adversary parties that appear reasonable. For instance, when the government requested a delay in briefing deadlines for this case at the district court level, we did not oppose that motion even though we were just as eager to move the action forward then as the government apparently is now. But this motion does not appear reasonable to us; furthermore, this motion does not appear to advance the goals that are supposed to justify it. However, if the government wishes to accelerate the date that its opening brief is due or the date oral argument is conducted, Plaintiffs have no objection.

## CONCLUSION

Defendant-appellants have failed to show the good cause they need to accelerate the briefing schedule. Plaintiffs respectfully oppose the portion of Defendant-appellants' motion that asks this Court to divert from its normal appellate briefing schedule.

Dated: August 28, 2024

Respectfully submitted,

/s/ *Devin Watkins*
Devin Watkins
Dan Greenberg
COMPETITIVE ENTERPRISE INSTITUTE
1310 L Street NW, 7th Floor
Washington, DC 20005
(202) 331-1010
devin.watkins@cei.org

*Counsel for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

This motion complies with: (1) the type-volume limitation of Federal Rules of Appellate Procedure 27(d)(2)(A) because it contains 1307 words, excluding the parts exempted by Rule 32(f); and (2) the typeface and type style requirements of Rule 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word (the program used for the word count).

/s/ *Devin Watkins*
Devin Watkins

**CERTIFICATE OF SERVICE**

I, Charles Devin Watkins, hereby certify that this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1.

/s/ *Devin Watkins*
Devin Watkins