No. 24-10760

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

SCOTT MCNUTT,

Plaintiff-Appellee,

RICK MORRIS; HOBBY DISTILLERS ASSOCIATION; THOMAS O. COWDREY, III;
JOHN PRINCE, III,

Plaintiffs-Appellees/Cross-Appellants,

v.

US DEPARTMENT OF JUSTICE; ALCOHOL AND TOBACCO TAX AND TRADE
BUREAU, A BUREAU OF THE U.S. DEPARTMENT OF THE TREASURY,

Defendants-Appellants/Cross-Appellees.

On Appeal from the United States District Court
for the Northern District of Texas

## OPENING BRIEF FOR DEFENDANTS-APPELLANTS U.S. DEPARTMENT
## OF JUSTICE AND ALCOHOL AND TOBACCO TAX AND TRADE BUREAU

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

LEIGHA SIMONTON
*United States Attorney*

MARK B. STERN
SARAH CLARK GRIFFIN
*Attorneys, Appellate Staff*
*Civil Division, Room 7216*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-8727*

# CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required, as defendants-appellants are all governmental parties. 5th Cir. R. 28.2.1.

*s/ Sarah Clark Griffin*
Sarah Clark Griffin

## STATEMENT REGARDING ORAL ARGUMENT

The government respectfully requests oral argument. The district court declared unconstitutional two long-standing statutory provisions and permanently enjoined their application to the Hobby Distillers Association and its members. Given the importance of the issues raised, the government believes that oral argument would assist the Court.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES

STATEMENT OF JURISDICTION ................................................................ 1

STATEMENT OF THE ISSUES ................................................................... 1

STATEMENT OF THE CASE ...................................................................... 2

      A.    Statutory Framework ................................................................ 2

      B.    Factual and Procedural Background ........................................... 4

SUMMARY OF ARGUMENT ...................................................................... 6

STANDARD OF REVIEW ........................................................................... 9

ARGUMENT ........................................................................................... 10

I.     Plaintiffs Lack Standing ...................................................................... 10

II.    The Challenged Statutory Provisions Are a Necessary and Proper
       Exercise of Congress's Tax Power. ...................................................... 14

CONCLUSION ........................................................................................ 24

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                                     **Page(s)**

*Babbitt v. United Farm Workers Nat'l Union*,
    442 U.S. 289 (1979) ........................................................................... 10

*Borden v. Allstate Ins. Co.*,
    589 F.3d 168 (5th Cir. 2009) ............................................................... 9

*California v. Texas*,
    593 U.S. 659 (2021) ........................................................................... 10

*Di Santo v. United States*,
    93 F.2d 948 (6th Cir. 1937) ................................................................ 19

*Felsenheld v. United States*,
    186 U.S. 126 (1902) ........................................................................... 18

*Hunt v. Washington State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) ........................................................................... 13

*Jinks v. Richland County*,
    538 U.S. 456 (2003) ........................................................................... 21

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................. 6, 10, 12

*McCulloch v. Maryland*,
    17 U.S. (4 Wheat.) 316 (1819) ........................................ 8, 14-15, 15, 21, 22

*Med-Cert Home Care, LLC v. Becerra*,
    19 F.4th 828 (5th Cir. 2021) ............................................................... 10

*National Fed'n of Indep. Bus. v. Sebelius*,
    567 U.S. 519 (2012) ................................................................. 8, 14, 15

*Stilinovic v. United States*,
    336 F.2d 862 (8th Cir. 1964) .............................................................. 19

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ........................................................................... 10

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ........................................................................... 11

*United States v. Comstock*,
   560 U.S. 126 (2010) ................................................................ 8, 15, 21, 22

*United States v. Goldberg*,
   225 F.2d 180 (8th Cir. 1955) ........................................... 8-9, 17, 19

*United States v. Harris*,
   106 U.S. 629 (1883) ................................................................... 15

*United States v. Ulrici*,
   111 U.S. 38 (1884) ..................................................................... 16

*Zimmerman v. City of Austin*,
   881 F.3d 378 (5th Cir. 2018) ..................................................... 12

## U.S. Constitution:

Art. I, § 8, cl. 1 ............................................................................ 14

Art. I, § 8, cl. 1 ............................................................................ 18

## Statutes:

Act of July 20, 1868, ch. 186, 15 Stat. 125:
   § 5, 15 Stat. at 126 ................................................................... 3
   § 6, 15 Stat. at 126-27 ............................................................ 16
   § 9, 15 Stat. at 128-29 ............................................................ 16
   § 12, 15 Stat. at 130 ............................................................ 3, 16
   § 14, 15 Stat. at 130 ................................................................. 3

Act of June 18, 1934, ch. 611, 48 Stat. 1020, 1020
   (then codified at 26 U.S.C. § 1162a (1934) ........................... 19

26 U.S.C. § 5001(a)(1) ............................................................... 15

26 U.S.C. § 5001(b) ............................................................... 2, 15

26 U.S.C. § 5002(a)(1) ................................................................. 3

26 U.S.C. § 5002(a)(10)-(11) ..................................................... 15

26 U.S.C. § 5004(a)(1) ............................................................... 15

26 U.S.C. § 5005(b)(1) ............................................................ 15

26 U.S.C. §§ 5171-5173 ......................................................... 23

26 U.S.C. § 5171(c) .................................................................. 3

26 U.S.C. § 5171(d) .................................................................. 4

26 U.S.C. § 5178 ................................................................. 8, 16

26 U.S.C. §§ 5178-5179 .......................................................... 23

26 U.S.C. § 5178(a)(1)(A) ................................................ 4, 8, 17

26 U.S.C. § 5178(a)(1)(B) .......... 1, 2, 3, 4, 5, 6, 7, 11, 12, 14, 17, 20

26 U.S.C. § 5178(a)(1)(C) ................................................... 8, 17

26 U.S.C. § 5178(a)(2)(B) ................................................ 9, 18, 22

26 U.S.C. § 5178(a)(2)(B)-(C) ................................................... 4

26 U.S.C. § 5178(a)(2)(C) ..................................................... 9, 22

26 U.S.C. § 5178(a)(2)(C)(ii) ................................................... 17

26 U.S.C. § 5178(b) ............................................................ 3, 17

26 U.S.C. § 5179 ...................................................................... 4

26 U.S.C. § 5203(b) ............................................................ 4, 18

26 U.S.C. § 5222(a)(1) ............................................................ 18

26 U.S.C. § 5301(c)(1) ............................................................ 19

26 U.S.C. § 5552-5553 ........................................................... 23,

26 U.S.C. § 5601(a)(6) ................................... 1, 2, 3, 4, 5, 6, 12

27 U.S.C. §§ 203-204 ............................................................ 4, 23

28 U.S.C. § 1291 ...................................................................... 1

28 U.S.C. § 1331 ...................................................................... 1

28 U.S.C. § 1346(a)(2) ........................................................................................ 1

## Legislative Material:

Cong. Globe, 39th Cong., 1st Sess. 2839 (1866) ...................................... 2-3, 16

H.R. Rep. No. 39-24 (1867) ........................................................... 2, 16

S. Rep. No. 85-2090 (1958) ................................................................ 19

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. §§ 1331 and 1346(a)(2). ROA.13. The district court dismissed three plaintiffs for lack of standing and granted a permanent injunction and declaratory relief to the remaining two plaintiffs on July 10, 2024. ROA.606. The district court entered final judgment on July 11, 2024. ROA.608. The government timely appealed on August 14, 2024. ROA.609. The plaintiffs who were dismissed for lack of standing and the Hobby Distillers Association cross-appealed on August 19, 2024. ROA.611. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

For over 150 years, Congress has limited the locations where distilled spirits may be produced, including on certain parts of residential premises. As is relevant here, distilled spirits may not be produced "in any dwelling house" or "in any shed, yard, or inclosure connected with any dwelling house." 26 U.S.C. § 5178(a)(1)(B). Using, or possessing with the intent to use, a still in a forbidden location is a felony. *Id.* § 5601(a)(6). Congress enacted this restriction in response to widespread evasion of the distilled spirits tax.

Plaintiffs—the Hobby Distillers Association (the Association) and four individual members—challenged these long-standing provisions. The district court concluded that one of the Association's members had standing to bring a pre-enforcement challenge and that the Association therefore had demonstrated

associational standing. The court then declared that the provisions were outside Congress's authority and enjoined their application to the Association's members. Specifically, the court reasoned that, because tax liability does not arise until the spirits are distilled, Congress therefore lacks authority to regulate the placement of the still.

The questions presented are:

1. Whether the district court erred in holding that plaintiffs Scott McNutt and the Association have standing to challenge the constitutionality of 26 U.S.C. §§ 5601(a)(6) and 5178(a)(1)(B) and in invalidating parts of those provisions that plaintiffs did not challenge.

2. Whether the challenged provisions are necessary and proper for executing Congress's taxing power.

## STATEMENT OF THE CASE

### A.    Statutory Framework

Distilled spirits are subject to an excise tax, which attaches as soon as the distilled spirits are created. 26 U.S.C. § 5001(b). The Alcohol and Tobacco Tax and Trade Bureau (the Bureau) collects this excise tax and enforces laws regulating the production and distribution of distilled spirits.

At issue here is a restriction imposed in 1868, which limits the production of distilled spirits in certain locations. Congress enacted this restriction pursuant to its taxing power to prevent evasion of the distilled spirits tax through the concealment of distilling operations.  *See* ROA.218-19 (H.R. Rep. No. 39-24, at 1-2 (1867)); Cong.

Globe, 39th Cong., 1st Sess. 2839, 2841 (1866); Act of July 20, 1868, ch. 186, § 12, 15 Stat. 125, 130.

Specifically, the location restriction, now codified at 26 U.S.C. § 5178(a)(1)(B), provides that a distilled spirits plant may not be located (1) "in any dwelling house," (2) "in any shed, yard, or inclosure connected with any dwelling house," (3) "on board any vessel or boat," (4) "on premises where beer or wine is made or produced, or liquors of any description are retailed," or (5) "on premises where any other business is carried on (except when authorized under subsection (b))." 26 U.S.C. § 5178(a)(1)(B).[1] A person who "uses, or possesses with intent to use, any still, boiler, or other utensil for the purpose of producing distilled spirits" in a prohibited location is subject to a fine of up to $10,000, imprisonment of up to five years, or both. *Id.* § 5601(a)(6).

Distillers must comply with a number of other statutory requirements, many of which were first enacted at the same time as the restriction directly at issue. *See, e.g.*, Act of July 20, 1868, ch. 186, §§ 5, 14, 15 Stat. at 126, 130 (requiring anyone possessing a still intended for producing spirits to register that still with, and obtain a permit from, the applicable tax assessor). For example, a distiller must register both his still and his distilled spirits plant with the federal government. 26 U.S.C. § 5171(c) (registration of

---

[1] The Secretary of the Treasury may authorize the carrying on of other business on the premises of a distilled spirits plant if the Secretary finds that doing so "will not jeopardize the revenue." 26 U.S.C. § 5178(b). A "distilled spirits plant" is "an establishment which is qualified under subchapter B to perform any distilled spirits operation." *Id.* § 5002(a)(1).

distilled spirits plant); *id.* § 5179 (registration of still). A distiller must also obtain a distilling permit from the Bureau. *See* 27 U.S.C. §§ 203-204 (permit for distilling beverage spirits); 26 U.S.C. § 5171(d) (permit for distilling other spirits). The distilling system must be constructed in such a way "as to prevent the unauthorized removal of distilled spirits" before the tax is calculated and must be secured in the way deemed necessary by the Secretary "to facilitate inspection and afford adequate security to the revenue." 26 U.S.C. § 5178(a)(2)(B)-(C); *see also id.* § 5178(a)(1)(A). And internal revenue officers may enter a distilled spirits plant at any time to examine it and take inventory as necessary. *Id.* § 5203(b).

## B.    Factual and Procedural Background

**1.** The Hobby Distillers Association is a Texas-based organization that advocates for the legalization of at-home distilling for beverage consumption. ROA.109. The Association and four of its approximately 1,300 members filed a pre-enforcement challenge, arguing that the location restriction in 26 U.S.C. §§ 5601(a)(6) and 5178(a)(1)(B) exceeds Congress's powers. ROA.13. Plaintiffs sought a declaration to that effect and an injunction preventing defendants from enforcing the provisions and any subsidiary regulations. ROA.21. The district court then consolidated plaintiffs' preliminary injunction motion with the trial on the merits. ROA.515.

**2.** The district court dismissed three of the four individual plaintiffs for lack of standing on the basis that they had not established a credible threat of prosecution under the challenged provisions. ROA.582. The remaining individual plaintiff, Scott

McNutt, had received a generic notice from the Bureau in 2014, informing him that unlawful production of distilled spirits is a criminal offense. ROA.582; *see also* ROA.216. This notice, the district court concluded, constituted a credible threat of prosecution sufficient to support McNutt's pre-enforcement challenge. ROA.582. The district court went on to conclude that the Association had associational standing through plaintiff McNutt. ROA.585-86.

The district court then declared that 26 U.S.C. §§ 5601(a)(6) and 5178(a)(1)(B) exceed Congress's authority to enact laws necessary and proper to effectuate its taxing power. ROA.590-97. The court stated that Congress's taxing power is not "authoritative" until "a tax liability arises." ROA.595. Here, the tax liability does not arise until the distilled spirits are produced. Because the placement of a still precedes the production of the spirit, the district court reasoned, Congress cannot regulate the placement of the still. ROA.595.

The district court also held that the challenged provisions are beyond Congress's power under the Commerce Clause. The court determined that "distilling spirits at home for personal consumption" is a "purely local and non-economic activity." ROA.597-98. It assumed for argument's sake that "at-home distillation of beverage alcohol affects interstate commerce in the aggregate." ROA.599. It concluded, however, that the challenged statutory provisions do not "serve[] a comprehensive market regulation," ROA.599-601, and in any event do not "connect the prohibited behavior to interstate commerce," ROA.599-603.

**3.** The district court declared 26 U.S.C. §§ 5601(a)(6) and 5178(a)(1)(B) unconstitutional and permanently enjoined their enforcement against the Association and its members. ROA.606.

## SUMMARY OF ARGUMENT

**I. A.** Plaintiffs challenge the statutory restriction on locating a distilled spirits plant "in any dwelling house" or "in any shed, yard, or inclosure connected with any dwelling house." 26 U.S.C. § 5178(a)(1)(B); *see id.* § 5601(a)(6).

McNutt lacks standing because he has failed to establish that he has any intention, much less a serious intention, of engaging in a course of conduct forbidden by the challenged provisions. Specifically, he has not established an intention to place a still in his dwelling house or in a shed, yard, or inclosure connected with his dwelling house. Instead, he states only that he would like to distill "at home." ROA.112. But "at home" could include any number of locations not prohibited by statute—including, for example, the shed located 261 feet away from McNutt's house, which is not connected to the house and which McNutt has used to distill fuel alcohol in the past pursuant to a permit from the Bureau. McNutt has never applied for a permit to distill beverage alcohol in this shed. And his statement that he "would like to distill at home for beverage purposes," ROA.112, is the sort of "'some day' intention[]—without any description of concrete plans"—that does "not support a finding of the 'actual or imminent' injury" necessary to show standing, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992).

McNutt has also failed to establish that he is subject to a substantial, credible threat of prosecution under the challenged provisions. The district court relied on a generic notice that McNutt received from the Bureau in 2014, which did not threaten prosecution, much less prosecution for violating the challenged provisions. The notice simply advised recipients that they must obtain the necessary permits before distilling alcohol and reminded recipients that the federal tax on distilled spirits was due immediately upon production and that "[u]nlawful production of distilled spirits is a criminal offense." ROA.216.

**B.** Because McNutt lacks standing, the Association has not identified any members who would have standing to sue in their own right. The Association therefore lacks standing as well.

**C.** Finally, the district court's failure to conduct a careful standing analysis is underscored by its invalidation of the portions of the provisions that prohibit locating a distilled spirits plant at various other locations, such as "on board any vessel or boat." No plaintiff has challenged the validity of any restrictions other than the restriction regarding placement in a dwelling house or connected shed, yard, or inclosure, much less established an intention to engage in such conduct. The court's invalidation of those other restrictions constitutes independent error.

**II. A.** The challenged statutory provisions are a necessary and proper exercise of Congress's tax power. The necessary and proper power "give[s] Congress great latitude in exercising its powers" by "vest[ing] Congress with authority to enact provisions

'incidental to the [enumerated] power, and conducive to its beneficial exercise.'" *National Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 537, 559 (2012) (third alteration in original) (quoting *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 418 (1819)). A law is necessary and proper if it is "convenient" or "useful" for carrying an enumerated power into execution. *United States v. Comstock*, 560 U.S. 126, 133-34 (2010) (quotation marks omitted); *McCulloch*, 17 U.S. (4 Wheat.) at 413.

Congress made the entirely rational determination that restricting where stills may be located facilitates the government's ability to inspect distilling operations and guard against efforts to elude federal taxes on distilled spirits. A distiller can more easily conceal a spirit's strength—or conceal a distilling operation altogether—if his still is in his house or a connected shed. Indeed, the challenged provisions were animated by Congress's conclusion that there had been rampant tax evasion of the spirits tax, attributable to, among other things, illicit stills located in dwelling houses.

This concern is reflected in the structure of 26 U.S.C. § 5178, which links the premises regulation to averting the risk of jeopardy to the revenue, both by cross-reference and in subparagraphs that bookend the location restriction and reinforce this conclusion by further tethering regulation of a still's "location" to "afford[ing] adequate security to the revenue." 26 U.S.C. § 5178(a)(1)(A), (C). Indeed, the location restriction is just one part of the "elaborate system [that] has been set up by legislation and regulations thereunder to protect the revenue on distilled spirits," *United States v.*

*Goldberg*, 225 F.2d 180, 187 (8th Cir. 1955)—a system that includes, *inter alia*, requirements as to the design, construction, and security of distilling systems.

**B.** In holding to the contrary, the district court concluded that Congress's taxing power becomes effective only when the taxable event occurs. In the court's view, therefore, Congress lacked authority to regulate placement of the still before its use. That the placement of a still necessarily precedes the production of distilled spirits does not shield the placement of the still from Congress's reach. Nor was the district court correct to conclude that the challenged provisions are not meaningfully connected to Congress's distilled spirits tax. Neighboring provisions—which the district court identified as permissible—underscore this point. Those provisions regulate the design and construction of stills. 26 U.S.C. § 5178(a)(2)(B), (C). There is no difference between regulating a still's design and construction and regulating a still's location—both apply before the tax liability arises and relate sufficiently to the taxable product. Were the district court's expansive logic correct, it could imperil a number of other long-standing requirements governing the production, importation, or sale of distilled spirits and other taxable products.

## STANDARD OF REVIEW

Questions of subject-matter jurisdiction are reviewed de novo. *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 170 (5th Cir. 2009). The grant of a permanent injunction is reviewed for abuse of discretion, while the grant of summary judgment and the legal

issues underlying the grant of the injunction are reviewed de novo. *Med-Cert Home Care, LLC v. Becerra*, 19 F.4th 828, 830 (5th Cir. 2021).

## ARGUMENT

## I. Plaintiffs Lack Standing.

The district court erred in concluding that McNutt and the Hobby Distillers Association have standing. McNutt lacks standing because he has not established an injury in fact. The Association's standing, which was premised on the standing of its individual members, therefore fails as well.

To establish standing, a plaintiff must show an injury in fact—an actual or imminent invasion of a legally protected interest—that is sufficiently traceable to the challenged action and that is likely to be redressed by judicial relief. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In the pre-enforcement context, a plaintiff can establish injury by demonstrating "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List*, 573 U.S. at 159 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). A "plaintiff claiming standing must show that the likelihood of future enforcement is 'substantial.'" *California v. Texas*, 593 U.S. 659, 670 (2021) (quoting *Susan B. Anthony List*, 573 U.S. at 164). "[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that

they seek" and must establish the elements of standing with evidence once the case has proceeded to the merits. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

**A. 1.** The court erred in concluding that McNutt had satisfied these requirements for standing. McNutt acknowledges that, when he distilled fuel alcohol pursuant to a 2014 permit from the Bureau, he did so in a shed located 261 feet away from his house. ROA.112; *see also* ROA.166 (explaining that fuel distilling and beverage distilling are subject to the same premises restrictions). That shed is not a prohibited location, because it is neither in a dwelling house nor connected with one. McNutt could distill beverage alcohol there, just as he distilled fuel alcohol (assuming that he "follow[ed] the other requirements" for engaging in distilling, as he avers he would, ROA.112). The challenged provisions do not preclude placement of a still everywhere in the vicinity of an individual's home. McNutt states that he "would like to distill at home for beverage purposes." ROA.112. But he does not state that he would like to distill in a "dwelling house" or in a "shed, yard, or inclosure connected with any dwelling house." 26 U.S.C. § 5178(a)(1)(B). And he has neither applied for a permit to distill beverage alcohol nor had one denied on the grounds that his planned still placement would be prohibited.

Indeed, McNutt has not established a serious intention to distill beverage spirits, much less to place a still in a prohibited location. His statement that he "would like to distill at home for beverage purposes," ROA.112, is the sort of "'some day' intention[]—without any description of concrete plans, or indeed even any specification of *when* the some day will be—[that] do not support a finding of the 'actual or imminent'

injury that our cases require," *Lujan*, 504 U.S. at 564; *accord Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018) (plaintiff lacked standing because he did not have "a serious intention to engage in conduct proscribed by law").

The district court's conclusion that McNutt has "a serious intent to engage in proscribed conduct" rested on the mistaken premise that the statutory provisions at issue prohibit beverage distilling "on residential property." ROA.580. But the statutory provisions do not prohibit distilling "on residential property"—they prohibit distilling in a "dwelling house" or in a "shed, yard, or inclosure connected with any dwelling house." 26 U.S.C. § 5178(a)(1)(B); *id.* § 5601(a)(6). And, as discussed, McNutt has not established a serious intention to place a still in a prohibited location.

**2.** For related reasons, McNutt also has not shown a substantial, credible threat of prosecution under the challenged provisions. He has identified no plan that would trigger an enforcement action. And when he applied for a fuel distilling permit, it was granted by the Bureau.

In concluding that McNutt had shown a credible threat of prosecution, the district court instead relied on McNutt's receipt of a generic notice from the Bureau in 2014. ROA.581-82. But the notice did not threaten prosecution, much less prosecution for violating the challenged provisions. The notice stated that the Bureau had become aware that the recipient of the notice may have purchased a still or other distilling equipment. ROA.216. It advised the recipient that he or she must obtain the necessary permits and bonds before distilling alcohol. ROA.216. And it reminded the recipient

that the federal tax on distilled spirits was due immediately upon production and that "[u]nlawful production of distilled spirits is a criminal offense." ROA.216. This generic notice did not mention the restriction on locating a distilled spirits plant in a dwelling house or shed, yard, or inclosure connected with a dwelling house. Nor did it arise from any suspicion that McNutt was engaged in illegal conduct. Indeed, the Bureau took no action against McNutt in connection with the letter. ROA.538. A few months after receiving the notice, McNutt applied for, and was granted, a permit to distill fuel alcohol. ROA.540.

**B.** The Hobby Distillers Association lacks standing as well. An association has standing to bring suit on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The Association fails at the first step, because it has not identified any members who would have standing to sue in their own right: McNutt lacks standing for the reasons discussed above, *supra* pp. 11-13, and the district court rightly concluded that the other individual plaintiffs (Morris, Cowdrey, and Prince) lacked standing, ROA.582; *see also* ROA.158-62.

**C.** Finally, the district court's failure to conduct a rigorous standing analysis is highlighted by its invalidation of portions of the provisions that plaintiffs did not challenge and that the court did not find exceeded Congress's authority. Plaintiffs

challenged the restriction on placing a still "in any dwelling house" or "in any shed, yard, or inclosure connected with any dwelling house," ROA.15 (quoting 26 U.S.C. § 5178(a)(1)(B)). Plaintiffs have never argued that § 5178(a)(1)(B)'s other location restrictions are invalid—namely, its prohibition on placing a still "on board any vessel or boat," "on premises where beer or wine is made or produced, or liquors of any description are retailed," or "on premises where any other business is carried on" (except where authorized by the Secretary of the Treasury). 26 U.S.C. § 5178(a)(1)(B). Nor would plaintiffs have standing to bring such a challenge, not least because they have never even hinted at an intent to engage in conduct that would violate any of those prohibitions. The court's invalidation of these parts of the challenged provisions constitutes independent error.

## II.    The Challenged Statutory Provisions Are a Necessary and Proper Exercise of Congress's Tax Power.

**A.** The Taxing Clause authorizes Congress to "lay and collect Taxes." U.S. Const. art. I, § 8, cl. 1. And the Necessary and Proper Clause, *id.* cl. 18, allows Congress to "make all Laws which shall be necessary and proper for carrying into Execution" the powers vested by the Constitution in the federal government. The Necessary and Proper Clause "give[s] Congress great latitude in exercising its powers" by "vest[ing] Congress with authority to enact provisions 'incidental to the [enumerated] power, and conducive to its beneficial exercise.'" *National Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 537, 559 (2012) (third alteration in original) (quoting *McCulloch v. Maryland*, 17 U.S. (4

14

Wheat.) 316, 418 (1819)). A law is necessary and proper if it is "convenient" or "useful" for carrying an enumerated power into execution. *United States v. Comstock*, 560 U.S. 126, 133-34 (2010) (quotation marks omitted); *McCulloch*, 17 U.S. (4 Wheat.) at 413. Congress thus acts within the scope of its necessary and proper authority if the "means [chosen] . . . [are] rationally related to the implementation of a constitutionally enumerated power" and are not otherwise prohibited by the Constitution. *Comstock*, 560 U.S. at 134. Congress enjoys broad discretion so long as it acts in furtherance of a "legitimate" constitutional end, *see McCulloch*, 17 U.S. (4 Wheat.) at 421, and the necessary and proper power is read "permissive[ly]" to avoid invaliding legislative acts unless "'the lack of constitutional authority to pass [the] act in question is clearly demonstrated,'" *National Fed'n of Indep. Bus.*, 567 U.S. at 537-38 (second alteration in original) (quoting *United States v. Harris*, 106 U.S. 629, 635 (1883)).

The Treasury Department collects excise taxes on spirits per gallon and adjusts the rate based on the spirit's "proof" (*i.e.*, alcohol by volume or ABV). The higher a spirit's alcohol content, the higher its tax rate. *See* 26 U.S.C. §§ 5001(a)(1), 5002(a)(10)-(11). That tax "attach[es] to distilled spirits as soon as [the spirit] is in existence," *id.* § 5001(b), and operates as "a first lien on the distilled spirit[] . . . until the tax is paid," *id.* § 5004(a)(1). Every "proprietor or possessor of, and every person in any manner interested in the use of" a still is "jointly and severally liable for the taxes imposed by law on the distilled spirits produced therefrom." *Id.* § 5005(b)(1).

Regulating the location of distilled spirits plants facilitates the government's ability to inspect distilling operations and guard against efforts to elude federal taxes. A distiller can more easily conceal a spirit's strength (and thus avoid the proper tax rate)— or conceal a distilling operation altogether—if his still is in his house or connected with it. Indeed, Congress enacted the challenged restrictions shortly after a congressional committee detailed rampant evasion of the spirits tax, including by home distillers. ROA.246-48 (H.R. Rep. No. 39-24, at 21-22); ROA.218 (H.R. Rep. No. 39-24, at 1) (observing that "the most stupendous frauds are practiced against the government in the collection of its revenue," and adding that, "at least seven-eighths of the entire amount of spirits manufactured . . . have escaped taxation"). Unsurprisingly, therefore, when Congress first enacted those measures in 1868, it repeatedly linked the "location" of a still to ensuring effective tax collection. *See* Act of July 20, 1868, ch. 186, §§ 6, 9, 15 Stat. at 126-27, 128-29; *see also id.* § 12, 15 Stat. at 130 (describing the Act as providing for the collection of taxes on distilled spirits and setting forth the location restriction); Cong. Globe, 39th Cong., 1st Sess. 2839, 2841; *see also United States v. Ulrici*, 111 U.S. 38, 40 (1884) (stating that "[i]t is clear" that the statutory provisions governing distilled spirits "were adopted with one purpose only, namely, to secure the payment of the tax imposed by law upon distilled spirits").

This concern is reflected in the structure of 26 U.S.C. § 5178. The location restriction ties regulation of the "premises" of a still to the need to avert "jeopard[y]" to "the revenue," by expressly cross-referencing subsection (b), which in turn permits

the Secretary to "authorize the carrying on of such other businesses . . . on premises of distilled spirits plants, as he finds will not jeopardize the revenue." 26 U.S.C. § 5178(b); *see also id.* § 5178(a)(1)(B) (forbidding locating a distilled spirits plant "on premises where any other business is carried on (except when authorized under subsection (b))"). The two subparagraphs that bookend the location restriction reinforce this conclusion by further tethering regulation of a still's "location" to "afford[ing] adequate security to the revenue." *Id.* § 5178(a)(1)(A) ("The Secretary shall prescribe such regulations relating to the location, construction, arrangement, and protection of distilled spirits plants as he deems necessary to facilitate inspection and afford adequate security to the revenue."); *id.* § 5178(a)(1)(C) ("[T]he Secretary may approve the location, construction, arrangement, and method of operation of any establishment which was qualified to operate on the date preceding the effective date of this section if he deems that such location, construction, arrangement, and method of operation will afford adequate security to the revenue.").

The location restriction is just one part of the "elaborate system [that] has been set up by legislation and regulations thereunder to protect the revenue on distilled spirits." *United States v. Goldberg*, 225 F.2d 180, 187 (8th Cir. 1955). Congress has also, for example, authorized the Secretary to require "such fastenings, locks, and seals to be part of any of the stills, tubs, pipes, tanks, and other equipment, as he may deem necessary to facilitate inspection and afford adequate security to the revenue," 26 U.S.C. § 5178(a)(2)(C)(ii); required that distilling systems be "designed and constructed . . . as

to prevent the unauthorized removal of distilled spirits before their production gauge," *id.* § 5178(a)(2)(B); prohibited distilling materials from being produced outside of the bonded premises of a distilled spirits plant or removed from those premises before being distilled, except as authorized by the Secretary, *id.* § 5222(a)(1); and authorized internal revenue officers to enter and examine a distilled spirits plant at any time, day or night, and take inventory as necessary, *id.* § 5203(b).

In upholding Congress's authority to prescribe restrictions with respect to packaging taxable tobacco, the Supreme Court applied similar principles, declaring: "It seems to us that, in the rules and regulations for the manufacture and handling of goods which are subjected to an internal revenue tax, Congress may prescribe any rule or regulation which is not in itself unreasonable; that it is a perfectly reasonable requirement that every package of such goods should contain nothing but the article which is taxed . . . ." *Felsenheld v. United States*, 186 U.S. 126, 132 (1902). The Supreme Court observed, that "[i]n the internal revenue legislation Congress has not simply prescribed that certain articles shall pay a tax, but has provided a series of rules and regulations for the manufacture and sale of such articles," including "such . . . matters as in its best judgment were necessary or advisable for the purposes of effectually securing the payment of the tax imposed." *Id.* at 131. Because it was "perfectly reasonable" to require that tobacco packages "contain nothing but the article which is taxed," the statute was within Congress's authority. *Id.* at 132.

In the rare cases in which distilled spirits provisions have been challenged, courts have rejected a cramped understanding of Congress's taxing power. In *Stilinovic v. United States*, for example, the Eighth Circuit held that Congress had "acted within its constitutional power to facilitate the collection of revenue" in enacting a statute that prohibited a seller of distilled spirits from "plac[ing] in any liquor bottle any distilled spirits whatsoever other than those contained in such bottle at the time of stamping under the provisions of this chapter." 336 F.2d 862, 863-65 (8th Cir. 1964) (quoting 26 U.S.C. § 5301(c)(1)). The law bore "a reasonable relationship to the collection of revenue," *id.* at 864—preventing "the reuse of liquor bottles" or the "alteration of the original contents of liquor bottles" protects the revenue because, "it is in most cases impossible, once the container has been refilled or the original contents thereof altered by the addition of any substance (whether taxable or nontaxable), to establish whether the tax on the contents of such containers has been lawfully determined," *id.* at 865 (quoting S. Rep. No. 85-2090, at 171 (1958)); *see also Goldberg*, 225 F.2d at 188 (upholding a similar regulation and concluding that the regulation was "reasonably related to the protection of the revenue").

Similarly, in *Di Santo v. United States*, the Sixth Circuit upheld a statute requiring persons disposing of substances "used in the manufacture of distilled spirits" to report that disposition pursuant to regulations set by the Commissioner of Internal Revenue. 93 F.2d 948, 949-50 (6th Cir. 1937) (quoting Act of June 18, 1934, ch. 611, 48 Stat. 1020, 1020, then codified at 26 U.S.C. § 1162a (1934))). The Sixth Circuit rejected the

defendant's non-delegation challenge and, in so ruling, recognized that "[t]he government has for many years under appropriate legislation assessed taxes upon every manufacturer of distilled spirits" and that "[t]he power 'to make all Laws which shall be necessary and proper' for the collection of such taxes is specifically granted." *Id.* at 950 (emphasis omitted) (quoting U.S. Const. art. I, § 8, cl. 18). "The authority vested in the Commissioner to make rules and regulations was for the definite purpose of enabling him to determine whether all taxes upon distilled spirits had been paid," and "[t]he necessity and propriety of empowering the Commissioner" in this way "was a matter for Congress to determine." *Id.*

**B.** The district court fundamentally misunderstood the nature of the Necessary and Proper Clause and Congress's taxing authority, holding that the location restriction exceeds Congress's authority because it regulates "individual behavior occurring before that tax obligation becomes effective." ROA.595. The court found that 26 U.S.C. § 5178(a)(1)(B) regulates conduct (placement of stills) that occurs before the taxable conduct (producing spirits) occurs, meaning, in the court's view, that the challenged provisions "criminalize conduct of persons not subject to the tax." ROA.595. In the district court's view, "Congress cannot criminalize the conduct of a person to whom its enumerated taxing power does not yet apply." ROA.595. The district court's reasoning would suggest that Congress cannot impose a prohibition before the prohibited act occurs. The court cited no support for that proposition. In any event, the Supreme Court has rejected the proposition that the "Necessary and

Proper Clause permits no more than a single step between an enumerated power and an Act of Congress." *Comstock*, 560 U.S. at 148. Instead, the law need only be "rationally related to the implementation of" Congress's power to lay and collect taxes on distilled spirits. *See id.* at 134; *see also McCulloch*, 17 U.S. (4 Wheat.) at 413-14.

The district court similarly erred in finding a want of constitutional authority on the ground that the provisions do not "touch the product to be taxed" and "make[] no reference to any mechanism or process that operates to protect revenue" and that the challenged provisions "are not meaningfully connected to the modus operandi of spirits taxes." ROA.596. Congress is not required to reference revenue protection in each statutory subsection. The question is whether "it can be seen that the means adopted are really calculated to attain the end," *Comstock*, 560 U.S. at 135 (quotation marks omitted), not whether Congress explicitly describes the connection. "There is no suggestion" here that Congress enacted the challenged statutes "as a 'pretext' for 'the accomplishment of objects not entrusted to the [federal] government.'" *Jinks v. Richland County*, 538 U.S. 456, 464 (2003) (alteration in original) (quoting *McCulloch*, 17 U.S. (4 Wheat.) at 423). Nor is "the connection between" the challenged provisions and Congress's taxing power "so attenuated as to undermine the enumeration of powers set forth in Article I, § 8." *Id.* On the contrary, the statutory restrictions on where a distilled spirits plant may be located rationally supports Congress's reticulated scheme designed to protect and collect tax revenue.

Limiting the location of stills to areas in which they are less easily concealed is "'convenient, or useful' or 'conducive' to the [enumerated] authority's 'beneficial exercise'" and thus falls within Congress's powers under the Necessary and Proper Clause. *See Comstock*, 560 U.S. at 133-34 (quoting *McCulloch*, 17 U.S. (4 Wheat.) at 413, 418). Yet while the district court acknowledged that the location restriction "might be *convenient* to protect tax revenue on spirits," it nevertheless deemed it "not a sufficiently clear corollary to the positive power of laying and collecting taxes," ROA.597—a standard that is at odds with the Supreme Court's consistent understanding of the Necessary and Proper Clause.

Finally, the district court's comparison of the challenged provisions to the nearby provisions that it agreed do "touch the product to be taxed" underscore the errors in its analysis. The court observed, for example, that 26 U.S.C. § 5178(a)(2)(B), requires that a still "be so designed and constructed . . . as to prevent the unauthorized removal of distilled spirits" before they can be measured. There is no relevant difference between regulating a still's design or construction and regulating a still's location. Each requirement applies before a distiller's "tax liability" arises, ROA.595, and each "touch[es]" the taxable product, ROA.596, by regulating the means of production in order to prevent tax evasion. So too with 26 U.S.C. § 5178(a)(2)(C), which authorizes the Secretary to require "such identification of, changes of, and additions to, distilling apparatus, connecting pipes, pumps, tanks, and any machinery connected with or used in or on the premises."

Indeed, were the district court's expansive logic correct, it could threaten many statutory and regulatory requirements governing the production, importation, or sale of distilled spirits and other taxable products, including the statutory provisions governing still design, construction, security, permitting, and registration, *see, e.g.*, 26 U.S.C. §§ 5171-5173, 5178-5179, 5552-5553; 27 U.S.C. §§ 203-204, as well as the permitting and bond requirements for manufacturing or importing tobacco products, 26 U.S.C. §§ 5711-5713.

In sum, no basis exists for the court's invalidation of long-standing provisions that plainly serve Congress's interest in protecting the collection of revenue.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

LEIGHA SIMONTON
*United States Attorney*

MARK. B. STERN

*s/ Sarah Clark Griffin*

SARAH CLARK GRIFFIN
*Attorneys, Appellate Staff*
*Civil Division, Room 7216*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-8727*
*sarah.c.griffin@usdoj.gov*

OCTOBER 2024

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users.

*s/ Sarah Clark Griffin*
Sarah Clark Griffin

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,824 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Sarah Clark Griffin*
Sarah Clark Griffin

**ADDENDUM**

# TABLE OF CONTENTS

26 U.S.C. § 5601(a)(6) ............................................................................................... A1

26 U.S.C. § 5178 ......................................................................................................... A1

## 26 U.S.C. § 5601

### § 5601. Criminal penalties

(a) Offenses

Any person who—

. . .

(6) Distilling on prohibited premises

uses, or possesses with intent to use, any still, boiler, or other utensil for the purpose of producing distilled spirits, or aids or assists therein, or causes or procures the same to be done, in any dwelling house, or in any shed, yard, or inclosure connected with such dwelling house (except as authorized under section 5178(a)(1)(C)), or on board any vessel or boat, or on any premises where beer or wine is made or produced, or where liquors of any description are retailed, or on premises where any other business is carried on (except when authorized under section 5178(b));

. . .

shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, for each such offense.

## 26 U.S.C. § 5178

### § 5178. Premises of distilled spirits plants

(a) Location, construction, and arrangement

(1) General

(A) The premises of a distilled spirits plant shall be as described in the application required by section 5171(c). The Secretary shall prescribe such regulations relating to the location, construction, arrangement, and protection of distilled spirits plants as he deems necessary to facilitate inspection and afford adequate security to the revenue.

(B) No distilled spirits plant for the production of distilled spirits shall be located in any dwelling house, in any shed, yard, or inclosure connected with any dwelling house, or on board any vessel or boat, or on premises where beer or wine is made or produced, or liquors of any description are retailed, or on premises where any other business is carried on (except when authorized under subsection (b)).

(C) Notwithstanding any other provision of this chapter relating to distilled spirits plants the Secretary may approve the location, construction,

arrangement, and method of operation of any establishment which was qualified to operate on the date preceding the effective date of this section if he deems that such location, construction, arrangement, and method of operation will afford adequate security to the revenue.

(2) Production operations

(A) Any person establishing a distilled spirits plant may, as described in his application for registration, produce distilled spirits from any source or substance.

(B) The distilling system shall be continuous and shall be so designed and constructed and so connected as to prevent the unauthorized removal of distilled spirits before their production gauge.

(C) The Secretary is authorized to order and require—

(i) such identification of, changes of, and additions to, distilling apparatus, connecting pipes, pumps, tanks, and any machinery connected with or used in or on the premises, and

(ii) such fastenings, locks, and seals to be part of any of the stills, tubs, pipes, tanks, and other equipment, as he may deem necessary to facilitate inspection and afford adequate security to the revenue.

(3) Warehousing operations

(A) Any person establishing a distilled spirits plant for the production of distilled spirits may, as described in the application for registration, warehouse bulk distilled spirits on the bonded premises of such plant.

(B) Distilled spirits plants for the bonded warehousing of bulk distilled spirits elsewhere than as described in subparagraph (A) may be established at the discretion of the Secretary by proprietors referred to in subparagraph (A) or by other persons under such regulations as the Secretary shall prescribe.

(4) Processing operations

Any person establishing a distilled spirits plant may, as described in the application for registration, process distilled spirits on the bonded premises of such plant.

(b) Use of premises for other businesses

The Secretary may authorize the carrying on of such other businesses (not specifically prohibited by section 5601(a)(6)) on premises of distilled spirits plants, as he finds will not jeopardize the revenue. Such other businesses shall not be carried on until an application to carry on such business has been made to and approved by the Secretary.

(c) Cross references

(1) For provisions authorizing the Secretary to require installation of meters, tanks, and other apparatus, see section 5552.

(2) For penalty for distilling on prohibited premises, see section 5601(a)(6).

(3) For provisions relating to the bottling of distilled spirits labeled as alcohol, see section 5235.

(4) For provisions relating to the unauthorized use of distilled spirits in any manufacturing process, see section 5601(a)(9).