No. 24-10760

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————————————

SCOTT MCNUTT,

Plaintiff-Appellee,

RICK MORRIS; HOBBY DISTILLERS ASSOCIATION; THOMAS O. COWDREY, III; JOHN PRINCE, III,

Plaintiffs-Appellees/Cross-Appellants,

v.

US DEPARTMENT OF JUSTICE; ALCOHOL AND TOBACCO TAX AND TRADE BUREAU, A BUREAU OF THE U.S. DEPARTMENT OF THE TREASURY,

Defendants-Appellants/Cross-Appellees.

————————————

On Appeal from the United States District Court
for the Northern District of Texas

————————————

## RECORD EXCERPTS

————————————

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

LEIGHA SIMONTON
*United States Attorney*

MARK B. STERN
SARAH CLARK GRIFFIN
*Attorneys, Appellate Staff*
*Civil Division, Room 7216*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-8727*

# TABLE OF CONTENTS

Docket Sheet (ROA.1-11) ................................................................................. Tab 1

Notice of Appeal (ROA.609-10) .................................................................... Tab 2

Notice of Cross-Appeal (ROA.611-12) ...................................................... Tab 3

Opinion and Order (ROA.576-607) ............................................................ Tab 4

Judgment (ROA.608) ...................................................................................... Tab 5

CERTIFICATE OF SERVICE

**TAB 1**

# U.S. District Court
## Northern District of Texas (Fort Worth)
## CIVIL DOCKET FOR CASE #: 4:23-cv-01221-P

| | |
|---|---|
| Hobby Distillers Association et al v. Alcohol and Tobacco Tax and Trade Bureau et al<br>Assigned to: Judge Mark Pittman<br>Case in other court:  United States Court of Appeals 5th Circuit, 24-10760<br>Cause: 28:2201 Declaratory Judgment | Date Filed: 12/08/2023<br>Date Terminated: 07/11/2024<br>Jury Demand: None<br>Nature of Suit: 440 Civil Rights: Other Civil Rights<br>Jurisdiction: U.S. Government Defendant |

**Plaintiff**

| | | |
|---|---|---|
| **Rick Morris**<br>*TERMINATED: 07/10/2024* | represented by | **Casey L Griffith**<br>Griffith Barbee PLLC<br>1722 Routh Street, Suite 910<br>Dallas, TX 75205<br>214-446-6022<br>Fax: 214-446-6021<br>Email: casey.griffith@griffithbarbee.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Admitted/In Good Standing*<br><br>**Daniel Greenberg**<br>Competitive Enterprise Institute<br>1310 L Street<br>Washington, DC 20005<br>202-331-1010<br>Email: dan.greenberg@cei.org<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Not Admitted*<br><br>**Dallas Zachary Flick**<br>Crawford Wishnew & Lang PLLC<br>1700 Pacific Ave.<br>Ste. 2390<br>Dallas, TX 75201<br>214-817-4500<br>Email: dflick@cwl.law<br>*TERMINATED: 01/31/2024*<br>*Bar Status: Admitted/In Good Standing*<br><br>**Devin Watkins**<br>Competitive Enterprise Institute<br>1310 L Street NW, 7th Floor<br>Ste 7th Floor<br>Washington, DC 20005 |

202-331-2278
Email: devin.watkins@cei.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Michael Collin Barbee**
Griffith Barbee PLLC
1722 Routh Street
Suite 910
Dallas, TX 75201
214-446-6020
Fax: 214-446-6021
Email: michael.barbee@griffithbarbee.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Nicholas C Kliewer**
Griffith Barbee PLLC
1722 Routh Street
Suite 910
Dallas, TX 75201
214-446-6020
Email: Nick.Kliewer@griffithbarbee.com
*TERMINATED: 06/17/2024*
*Bar Status: Admitted/In Good Standing*

**Plaintiff**

| | | |
|---|---|---|
| **Thomas O Cowdrey, III**<br>*TERMINATED: 07/10/2024* | represented by | **Casey L Griffith**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Admitted/In Good Standing* |

**Dallas Zachary Flick**
(See above for address)
*TERMINATED: 01/31/2024*
*Bar Status: Admitted/In Good Standing*

**Daniel Greenberg**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Devin Watkins**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Michael Collin Barbee**
(See above for address)

*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Nicholas C Kliewer**
(See above for address)
*TERMINATED: 06/17/2024*
*Bar Status: Admitted/In Good Standing*

**Plaintiff**

**Scott McNutt**                                   represented by   **Casey L Griffith**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Daniel Greenberg**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Dallas Zachary Flick**
(See above for address)
*TERMINATED: 01/31/2024*
*Bar Status: Admitted/In Good Standing*

**Devin Watkins**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Michael Collin Barbee**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Nicholas C Kliewer**
(See above for address)
*TERMINATED: 06/17/2024*
*Bar Status: Admitted/In Good Standing*

**Plaintiff**

**John Prince, III**                               represented by   **Casey L Griffith**
*TERMINATED: 07/10/2024*                           (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Daniel Greenberg**
(See above for address)

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Dallas Zachary Flick**
(See above for address)
*TERMINATED: 01/31/2024*
*Bar Status: Admitted/In Good Standing*

**Devin Watkins**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Michael Collin Barbee**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Nicholas C Kliewer**
(See above for address)
*TERMINATED: 06/17/2024*
*Bar Status: Admitted/In Good Standing*

**Plaintiff**

**Hobby Distillers Association**    represented by    **Casey L Griffith**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Daniel Greenberg**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Dallas Zachary Flick**
(See above for address)
*TERMINATED: 01/31/2024*
*Bar Status: Admitted/In Good Standing*

**Devin Watkins**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Michael Collin Barbee**
(See above for address)

*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Nicholas C Kliewer**
(See above for address)
*TERMINATED: 06/17/2024*
*Bar Status: Admitted/In Good Standing*

V.

**Defendant**

**U.S. Department of Justice**                    represented by  **Elizabeth Tulis**
US Department of Justice, Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202-514-9237
Fax: 202-616-8470
Email: elizabeth.tulis@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Anna Lynn Deffebach**
DOJ-Civ
Civil Division- Federal Programs Branch
1100 L ST NW
Washington, DC 20005
202-993-5182
Email: anna.l.deffebach@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Hannah Solomon-Strauss**
DOJ-Civ
1100 L Street NW
Washington, DC 20005
202-616-8198
Email: hannah.m.solomon-strauss@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Defendant**

**Alcohol and Tobacco Tax and Trade**           represented by  **Elizabeth Tulis**
**Bureau**                                                       (See above for address)
*a bureau of the U.S. Department of the*                         *LEAD ATTORNEY*
*Treasury*                                                       *ATTORNEY TO BE NOTICED*
                                                                 *Bar Status: Not Admitted*

**Anna Lynn Deffebach**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/08/2023 | 1 (p.12) | COMPLAINT against Alcohol and Tobacco Tax and Trade Bureau, a bureau of the U.S. Department of the Treasury, U.S. Department of Justice filed by Rick Morris, Thomas O Cowdrey, III, Scott McNutt, John Prince, III, Brewhaus (America) Inc. (Filing fee $405; Receipt number ATXNDC-14229967) Clerk to issue summons(es) for federal defendant(s). In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements and Judge Specific Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 (p.12) Cover Sheet) (Flick, Dallas) (Entered: 12/08/2023) |
| 12/08/2023 | 2 (p.25) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Brewhaus (America) Inc, Thomas O Cowdrey, III, Scott McNutt, Rick Morris, John Prince, III. (Clerk QC note: Affiliate entry indicated). (Flick, Dallas) (Entered: 12/08/2023) |
| 12/08/2023 | 3 (p.27) | New Case Notes: A filing fee has been paid. File to: Judge Means. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge. Clerk to provide copy to plaintiff if not received electronically. (mmw) (Entered: 12/08/2023) |
| 12/08/2023 | 4 (p.29) | Summons issued as to Alcohol and Tobacco Tax and Trade Bureau, U.S. Department of Justice, U.S. Attorney, and U.S. Attorney General. (mmw) (Entered: 12/08/2023) |
| 12/11/2023 | 5 (p.41) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-14235541) filed by Thomas O Cowdrey, III, Hobby Distillers Association, Scott McNutt, Rick Morris, John Prince, III (Attachments: # 1 (p.12) Exhibit(s) Certificate of Good Standing Dec 2023)Attorney Devin Watkins added to party Thomas O Cowdrey, III(pty:pla), Attorney Devin Watkins added to party Hobby Distillers Association(pty:pla), Attorney Devin Watkins added to party Scott McNutt(pty:pla), Attorney Devin Watkins added to party Rick Morris(pty:pla), Attorney Devin Watkins added to party John Prince, III(pty:pla) (Watkins, Devin) (Entered: 12/11/2023) |
| 12/12/2023 | 6 (p.44) | ORDER FOR REASSIGNMENT: The undersigned judge, having taken senior status, desires to have this case re-assigned to an active-status judge. The clerk of the Court is therefore DIRECTED to re-assign this case by random draw to another judge. (Ordered by Senior Judge Terry R Means on 12/12/2023) (mmw) (Entered: 12/12/2023) |
| 12/12/2023 | 7 (p.45) | |

| | | |
|---|---|---|
| | | New Case Notes: A filing fee has been paid. File to: Judge O Connor. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge. Clerk to provide copy to plaintiff if not received electronically. Attorneys are further reminded that, if necessary, they must comply with Local Rule 83.10(a) within 14 days or risk the possible dismissal of this case without prejudice or without further notice. (mmw) (Entered: 12/12/2023) |
| 01/09/2024 | 8 | ELECTRONIC ORDER granting 5 (p.41) Application for Admission Pro Hac Vice of Devin Watkins. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Reed C. O'Connor on 1/9/2024) (chmb) (Entered: 01/09/2024) |
| 01/26/2024 | 9 (p.47) | Unopposed MOTION to Withdraw as Attorney *(Dallas Flick)* filed by Thomas O Cowdrey, III, Hobby Distillers Association, Scott McNutt, Rick Morris, John Prince, III (Attachments: # 1 (p.12) Proposed Order) (Griffith, Casey) (Entered: 01/26/2024) |
| 01/31/2024 | 10 (p.51) | ORDER granting 9 (p.47) ...the Court determines that the instant Motion should be and is hereby GRANTED. Attorney Dallas Zachary Flick terminated (Ordered by Judge Reed C. O'Connor on 1/31/2024) (wxc) (Entered: 01/31/2024) |
| 02/13/2024 | 11 (p.52) | NOTICE of Attorney Appearance by Nicholas C Kliewer on behalf of Thomas O Cowdrey, III, Hobby Distillers Association, Scott McNutt, Rick Morris, John Prince, III. (Filer will update contact info in ECF.) (Kliewer, Nicholas) (Entered: 02/13/2024) |
| 02/13/2024 | 12 (p.55) | Request for Clerk to issue Entry of Default filed by Thomas O Cowdrey, III, Hobby Distillers Association, Scott McNutt, Rick Morris, John Prince, III. (Attachments: # 1 (p.12) Affidavit(s) of Nicholas Kliewer, # 2 (p.25) Declaration(s) of Windy Tyler, # 3 (p.27) Proposed Order for Entry of Default) (Kliewer, Nicholas) (Entered: 02/13/2024) |
| 02/14/2024 | 13 (p.69) | NOTICE of Attorney Appearance by Elizabeth Tulis on behalf of Alcohol and Tobacco Tax and Trade Bureau, U.S. Department of Justice. (Filer confirms contact info in ECF is current.) (Tulis, Elizabeth) (Entered: 02/14/2024) |
| 02/14/2024 | 14 (p.70) | NOTICE of *Withdrawal of Plaintiff's' Request for Entry of Default* re: 12 (p.55) Request for Clerk to Issue Document, filed by Thomas O Cowdrey, III, Hobby Distillers Association, Scott McNutt, Rick Morris, John Prince, III (Kliewer, Nicholas) (Entered: 02/14/2024) |
| 02/15/2024 | 15 (p.72) | SUMMONS Returned Executed as to All Defendants. (Kliewer, Nicholas) (Entered: 02/15/2024) |
| 02/23/2024 | 16 (p.75) | NOTICE of Attorney Appearance by Hannah Solomon-Strauss on behalf of Alcohol and Tobacco Tax and Trade Bureau, U.S. Department of Justice. (Filer confirms contact info in ECF is current.) (Solomon-Strauss, Hannah) (Entered: 02/23/2024) |
| 03/06/2024 | 17 (p.76) | MOTION for Injunction filed by Thomas O Cowdrey, III, Hobby Distillers Association, Scott McNutt, Rick Morris, John Prince, III with Brief/Memorandum in Support. (Attachments: # 1 (p.12) Memo In Support, # 2 (p.25) Declaration(s) Appendix, # 3 (p.27) Proposed Order) (Watkins, Devin) (Entered: 03/06/2024) |
| 03/13/2024 | 18 (p.119) | ORDER REASSIGNING CASE. Case reassigned to Judge Mark Pittman for all further proceedings. Judge Reed C. O'Connor no longer assigned to case. (Ordered by Judge Reed C. O'Connor on 3/13/2024) (sre) (Entered: 03/13/2024) |

| 03/13/2024 | 19 (p.120) | New Case Notes: A filing fee has been paid. File to: Judge Pittman. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge. Clerk to provide copy to plaintiff if not received electronically. Attorneys are further reminded that, if necessary, they must comply with Local Rule 83.10(a) within 14 days or risk the possible dismissal of this case without prejudice or without further notice. (sre) (Entered: 03/14/2024) |
|---|---|---|
| 03/14/2024 | 20 (p.122) | NOTICE of *Erratum* re: 17 (p.76) MOTION for Injunction filed by Thomas O Cowdrey, III, Hobby Distillers Association, Scott McNutt, Rick Morris, John Prince, III (Watkins, Devin) (Entered: 03/14/2024) |
| 03/14/2024 | 21 (p.126) | ORDER: Lead counsel for each party or designee attorney with appropriate authority and any unrepresented party must confer in an in-person, face-to-face conference as soon as practicable. As a result of the Scheduling Conference, counsel must prepare and submit a Report Regarding Contents of Scheduling Order by March 28, 2024. (Ordered by Judge Mark Pittman on 3/14/2024) (saw) (Entered: 03/14/2024) |
| 03/14/2024 | 22 (p.131) | ORDER: Before the Court is Plaintiffs' Motion for a Preliminary Injunction. ECF No. 17 (p.76) . The Court hereby ORDERS Defendants to file a Response brief to Plaintiff's Motion on or before Thursday, March 21, 2024. The Court further ORDERS that a hearing on Plaintiffs' Motion will be held at 9:00 a.m. on Thursday, March 28, 2024, in the Fourth Floor Courtroom of the Eldon B. Mahon United States Courthouse, located at 501 W. 10th Street, Fort Worth, Texas. (Ordered by Judge Mark Pittman on 3/14/2024) (saw) (Entered: 03/14/2024) |
| 03/15/2024 | 23 (p.132) | Unopposed MOTION to Extend Time to Respond to Motion for Preliminary Injunction (Unopposed Motion to Modify Briefing Schedule and Enlarge Page Limits) filed by Alcohol and Tobacco Tax and Trade Bureau, U.S. Department of Justice (Tulis, Elizabeth) (Entered: 03/15/2024) |
| 03/15/2024 | 24 (p.135) | ORDER denying 23 (p.132) ...Before the Court is Defendants' Unopposed Motion to Modify Schedule and Enlarge Page Limits. ECF No. 23 (p.132) . Having reviewed the Motion, the Court concludes that it should be and is hereby DENIED. The Court further concludes that 25 pages will be sufficient for Defendants to respond to Plaintiffs' 25-page Motion for a Preliminary Injunction. (Ordered by Judge Mark Pittman on 3/15/2024) (wxc) (Entered: 03/15/2024) |
| 03/18/2024 | 25 | ELECTRONIC ORDER: Review of the record in this case indicates that Attorney Dan Greenberg is not admitted to practice in the Northern District of Texas. Accordingly, the Court ORDERS Attorney Dan Greenberg to apply for admission pro hac vice on or before 03/22/2024. (Ordered by Judge Mark Pittman on 3/18/2024) (ads) (Entered: 03/18/2024) |
| 03/18/2024 | 26 (p.136) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Daniel Greenberg (Filing fee $100; Receipt number ATXNDC-14471832) filed by Thomas O Cowdrey, III, Hobby Distillers Association, Scott McNutt, Rick Morris, John Prince, III (Attachments: # 1 (p.12) Exhibit(s) Certificate of Good Standing March 2024, # 2 (p.25) Proposed Order) (Watkins, Devin) (Entered: 03/18/2024) |
| 03/19/2024 | 27 | ELECTRONIC ORDER granting 26 (p.136) Application for Admission Pro Hac Vice of Daniel Greenberg. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Mark Pittman on 3/19/2024) (ads) (Entered: 03/19/2024) |

| 03/19/2024 | 28 (p.141) | ORDER...Upon review of the Court's docket and in the interest of judicial economy and to service the needs of court personnel, the Court hereby ORDERS that the hearing on Plaintiffs' motion for a preliminary injunction be RESET for 1:30 p.m. on Thursday, March 28, 2024, in the Fourth Floor Courtroom of the Eldon B. Mahon United States Courthouse, 701 W. 10th Street, Fort Worth, Texas. (Ordered by Judge Mark Pittman on 3/19/2024) (wxc) (Entered: 03/19/2024) |
|---|---|---|
| 03/21/2024 | 29 (p.142) | RESPONSE filed by Alcohol and Tobacco Tax and Trade Bureau, U.S. Department of Justice re: 17 (p.76) MOTION for Injunction (Tulis, Elizabeth) (Entered: 03/21/2024) |
| 03/21/2024 | 30 (p.144) | Brief/Memorandum in Support filed by Alcohol and Tobacco Tax and Trade Bureau, U.S. Department of Justice re 29 (p.142) Response/Objection *Brief in Support of Defendants' Response to Plaintiffs' Motion for Preliminary Injunction* (Attachments: # 1 (p.12) Declaration(s) (Appendix)) (Tulis, Elizabeth) (Entered: 03/21/2024) |
| 03/26/2024 | 31 (p.203) | REPLY filed by Thomas O Cowdrey, III, Hobby Distillers Association, Scott McNutt, Rick Morris, John Prince, III re: 17 (p.76) MOTION for Injunction (Attachments: # 1 (p.12) Appendix) (Watkins, Devin) (Entered: 03/26/2024) |
| 03/28/2024 | 32 (p.509) | Joint STATUS REPORT filed by Alcohol and Tobacco Tax and Trade Bureau, U.S. Department of Justice. (Solomon-Strauss, Hannah) (Entered: 03/28/2024) |
| 03/28/2024 | 33 (p.515) | ORDER: Before the Court is Plaintiffs' Motion for a Preliminary Injunction (ECF No. 17 (p.76) ). The Court ORDERS the Parties to file written objections, if any, to its advancement of this case to the merits on or before April 4, 2024. (Ordered by Judge Mark Pittman on 3/28/2024) (saw) (Entered: 03/28/2024) |
| 03/28/2024 | 36 | ELECTRONIC Minute Entry for proceedings held before Judge Mark Pittman: Motion Hearing held on 3/28/2024 re 17 (p.76) Motion for Injunction, filed by John Prince, III, Thomas O Cowdrey, III, Hobby Distillers Association, Scott McNutt, Rick Morris. Attorney Appearances: Plaintiff - Casey Griffith, Daniel Greenberg, Devin Watkins; Defense - Elizabeth Tulis, Hannah Solomon-Strauss. (Court Reporter: Zoie Williams) (No exhibits) Time in Court - 1:26. (chmb) (Entered: 04/01/2024) |
| 03/29/2024 | 34 (p.516) | NOTICE of *Availability of Non-Documentary Evidence* re: 31 (p.203) Reply filed by Thomas O Cowdrey, III, Hobby Distillers Association, Scott McNutt, Rick Morris, John Prince, III (Watkins, Devin) [District Clerk's Office received Audio File on 3/29/2024, placed on shelf in File Room] (tle) (Entered: 03/29/2024) |
| 04/01/2024 | 35 (p.519) | Unopposed MOTION for Leave to File Sur-Reply filed by Alcohol and Tobacco Tax and Trade Bureau, U.S. Department of Justice (Tulis, Elizabeth) (Entered: 04/01/2024) |
| 04/02/2024 | 37 | ELECTRONIC ORDER granting 35 (p.519) Motion for Leave to File. Defendants' Sur-Reply DUE on or before 04/08/2024. (Ordered by Judge Mark Pittman on 4/2/2024) (ads) (Entered: 04/02/2024) |
| 04/04/2024 | 38 (p.521) | RESPONSE filed by Thomas O Cowdrey, III, Hobby Distillers Association, Scott McNutt, Rick Morris, John Prince, III re: 33 (p.515) Order Setting Deadline/Hearing, (Watkins, Devin) (Entered: 04/04/2024) |
| 04/08/2024 | 39 (p.523) | Sur-reply by Alcohol and Tobacco Tax and Trade Bureau, U.S. Department of Justice re: 17 (p.76) MOTION for Injunction (Attachments: # 1 (p.12) Declaration(s) (Appendix)) (Tulis, Elizabeth) (Entered: 04/08/2024) |

| | | |
|---|---|---|
| 04/09/2024 | 40 (p.543) | NOTICE of *Plaintiffs Will Not Request a Sur-Sur-Reply* filed by Thomas O Cowdrey, III, Hobby Distillers Association, Scott McNutt, Rick Morris, John Prince, III (Watkins, Devin) (Entered: 04/09/2024) |
| 04/10/2024 | 41 (p.545) | NOTICE of *Joint Notice of Consent to Waive Answer Requirement* filed by Alcohol and Tobacco Tax and Trade Bureau, U.S. Department of Justice (Tulis, Elizabeth) (Entered: 04/10/2024) |
| 04/26/2024 | 42 (p.547) | NOTICE of *Errata* re: 30 (p.144) Brief/Memorandum in Support of Motion, filed by Alcohol and Tobacco Tax and Trade Bureau, U.S. Department of Justice (Tulis, Elizabeth) (Entered: 04/26/2024) |
| 05/10/2024 | 43 (p.549) | ORDER: The Parties are ORDERED to file cross-supplemental briefs limited only to the issue(s) of the applicability and scope of the Necessary and Proper clause to the question whether 26 U.S.C. §§ 5601(b) & 5178(a)(1)(B) appropriately effectuate protection of the federal tax revenue on distilled spirits. Each brief must be filed on or before May 17, 2024, and must not exceed eight to ten pages in length. (Ordered by Judge Mark Pittman on 5/10/2024) (mmw) (Entered: 05/10/2024) |
| 05/17/2024 | 44 (p.550) | Supplemental Brief filed by Thomas O Cowdrey, III, Hobby Distillers Association, Scott McNutt, Rick Morris, John Prince, III re 43 (p.549) Order, *Supplemental Brief on the Applicability and Scope of the Necessary and Proper Clause to the Taxing Power* (Watkins, Devin) Modified per phone call with attorney on 5/17/2024 (sre). (Entered: 05/17/2024) |
| 05/17/2024 | 45 (p.613) | Notice of Filing of Official Electronic Transcript of Motion for Preliminary Injunction Proceedings held on 3.28.24 before Judge Mark T. Pittman. Court Reporter/Transcriber Zoie Williams, Telephone number 817.850.6630. Parties are notified of their duty to review the transcript. A copy may be purchased from the court reporter or viewed at the clerk's office. If the transcript contains personal identifiers that must be redacted under MO 61, Fed.R.Civ.P. 5.2 or Fed.R.Crim.P. 49.1, or if the transcript contains the name of a minor child victim or a minor child witness that must be redacted under 18 U.S.C. § 3509, file a Redaction Request - Transcript within 21 days. If no action is taken, the entire transcript will be made available through PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. (98 pages) Redaction Request due 6/7/2024. Redacted Transcript Deadline set for 6/17/2024. Release of Transcript Restriction set for 8/15/2024. (zow) (Entered: 05/17/2024) |
| 05/17/2024 | 46 (p.561) | Supplemental Brief/Memorandum in Support filed by Alcohol and Tobacco Tax and Trade Bureau, U.S. Department of Justice re 29 (p.142) Response/Objection, 43 (p.549) Order, *Defendants' Supplemental Brief* (Tulis, Elizabeth) Modified text per PDF on 5/20/2024 (mmw). (Entered: 05/17/2024) |
| 06/14/2024 | 47 (p.572) | Unopposed MOTION to Withdraw *for Nicholas Kliewer as Counsel for Plaintiffs* filed by Thomas O Cowdrey, III, Hobby Distillers Association, Scott McNutt, Rick Morris, John Prince, III (Attachments: # 1 (p.12) Proposed Order) (Kliewer, Nicholas) (Entered: 06/14/2024) |
| 06/17/2024 | 48 | ELECTRONIC ORDER GRANTING Motion to Withdraw [ECF No. 47] for Nicholas Kliewer as Counsel for Plaintiffs. (Ordered by Judge Mark Pittman on 6/17/2024) (ADS) (Entered: 06/17/2024) |
| 07/10/2024 | 49 (p.576) | OPINION & ORDER: The Court GRANTS Plaintiffs' request for relief (ECF No. 17 (p.76) ) and DECLARES that 26 U.S.C. § 5601(6) and 26 U.S.C. § 5178(a)(1)(B) are UNCONSTITUTIONAL. The Court hereby STAYS the applicability of this Opinion |

| | | |
|---|---|---|
| | | and Order for fourteen days from the date of this Order to allow the federal government to seek emergency relief at the appellate level, should they choose to do so. (Ordered by Judge Mark Pittman on 7/10/2024) (mmw) (Main Document 49 replaced on 7/11/2024) (bcr). (Entered: 07/10/2024) |
| 07/11/2024 | 50 (p.608) | FINAL JUDGMENT: This Judgment is issued as required by Federal Rule of Civil Procedure 58. In accordance with the Court's order granting Plaintiffs' motion for a permanent injunction and declaratory relief, this case is DISMISSED with prejudice. (Ordered by Judge Mark Pittman on 7/11/2024) (mmw) (Entered: 07/11/2024) |
| 08/14/2024 | 51 (p.609) | NOTICE OF APPEAL as to 49 (p.576) Memorandum Opinion and Order, Terminate Motions, Add and Terminate Parties,, 50 (p.608) Judgment, to the Fifth Circuit by Alcohol and Tobacco Tax and Trade Bureau, U.S. Department of Justice. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Solomon-Strauss, Hannah) (Entered: 08/14/2024) |
| 08/19/2024 | 52 (p.611) | NOTICE OF APPEAL as to 49 (p.576) Memorandum Opinion and Order, Terminate Motions,,, Add and Terminate Parties,, 50 (p.608) Judgment, to the Fifth Circuit by Thomas O Cowdrey, III, Hobby Distillers Association, Rick Morris, John Prince, III. Filing fee $605, receipt number ATXNDC-14849704. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Watkins, Devin) (Entered: 08/19/2024) |
| 09/10/2024 | | USCA Case Number 24-10760 in United States Court of Appeals 5th Circuit for 52 (p.611) Notice of Appeal,,,, filed by John Prince, III, Thomas O Cowdrey, III, Hobby Distillers Association, Rick Morris, 51 (p.609) Notice of Appeal,,,, filed by Alcohol and Tobacco Tax and Trade Bureau, U.S. Department of Justice. (tle) (Entered: 09/10/2024) |

**TAB 2**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **HOBBY DISTILLERS ASSOCIATION,** *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **Case No. 4:23-cv-01221-P** |
| **ALCOHOL AND TOBACCO TAX AND TRADE BUREAU,** *et al.*, | |
| **Defendants.** | |

## NOTICE OF APPEAL

PLEASE TAKE NOTICE that Defendants Alcohol and Tobacco Tax and Trade Bureau
and the United States Department of Justice hereby appeal to the United States Court of Appeals
for the Fifth Circuit from the Memorandum Opinion and Order (ECF No. 49) granting Plaintiffs'
Motion for a Preliminary and Permanent Injunction (ECF No. 17), which the Court advanced to
the case's merits as authorized by Federal Rule of Civil Procedure 65, awarding them declaratory
relief and a permanent injunction; and from all previous rulings in this action, including the final
judgment entered (ECF No. 50).

Dated: August 14, 2024          Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

DIANE KELLEHER
Assistant Branch Director, Federal Programs Branch

/s/ *Hannah Solomon-Strauss*
ELIZABETH TULIS
HANNAH SOLOMON-STRAUSS
ANNA DEFFEBACH
*Trial Attorneys*

24-10760.609

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 616-8198
hannah.m.solomon-strauss@usdoj.gov

*Attorneys for Defendants*

24-10760.610

**TAB 3**

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| Hobby Distillers Association, Rick Morris, Thomas O. Cowdrey III, Scott McNutt, John Prince III<br><br>       Plaintiffs,<br><br>  v.<br><br>Alcohol and Tobacco Tax and Trade Bureau, a bureau of the U.S. Department of the Treasury; Department of Justice<br><br>      Defendants. | Case No. 4:23-cv-1221-P |

## <u>NOTICE OF CROSS-APPEAL</u>

Notice is hereby given that the Hobby Distillers Association, Rick Morris, Thomas O. Cowdrey III, and John Prince III, Plaintiffs in the above captioned case, hereby appeal to the United States Court of Appeals for the Fifth Circuit from the Memorandum Opinion and Order (ECF No. 49) dismissing Plaintiffs Rick Morris, Thomas O. Cowdrey III, and John Prince III from the case and the final judgment (ECF No. 50) dismissing them from the case.

Dated: August 16, 2024

Respectfully submitted.

*/s/ Devin Watkins*
Devin Watkins (D.C. Bar # 155179)
Dan Greenberg (D.C. Bar # 9008067)
COMPETITIVE ENTERPRISE INSTITUTE
1310 L St. NW, 7th Floor
Washington, D.C. 20005
(202) 331-1010
Devin.Watkins@cei.org
Dan.Greenberg@cei.org

**GRIFFITH BARBEE PLLC**
Casey Griffith (Texas Bar No. 24036687)
Casey.Griffith@griffithbarbee.com
Nicholas Kliewer (Texas Bar No. 24083315)
Nick.Kliewer@griffithbarbee.com
One Arts Plaza
1722 Routh St., Ste. 710
Dallas, Texas 75201
(214) 446-6020| main
(214) 446-6021| fax

*Counsel for Plaintiffs*

24-10760.612

**TAB 4**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

HOBBY DISTILLERS ASSOCIATION,
ET AL.,

    Plaintiffs,

v.                            **No. 4:23-cv-1221-P**

ALCOHOL AND TOBACCO TAX AND
TRADE BUREAU, ET AL.,

    Defendants.

## OPINION & ORDER

Before the Court is Plaintiffs' Motion for a Preliminary and Permanent Injunction (ECF No. 17), which the Court has advanced to the case's merits as authorized by Federal Rule of Civil Procedure 65. For the reasons distilled below, the Court **DISMISSES** three of the Individual Plaintiffs for lack of standing, but **GRANTS** the motion as to the remaining Plaintiffs, awarding them declaratory relief and a permanent injunction. But the Court **STAYS** the applicability of this Order for **fourteen days** to allow the government to seek emergency appellate relief, if it chooses to do so.

## BACKGROUND

This case arises from two federal statutes that regulate the location of distilled spirits plants, or "stills," which are used to distill beverage alcohol, or "spirits." Individual Plaintiffs are four people from various states who wish to distill spirits at home for personal consumption. Association Plaintiff, the Hobby Distillers Association, is a Texas-based organization that advocates for the legalization of home-distilling beverage alcohol for personal consumption. The Association has approximately 1,300 members nationwide, including all four Individual Plaintiffs. And it was organized to advocate for the legalization of home

distilling while providing information and education to its members on the nuances of distilling various spirits.

Enacted in 1868, 26 U.S.C. § 5178(a)(1)(B) provides that:

> [n]o distilled spirits plants for the production of distilled spirits shall be located in any dwelling house, in any shed, yard, or inclosure [sic] connected with any dwelling house, or on board any vessel or boat, or on premises where beer or wine is made or produced, or liquors of any description are retailed, or on premises where any other business is carried on (except when authorized under subsection (b)).

And § 5601(6) makes it a felony to violate § 5178(a)(1)(B), providing that:

> [any] person who uses, or possesses with intent to use, any still, boiler, or other utensil for the purpose of producing distilled spirits, or aids or assists therein, or causes or procures the same to be done, in [any location proscribed by § 5178(a)(1)(B), except as authorized by § 5178(a)(1)(C)], shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, for each such offense.

*Id*. § 5601(a)(6).

Plaintiffs sued, alleging that these provisions are unconstitutional because they exceed Congress's enumerated powers. Plaintiffs seek declaratory relief and a permanent injunction to prevent their enforcement against them.

The Court held a preliminary injunction hearing on March 28, 2024, and took the Parties' contentions under advisement. Receiving no objection from either party, the Court advanced Plaintiffs' request for injunctive relief to the merits. *See* FED. R. CIV. P. 65(a)(2) ("Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing.").

Accordingly, the Court now considers the entire record on the merits, treating the Parties' filings as summary judgment briefs.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact" and "is entitled

to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). And a fact is "material" when it might affect the outcome of a case. *Id.* at 248. When determining whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the nonmovant. *First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1173 (5th Cir. 2013). In conducting its evaluation, the Court may rely on any admissible evidence of record, but need only consider materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3).

Here, neither Party disputes that there are no factual issues at stake. So, the determinative inquiry is which Party is entitled to judgment as a matter of law.

## ANALYSIS

### I.    Standing

The government first contends that neither Individual Plaintiffs nor Association Plaintiff have standing to sue, primarily because they have not suffered any legal injury. ECF No. 30 at 16.

Article III standing is a "bedrock constitutional requirement that [courts have] applied to all manner of important disputes." *United States v. Texas*, 599 U.S. 670, 675 (2023). This is because Article III confines federal courts' jurisdiction to "Cases" and "Controversies." U.S. CONST., art. III, § 2, cl. 1. Federal courts are not public forums for citizens "to press general complaints [about] government," *Allen v. Wright*, 468 U.S. 737, 760 (1984), so "cases" or "controversies" only exist when a plaintiff has standing to sue. *Texas*, 599 U.S. at 675.

Thus, every court must ask its plaintiff: "What's it to you?" A. Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 SUFFOLK U. L. REV. 881, 882 (1983). The correct answer requires three things. *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992). *First*, there must be a concrete injury in fact that is not conjectural or hypothetical. *Whitmore v. Arkansas*, 495 U.S. 149, 149 (1990). *Second*, there must be causation—a fairly traceable connection between a

24-10760.578

plaintiff's injury and the complained-of conduct of the defendant. *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976). And *third*, there must be redressability—a likelihood that the requested relief will really cure that injury. *See Lujan*, 504 U.S. at 562.

## A. Individual Plaintiffs' Standing

An allegation of future injury may suffice for Article III standing if the threatened injury is certainly impending, or imminent, or if there is a substantial risk that the harm will occur. *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 415–16 n.5 (2013). Alleging that a future injury is merely "possible" is not enough, *id.* at 409, because imminence "cannot be stretched beyond its purpose[: to ensure] that the alleged injury is not too speculative for Article III." *Lujan*, 504 U.S. at 560–61.

Hence, a plaintiff bringing a pre-enforcement challenge to a criminal statute must "demonstrate a realistic danger of sustaining a direct injury [from its] enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). But plaintiffs who intend to engage in proscribed conduct allegedly protected by the Constitution do not need to "expose [themselves] to *actual* arrest or prosecution." *Id.* (emphasis added) (citing *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)). Where "a plaintiff raises a pre-enforcement challenge to a federal statute, the injury-in-fact requirement is satisfied where the plaintiff shows a serious 'intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Paxton v. Dettelbach*, --F. 4th--, 2024 WL 3082331, at *2 (5th Cir. June 21, 2024) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). So, the plaintiff's intent must be *serious*, and the threat of prosecution must be *credible*— meaning more than a "mere possibility." *Babbit*, 442 U.S. at 298–99.

This is not this Court's first tasting of pre-enforcement challenges. *See Paxton v. Restaino*, 683 F. Supp. 3d 565 (N.D. Tex. July 18, 2023) (Pittman, J.), *aff'd. Paxton*, 2024 WL 3082331. In *Paxton*, this Court considered a similar pre-enforcement challenge to federal statutes requiring individuals who wish to make a firearm silencer at home to first apply for the government's permission and pay a tax. *Paxton*, 2024

4

WL 3082331, at *1. The Fifth Circuit affirmed this Court's dismissal for lack of standing because the individual plaintiffs neither alleged an intent to violate the law, nor alleged enough specifics to demonstrate the seriousness of their intent. *Id.* at *2–3. As a result, they could not have faced a credible threat of prosecution. *Id.* But here, the opposite is true.

*First,* Individual Plaintiffs have shown a serious intent to engage in proscribed conduct they believe is affected with a constitutional interest. The statutes at issue make it a crime to possess a still with intent to produce distilled beverages on residential property, among other locations. 26 U.S.C. §§ 5178(a)(1)(B), 5601(6). And all Individual Plaintiffs allege an intent to distill beverage alcohol but for the federal prohibition. *See* ECF No. 17-2. At least one Plaintiff currently operates a still in a shed on his residential property, permitted for distilling ethanol. *Id.* at 5 (Declaration of Scott McNutt). Another currently possesses a still in his garage that he has used to produce ethanol in the past. *Id.* at 9 (Declaration of Thomas Cowdrey). Another possesses a permit to re-distill alcohol at his place of business; and could "easily" transport one of his business's stills to his residence. *Id.* at 3 (Declaration of Rick Morris). And the fourth has become proficient at making beer and wine at home and has identified only one missing part— a condenser—to repurchase before his home still is operable *again*. *Id.* at 7 (Declaration of John Price). In short, each of these plaintiffs is no more than one overt act away from criminal liability under the challenged statutes.

Likewise, all Individual Plaintiffs possess the requisite expertise to distill beverage alcohol if they wanted to. *See* ECF No. 17-2. Plaintiff Cowdrey has already "crafted a recipe for apple pie vodka," and lists its constituent ingredients. *Id.* at 9. Plaintiff Price is already "proficient" at home-brewing beer and wine and knows how to equip his still to produce liquor. *Id.* at 7. Plaintiff Morris is no joke, either. He is a certified "bourbon steward," which entails "mastering the art of tasting spirits and learning the science behind distilling and aging." *Id.* at 2–3. He also operates Brewhaus (America), Inc., a company currently allowed to redistill alcohol. *Id.* at 2. And Plaintiff McNutt has an electrical engineering degree from the United States Coast Guard Academy,

currently distills alcohol for fuel, and understands that the chemistry of
distilled alcohol is nearly identical regardless of its use—

> The alcohol is created by making beer or wine and then
> distilled down using the same process, whether for fuel or
> beverage purposes. Distilled alcohol for fuel use is nothing
> more than high-proof vodka. If you decide to use corn or
> grain to make alcohol, then all of a sudden, you're making
> whiskey.

*Id.* at 4–5. In sum, these Plaintiffs know what they want, what they need
to do it, and how to make it happen. Thus, Plaintiffs show a very "serious
intent" to engage in proscribed conduct. *Paxton*, 2024 WL 3082331, at
*2.

*Second*, the threat of prosecution for such conduct is credible.
Plaintiff McNutt received an unsolicited letter from Defendant TTB
entitled: "Notice of Potential Civil and Criminal Liability." ECF No. 31-
1 at 2. Signed by the Director of the TTB's Trade Investigations Division,
the letter states that "*[i]t has come to the Alcohol Tax and Trade
Bureau's (TTB) attention* that you may have purchased a still capable of
producing alcohol and/or equipment and materials that may be used in
the manufacture of a still." *Id.* (emphasis added). Troubling, right? The
letter further admonishes its recipient that the "[u]nlawful production
of distilled spirits is a criminal offense, punishable by a fine of up to
$500,000 and/or imprisonment for not more than 5 years."[1] *Id.* The letter
finally reminds recipients that anyone wishing to produce alcohol, for
whatever purpose, must first obtain the necessary federal permits, even
though TTB knows that *no* permit will be considered for the home-
distillation of *beverage* alcohol in any case. ECF No. 1 at 5–6.

Though this letter does not make it *certain* that Plaintiffs' will be
prosecuted, it certainly makes it *credible*. The government received

---

[1] As a matter of principle, this Court is distressed at an impropriety
contained in TTB's letter. Regardless of the reader's level of comfort with the
federal government receiving purchase data and using that data to "forewarn"
ne'er-do-well citizens about potential criminal liability, this Court is highly
disturbed that the letter attempts to threaten a "$500,000 fine" when the
statutory maximum is $10,000. *See* 26 U.S.C. § 5601(a).

24-10760.581

Plaintiffs' information from somewhere[2]—it was able to identify and notify those citizens who purchased equipment for stills. Accordingly, these notices of potential criminal liability are one step short of a target letter—ordinarily issued in criminal investigations. Thus, they make the threat of prosecution sufficiently credible for Article III standing. *Babbit*, 442 U.S. at 298–99.

But because the Court has advanced this matter to summary judgment, Plaintiffs must *each* produce sufficient evidence to establish standing. The receipt of TTB's notices is critical for determining the credibility of prosecution against *these* Individual Plaintiffs. *See Paxton*, 683 F. Supp. 3d. at 569 (it is insufficient for the plaintiffs at bar to allege that prosecution is likely because the matter is something that the government has prosecuted in the past). Without it, Plaintiffs' sincere intent to engage in proscribed conduct is not enough; the sincere intent must be *accompanied* by a credible threat of prosecution. *Paxton*, 2024 WL 3082331, at *2. And without the liability notice, a plaintiff may hypothetically intend to break the law with no threat of retribution. Here, only Plaintiff McNutt received such a notice. ECF No. 31 at 4. Therefore, on the present record, only Individual Plaintiff McNutt has established a sincere intent to engage in proscribed conduct *while facing* a credible threat of prosecution. *Paxton*, 2024 WL 3082331, at *2. Accordingly, the remaining Individual Plaintiffs will be dismissed.

Yet, the government argues that the proscribed behavior is still not "affected by a constitutional interest." ECF No. 30 at 16. The government claims that "[w]hile Plaintiffs in this case claim that Congress lacked the constitutional authority to enact the statutory provisions at issue, they do not assert a claim that the statute violates any constitutionally protected right." *Id.* This rebuttal is unavailing.

---

[2]At this Court's hearing on Plaintiffs' request for a preliminary injunction, the government conceded that it identified Plaintiffs by obtaining customer information from manufacturers of still equipment. The government further argued that, because it sent many of these notices, these Plaintiffs have not experienced an individualized threat of prosecution that would give rise to standing. The Court disagrees. Rather, any one of these recipients under these facts would be able to assert a credible threat of prosecution, and potentially have standing to sue.

The question of whether the Constitution or any court has "recognized" a particular right under the Constitution should not be conflated with the public's interest in ensuring that Congress has not acted beyond its enumerated powers. Indeed,

> the restrictions on government power in many Americans' minds are likely to be affirmative prohibitions, such as contained in the Bill of Rights. These affirmative prohibitions come into play [] only where the Government possesses authority to act in the first place. If no enumerated power authorizes Congress to [act], that law may not be enacted, *even if it would not violate any of the express prohibitions in the Bill of Rights or elsewhere in the Constitution.*

*NFIB v. Sebelius*, 567 U.S. 519, 535 (2012) (emphasis added). Thus, a plaintiff need not allege the violation of an articulated right to keep Congress in its lane. Plaintiff McNutt has done just that. He has demonstrated a legal interest that could be lost if he is prosecuted for engaging in conduct that he believes Congress has no power to prohibit. McNutt has therefore suffered an injury-in-fact sufficient for Article III standing. *See Lujan*, 504 U.S. at 560.

The government next contests redressability and causation. ECF No. 30 at 19, n.1. In sum, the government contends that "the distilling activities they wish to undertake would [still] be subject to various state and local restrictions and requirements." *Id.* True. But Plaintiffs contend that they cannot have a state or local permit until a federal permit is issued. ECF No. 31 at 2–3. Thus, Plaintiffs have established causation and redressability because the federal ban on home-distilling is the necessary prerequisite to complying with any other law, regardless of whether they are the subject of this suit.[3] Similar to

---

[3]Plaintiffs dispute the government's contention that Texas law prohibits at-home distilling in the first place, because the Texas Beverage Code's prohibition only applies to "illicit beverages," which they argue whiskey is not. *See* TEX. ALCO. BEV. CODE §§ 103.01–.02. Notwithstanding, Plaintiff McNutt is the only Individual Plaintiff with standing. He is coincidentally a resident of New Jersey, and New Jersey law expressly *allows* distilling and mixing beverages "for immediate personal use" so long as the still is registered with the state. *See* NJ Rev. Stat. §§ 33:2-10 (2014); 33:1-2. Thus, he could easily comply with local law but for the presence of the federal statutes.

standing for a pre-denial-of-benefits challenge, McNutt has standing to challenge the federal prohibition here because it is the first hurdle to any permit he could receive from state or local authorities. *See Nuziard v. Minority Bus. Dev. Agency*, --F. Supp. 3d.--, 2024 WL 965299, at *11 (N.D. Tex. Mar. 5, 2024) (Pittman, J.) ("Absent clairvoyance, there's no way to know if Nuziard or Bruckner would *access* benefits if they applied. But that doesn't make their injuries 'conjectural' or 'hypothetical' because that's not the gravamen of their grievance."); *see generally Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 664–65 (1993) ("[T]hese cases stand for the following proposition: When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit . . . [the injury is] the denial of equal treatment [as a result of the barrier], not the ultimate inability to obtain the benefit.").

To be sure, this is not an equal-protection case. But the basic principles are illustrative of why the government's theory of causation fails. Where a plaintiff's remedy (e.g., home-distilling) hangs in part on compliance with state law, but that compliance is prevented by federal statute, the federal government does not get to rebuff causation by claiming: "It's not me, it's [the states]." If no one had standing to challenge the federal government's overreach of authority merely because there could be a state law they had to pursue next,[4] then the federal government could knock the wind out of any state's authority on any subject within the jurisdiction it shares with the feds. Federalism would indeed give way to pure subjugation.[5]

Accordingly, Plaintiff Scott McNutt has established Article III standing to challenge the prohibition at issue. The Court now turns to whether the Hobby Distillers Association has standing.

---

[4] Which, as we know, is not the case here. *See* n. 3.

[5] This is not to say that we should do away with federal preemption of conflicting state laws. *See* U.S. CONST. art. V, § 1, cl. 2. Supremacy of the United States Constitution must be respected where states seek to subvert it by exempting its citizens from the operation of a *valid* federal law. *See Paxton*, 2024 WL 3082331, at *6. But this case is one where, rather than vindicating a state law in conflict with a federal one, the issue is whether Congress exceeded its enumerated powers in enacting the prohibition in the first place.

## B. Associational Standing

Generally, associations have standing to challenge a law on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). "If an association can satisfy these requirements, we allow the association to pursue its members' claims, without joining those members as parties to the suit." *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 398 (2024) (Thomas, J., concurring).

*First*, Plaintiff Scott McNutt has individual standing. *See* Part I(a). McNutt is a member of the Hobby Distillers Association. ECF No. 1 at 3. Therefore, the Association meets the first *Hunt* requirement.

*Second*, the Hobby Distillers Association is the trade name of a Texas corporation and is a membership organization whose purpose is to promote the nationwide legalization of home distilling. *Id.* at 2. The Association has over 1,300 members nationwide and educates them on the processes involved in distilling beverage alcohol. ECF Nos. 17-2 at 1; 30 at 2. It's leader, Individual Plaintiff Rick Morris, is a certified bourbon steward permitted to redistill alcohol at his business, and he educates the Association's members in everything distillation. ECF Nos. 17-1 at 1–2; 17-4 at 1 ("I learned how to distill beverage alcohol through a friendship with Rick Morris."). Because the relief it seeks is germane to the organization's purpose to promote the practice of home distilling, the Association meets the second *Hunt* requirement.

*Third*, the association's claim that Congress exceeded its enumerated powers does not require the participation of any of its members to pursue. And its request for declaratory and injunctive relief does not require an individual member's participation, either. Claims for declaratory and injunctive relief are not like monetary damages asserted on behalf of someone else, who would be *required* to participate for their representative to state a claim. Here, the Association merely seeks declaratory and injunctive relief so that it may fulfill its purpose

without advocating that its members commit a felony. Accordingly, the Association meets the third *Hunt* requirement.

Thus, because the Hobby Distillers Association has satisfied the three *Hunt* requirements, it has standing to pursue these claims on behalf of its members.[6] *Hunt*, 432 U.S. at 343.

\* \* \*

For the reasons above, the Court concludes that only Individual Plaintiff McNutt and Association Plaintiff Hobby Distillers Association have standing to pursue this action. Individual Plaintiffs Rick Morris, Thomas Cowdrey, and John Price are therefore **DISMISSED**. The Court now turns to the merits of Plaintiffs' claim.

## II.    The Taxing Power

Plaintiffs first contend that 26 U.S.C. §§ 5601(a)(6) and 5178(a)(1)(B) are not proper uses of Congress's taxing power. ECF No. 17-1 at 17. The government responds that the provisions at issue are valid uses of the taxing power because they ensure protection of, and reduce fraud upon, the tax revenue generated on distilled spirits. ECF No. 30 at 11. For the reasons below, the Court concludes that neither Congress's enumerated taxing power nor its incidental powers sustain the provisions as enacted.

### A.  The Enumerated Power to Lay and Collect Taxes

Article I, Section 8 of the Constitution grants Congress the "[p]ower to Lay and Collect Taxes, Duties, Imposts, and Excises, to pay the Debts and provide for the Common Defence and general Welfare of the United

---

[6]The Court has thoroughly reviewed the issues surrounding the propriety of associational standing as articulated by Justice Thomas. *See FDA*, 602 U.S. at 397-405. The Court agrees, particularly in the implementation of remedies, that the doctrine's application causes issues. Take, for instance, this Court's dismissal of Rick Morris for failing to adduce evidence to establish individual standing. While he technically does not have standing, his organization does. So, he will presumably be included by operation into any relief the Court grants to the Association, despite failing to personally suffer an injury. While associational standing is not the primary issue before the Court, because the Association's standing is attained through Individual Plaintiff Scott McNutt (and, in any event, Morris' dismissal was an evidentiary record problem, not necessarily a legal one), the Court invites further clarity from its appellate colleagues on how to tailor relief in these cases.

24-10760.586

States." U.S. CONST. art I, § 8, cl. 1. "Put simply, Congress may tax and spend." *NFIB*, 567 U.S. at 537.

This "power of the purse" grants Congress a *broad* power to tax and spend on things it cannot directly regulate through some other enumerated power. *Id.*; *License Tax Cases*, 72 U.S. 462, 471 (1866) ("It is true that the power of Congress is a very extensive power . . . given in the Constitution, with only one exception and only two qualifications."). Thus, Congress may reach any subject through taxation, so long as it: (1) does not tax exports; (2) apportions direct taxes among the states; and (3) imposes indirect taxes uniformly across the nation. *See* U.S. CONST. art. I, § 8, cl. 1; § 9, cl. 4. So too can Congress reach any subject with spending, going so far as to use federal funds to induce a state's compliance in regulating subjects otherwise unreachable by Congress. *See, e.g., South Dakota v. Dole*, 483 U.S. 203, 205–06 (1987) (holding that Congress could condition the receipt of federal highway funds on South Dakota's raising the state's drinking age to twenty-one).

But even broad power is not limitless. While Congress can certainly tax its way to burdening or influencing behavior, like taxing marijuana to discourage its use, *United States v. Sanchez*, 640 U.S. 42, 44–45 (1950), "Congress's authority under the taxing power is limited to requiring an individual to pay money into the Federal Treasury, no more. If a tax is properly paid, the Government has no power to compel or punish individuals subject to it." *NFIB*, 567 U.S. at 574.

To determine whether a statutory provision is an appropriate use of the taxing power, courts look to its function over its form. *See, e.g., Nelson v. Sears Roebuck & Co.*, 312 U.S. 359, 363 (1941) (holding that courts are only concerned with an exaction's practical operation, rather than its definition or the words used to describe it); *United States v. Sotelo*, 436 U.S. 268, 275 (1978) ("That the funds due are referred to as a 'penalty' . . . does not alter their essential character as taxes."). So, courts may consider how the exaction is assessed, by what mechanisms it is collected, and which agency is responsible for its enforcement to determine whether something Congress codifies as a tax is, really, a tax. *NFIB*, 567 US, at 563–65; *see also License Tax Cases*, 72 U.S. at 471 (upholding "federal license fees" as taxes); *but see Bailey v. Drexel*

*Furniture Co.*, 259 U.S. 20, 36–37 (1922) (striking "child-labor taxes" as "penalties" enacted beyond Congress's taxing power because they required a prerequisite intent to engage in conduct proscribed by state governments). Thus, neither placing a provision within a certain title of the United States Code, nor nicknaming it a "shared responsibility payment" determines whether Congress's taxing power authorizes it. *Id.*

But every tax must produce *some* revenue for the government, period. *NFIB*, 567 U.S. at 564. Indeed, the production of revenue, however negligible, is any tax's "essential feature." *Id.* (citing *United States v. Kahriger*, 345 U.S. 22, 28 (1953) (abrogated on other grounds)); *see, e.g.,* U.S. CONST. art. I, § 7, cl. 1 (requiring all bills *for raising revenue* to originate in the House of Representatives).

Thus, mindful that "[e]very reasonable construction must be resorted to, in order to save a statute from unconstitutionality," *Hooper v. California*, 155 U.S. 648, 657 (1895), the Court concludes that §§ 5601(6) and 5178 (a)(1)(B) are not within Congress's enumerated taxing power.

*First*, §§ 5601(6) and 5178(a)(1)(B) do not raise revenue. Section 5178(a)(1)(B) simply prohibits the placement of a "distilled sprits plant . . . in any dwelling house, in any shed, yard, or inclosure [sic] connected with any dwelling house, or on board any vessel or boat," § 5178(a)(1)(B), nor does it allow any still in any location where beer or wine is produced, or any other business premises, unless excepted by the Secretary. *Id.* And § 5601(6) merely makes it a felony to violate § 5178.

*Second*, § 5178(a)(1)(B), compared to its textual neighbors, makes *no* mention of the secretary of the treasury, the commissioner of internal revenue, revenue generally, nor the protection of revenue. *See* 26 U.S.C. §§ 5178(a)(1)(A), (a)(1)(C). Subsection (a)(1)(a) requires the applicant for a distilling permit to truthfully describe the proposed premises for the operation; and it allows the secretary to "prescribe such regulations [on the] location, construction, arrangement, and protection of [the premises] as he deems necessary to *facilitate inspection and afford adequate security to the revenue.*" § 5178(a)(1)(A) (emphasis added). And subsection (a)(1)(C) allows the secretary to retroactively approve any existing plant that predates the statute "if he deems that such location,

construction, arrangement, and method of operation *will afford adequate security to the revenue.*" § 5178(a)(1)(C) (emphasis added).

"Statutory construction is a 'holistic endeavor,' . . . [but] limitations on a statute's reach are as much a part of the statutory purpose as specifications of what is to be done." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 167, 168 (1st ed. 2012). And "[i]t is invariably true that intelligent drafters do not contradict themselves." *Id.* at 180. Accordingly, § 5178(a), holistically, reveals what Congress did *not* say in § 5178(a)(1)(B). Namely, that Congress did not say "revenue." And "[no] reasonable construction" of this provision can miraculously render §§ 5178(a)(1)(B) and 5601(6) revenue-generating, as required by the constitution to sustain them as a tax. *Hooper*, 155 U.S. at 657. The provision at issue here contemplates *no* enforcement officer with discretion to judge whether such a "residential" premises could nonetheless be adequately constructed to "afford adequate security to the revenue" by preventing the disguise or withholding of non-tax-paid product. *Compare* § 5178(a)(1)(B) ("No distilled spirits plant for the production of distilled spirits shall be located in [or connected to] any dwelling house.") *with* § 5178(a)(1)(A) ("The Secretary shall prescribe such regulations relating to the [distilled spirits plant] as he deems necessary to . . . afford adequate security to the revenue."). Stills at home for hooch are: Simply. Not. Allowed.

Thus, Congress did nothing more than statutorily ferment a crime— without any reference to taxation, exaction, protection of revenue, or sums owed to the government. That plasters sections 5601(6) and 5178(a)(1)(B) as "not a tax." The government argues that it is a proper use of the taxing power to "prevent[] concealment of stills and 'frauds on the revenue' [by prohibiting] distilling operations in certain locations." ECF No. 30 at 21. But that conflates the enumerated taxing power with the incidental powers contained in the necessary and proper clause— which is a distinct inquiry. *See* Part II(b). What matters here is simple: notwithstanding its placement in the internal revenue code, *NFIB*, 567 U.S., at 563–65, and a facially tangential connection to taxes imposed on spirits, *Drexel Furniture*, 259 U.S. at 36–37, Section 5178(a)(1)(B), enforced by a criminal penalty in Section 5601(6), lacks "the essential

feature of any tax." *NFIB*, 567 U.S. at 564. Because "Congress's authority under the taxing power is limited to requiring an individual to pay money into the Federal Treasury," *id.* at 574, it follows that any law that does not require one to pay money into the treasury is not a exercise of the taxing power.

But that is not the government's last call, because Congress may still take necessary and proper actions to effectuate otherwise valid power. U.S. CONST., art. I, § 8, cl. 1; *NFIB*, 567 U.S. at 559 ("As our jurisprudence [has] developed, we have been very deferential to Congress's determination that a regulation is 'necessary.'"). Without dispute that the Constitution vests in Congress the plenary "[p]ower to Lay and Collect Taxes, Duties, Imposts, and Excises," *see id.*, the dispositive question is whether the provisions at issue are necessary and proper to execute taxes laid on distilled spirits.

### B. The Necessary and Proper Clause

The Necessary and Proper Clause empowers Congress "[t]o make all Laws" that are "necessary and proper" to "carry[] into Execution" any enumerated power. U.S. CONST. art. I, § 8, cl. 18. Thus, Congress has broad power to enact statutes "incidental to the [enumerated power], and conducive to its beneficial exercise." *McCulloch v. Maryland*, 4 Wheat. 316, 418 (1819). But by its terms, the Clause does not confer any substantive or independent power beyond those enumerated. *Id.* at 411, 421.

Simply put, the Clause does "not give Congress *cart blanche.*" *United States v. Comstock*, 560 U.S. 126, 158 (2010) (Alito, J., concurring) (citing *McCulloch*, 4 Wheat. at 415). But, while "necessary" does not mean "*absolutely* necessary," it does require "an 'appropriate' link between a power conferred by the Constitution and the law enacted by Congress." *Id.* And "appropriate" or "conducive" does not just mean "convenient for the end Congress has in mind." *McCulloch*, 4 Wheat. at 367. The Constitution requires the law be "necessary for the *accomplishment* [or, in the words of the Constitution, the 'Execution'] of that end." *Id.*

The "necessary and proper" standard has had a long and finicky application. But the Constitution's text is clear. And the textual

supremacy of the Constitution is essential to the order of our system of government. *See, e.g., Marbury v. Madison*, 1 Cranch 137, 174 (1803) (Congress cannot give the Supreme Court appellate jurisdiction where the Constitution states that it shall be original, nor original jurisdiction where the Constitution states that it shall be appellate).

But the dominant application of the Clause remains Marshall's *McCulloch* interpretation: "Let the end be legitimate, let it be within the scope of the Constitution, [and] all the means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consistent with the letter and spirit of the constitution, are constitutional." *McCulloch*, 4 Wheat. at 421.

But *McCulloch* also recognized, "as all must admit, that the powers of the government are limited." *Id.* And Marshall later opined that the means Congress chooses to execute its enumerated powers:

> must have both [necessary and proper] qualities. It must be, not merely convenient—fit—adapted—proper, to the accomplishment of the end in view; it must likewise be necessary for the accomplishment of that end . . . the word "necessary" is said to be a synonyme [sic] of "needful." But both these words are defined as "indispensably requisite;" and, most certainly, this is the sense in which the word "necessary" is used in the constitution. To give it a more lax sense, would be to alter the whole character of the government as a sovereignty of limited powers.

*Id.* at 367. Thus, even where a law is necessary—that is, appropriate, needful, or requisite, *see id.*—it may still be "improper" if it is "not 'consistent with the letter and spirit of the Constitution.'" *NFIB*, 567 U.S. at 559 (quoting *McCulloch*, 4 Wheat. at 421)). Thus, a law that necessary may still be *improper* when it violates the principles of a limited federal government.[7]

---

[7]For an insightful discussion of the original understanding of the limits of federal power as enabled by the Necessary and Proper Clause, see Steven Gow Calabresi, Elise Kostial, & Gary Lawson, "What *McCulloch v. Maryland* Got Wrong: The Original Meaning of 'Necessary' Is Not 'Useful,' 'Convenient,' or 'Rational,'" 75 BAYLOR L. REV. 1 (2023).

That said, he ultimately concluded that the power to pass laws necessary and proper to execute another power "is a political power; it is a matter of legislative discretion . . . the more or less of necessity never can enter as an ingredient into judicial decision." *Id.* at 386–87. Accordingly, the Court held that the Necessary and Proper Clause "must [] intend such powers as are suitable and fitted to the object; such as are best and most useful in relation to the end proposed." *Id.* at 324–25. And a national bank was such an appropriate means.

But many courts have only required a "reasonable" or "rational" relationship to an existing tax regime to uphold an incidental Congressional act. *See, e.g., Felsenheld v. United States*, 186 U.S. 126 (1902). In *Felsenheld*, the Supreme Court considered whether a law forbidding the placement of any foreign article inside cigarette packages was a valid use of the taxing power. *Id.* at 127. There, a cigarette manufacturer inserted a coupon into each package, rewarding the purchaser with various prizes. *Id.* at 128–29. When the government seized over 1,400 packages containing these coupons, the plaintiff sued, alleging that the law was beyond Congress's taxing power. *Id.* at 127–130. Ultimately, the Court held that it was just fine for Congress to use its taxing power "to prescribe that a package of any article which it subjects to tax, and upon which it requires the affixing of a stamp, shall contain only the article which is subject to tax." *Id.* at 134. Relevant here, the *Felsenheld* Court also held that "in the rules and regulations for the manufacture and handling of goods which are subjected to an internal revenue tax, Congress may prescribe *any rule or regulation* which is not itself unreasonable." *Id.* at 132. Indeed, such rules and regulations may even be arbitrary, but still constitutional. *Id.* at 133; *see also Foreman v. United States*, 255 F. 621, 623 (4th Cir. 1918) (upholding a conviction under a criminal statute enacted as a revenue provision because Congress may make any reasonable rule or regulation "although its effect on the revenue be only remote or incidental").

Courts have extended this reasonableness standard to regulations ancillary to alcohol taxes. So far, several statutes regulating alcohol products have been upheld as incidental to Congress's power to tax spirits. *See Stilinovic v. United States*, 336 F.2d 862, 864–65 (8th Cir.

1964) (prohibiting the refilling of distilled liquor bottles that have been stamped "tax paid" with another distilled liquid was reasonable); *Goldstein v. Miller*, 488 F. Supp. 156, 170 (D. Md. 1980), *aff'd*, 649 F.2d 863 (4th Cir. 1981) (Congress's prescription that distilled spirits could only be sold in certain sizes of bottles was reasonable to assist the government in assessing taxes owed on liquor); *United States v. Goldberg*, 225 F.2d 180, 188 (8th Cir. 1955) (regulations pertaining to labelling bottles for packaging distilled spirits, including a tax-paid stamp, was reasonable to assist the government in protecting revenue because it would allow investigators to more easily determine whether the bottle's contents were those accurately described on the label).

But the government's reliance on *Felsenheld's* "rule or regulation" holding is misplaced because it's progeny involved cases where the "rule or regulation" was integrally connected to the procedures for executing the tax at issue.[8] Accordingly, the government applies *Felsenheld* out of context. The government insists that *Felsenheld* is binding here because the crime of possessing a still on residential property "[prevents] the concealment of stills and frauds on the revenue" by hiding containers of spirits. ECF No. 30 at 21 (internal quotations omitted). Thus, "any rule or regulation" assists the protection of revenue where it is rationally connected to that revenue and is "not in itself unreasonable." *Id.* at 20 (quoting *Felsenheld*, 186 U.S. at 132). But *Felsenheld* did not ordain any rule or regulation associated with a tax regime in the literal sense. Rather, *Felsenheld* determined how Congress can act when it needs to collect someone's money—which we now know is the absolute limit of the taxing power. *NFIB*, 567 U.S. at

---

[8]*See Felsenheld,* 186 at 127 (requiring tobacco manufacturers to subtract packaging weight from its final products to *ascertain the taxable dry weight* of the tobacco); *Foreman*, 255 F. at 622 (criminalizing misrepresentations on an Internal Revenue Service form required to be executed at the moment a provider *sells* narcotics); *Stilinovic*, 336 F.2d at 864–65 (regulation prohibiting the *refilling* of distilled spirits bottles *after stamping them "tax-paid."*); *Goldstein*, 488 F. Supp. at 170 (upholding the requirement that spirits be bottled in a certain range of sizes because Congress *measures spirits taxes by proof gallon*); *Goldberg*, 225 F.2d at 188 (upholding *labelling* requirements on spirits bottles to assist the government in ensuring that "the whiskey in the container [corresponds] with that described and that on which the tax as evidenced by the stamp was paid.").

574. *Those* regulatory provisions need only be reasonable to be sustained.

Here, Congress regulated behavior separate from the logistics of liquor taxes. *See CIC Servs., LLC v. IRS*, 593 U.S. 209, 218 (2021) ("assessment or collection" is likened to the *execution* of a specific tax obligation). The government admits that the distilled-spirits tax does not attach until "the substance is in existence . . . [and operates as a first lien] from the time the spirits are in existence as such until the tax is paid." ECF No. 30 at 11 (quoting 26 U.S.C. §§ 5001(b); 5004(a)(1)).

Congress always retains power to criminalize the violation of laws authorized by its enumerated powers. *See Comstock*, 560 U.S. at 137. Without it, federal laws would have little to no effect. But the valid incidental power to punish defrauding the government, *see, e.g., Stilinovic*, 336 F.2d at 864–65, or making false statements under oath, *see, e.g.,* 48 U.S.C. § 1001, does not mean Congress can prohibit *every* behavior which may *result* in fraud—especially if it is not within Congress's incidental power. *Marbury*, 1 Cranch at 174 (Congress cannot transcend the text of the Constitution); *McCulloch*, 4 Wheat. at 367.

On this point, the government argues that no court has recognized a liberty interest in making booze at home. Simply put, home-distilling is not long recognized at common law as essential to the orderly pursuit of happiness. ECF No. 30 at 1221 (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)). But the government's cited cases miss the maker's mark. *See Catanese v. City of Trussville*, 2021 WL 24624 (N.D. Ala. Jan. 4, 2021) (no liberty interest in a liquor license); *Robinson v. District of Columbia*, 234 F. Supp. 3d 14 (D.D.C. 2017) (no national history of a liberty interest in possessing an unsealed container of alcohol in public); *United States v. Behren*, 65 F. Supp. 3d. 1140 (D. Colo. 2014) (no liberty interest allowing the violation of a supervised release condition prohibiting the possession or consumption of alcohol in a child pornography conviction). While courts have not explicitly recognized a liberty interest in home-distilling, that is not the relevant inquiry. Rather, the question is whether Congress exceeded its power in enacting a statute. *See* Part I(a) (abridging protected rights is distinct from

exceeding enumerated power). Congress's incidental powers under the necessary and proper clause are not a "whatever-it-takes-to-solve-a-national-problem" power. *See* John T. Valauri, "*Originalism and the Necessary and Proper Clause*," 39 OHIO N.U. L. REV. 773, 788 (2013) (citing *NFIB*, 567 U.S. at 659 (Scalia, J. dissenting)). So, Congress cannot do whatever it likes until it bumps into one's rights; it can only do what the Constitution says it can.

Since Congress's taxing power is authoritative only from the time a tax liability arises to the point at which it is paid, *NFIB*, 567 U.S. at 574, "the taxing power does not give Congress the same degree of control over individual behavior [as the commerce power]." *Id*. So, it follows that Congress cannot rely on a "reasonable" or "rational" connection to an existing tax to regulate *every* individual behavior occurring before that tax obligation becomes effective. Thus, the applicable standard is not whether §§ 5178(a)(1)(B) and 5601(6) have a "reasonable connection" to revenue, but whether they are needful and "plainly adapted" to executing Congress's taxes on spirits. *McCulloch*, 4 Wheat. at 324–25, 421. Applied here, the Court concludes that §§ 5601(6) and 5178(a)(1)(B) fail this standard.

*First*, the provisions at issue punish individuals Congress cannot reach. The power to tax is a positive one. U.S. CONST., art. I, § 8 cl. 1. Congress has the power to *lay* and *collect* taxes. *Id*. And Congress has the power to punish those who defraud the government in the process of paying them. *Comstock*, 560 U.S. at 137. But §§ 5601(6) and 5178(b)(1)(A) criminalize conduct of persons not subject to the tax, because the tax liability exists only "from the time the spirits are in existence until such tax is paid." ECF No. 30 at 11 (quoting 26 U.S.C. § 5004(a)(1)). Thus, these provisions are not "needful" nor "proper" to "carry [the taxing power] into execution," U.S. CONST., art. 1, § 8, cl. 18; *McCulloch*, 4 Wheat. at 367, because Congress cannot criminalize the conduct of a person to whom its enumerated taxing power does not yet apply. *NFIB*, 567 U.S. at 557 ("The proposition that Congress may dictate the conduct of an individual today because of prophesied future activity finds no support in our precedent.").

20

*Second*, these provisions are not plainly adapted to executing the taxing power because they are not meaningfully connected to the modus operandi of spirits taxes. *Id*. Indeed, the plain text of the challenged provisions makes no reference to any mechanism or process that operates to protect revenue. Sections 5601(6) and 5178(a)(1)(B) only prohibit the certain placement of stills, while other provisions touch the product to be taxed. *See, e.g.*, 26 U.S.C. § 5178(a)(2)(B) (requiring that distilling systems be so constructed as to prevent the removal of distilled spirits before it can be measured by the still's gauge, therefore accurately reporting a volume of spirits to be taxed); *Id*. § 5178(a)(2)(C) (allowing the Secretary of the Treasury to require still operators to notify the government if they change or add to a distilling apparatus "as [the Secretary] may deem necessary to facilitate inspection and [secure] the revenue").

In fact, Congress alternatively considered taxing stills themselves when these provisions were debated in 1867. ECF No. 31-1 at 8 (Report of the Select Committee on Internal Revenue Frauds). And the Committee on Internal Revenue Fraud recommended that Congress reform the mechanism of spirits taxation "as to lay the tax on distilled spirits on the *capacity of the distillery* . . . and by adopting this plan [] secure the collection of the revenue, avoid all the various temptations and opportunities for fraud [by concealing the spirits produced.]" *Id*.

If Congress had chosen that method, then criminalizing the "location of distilled spirits plants" would likely be fair game, because §§ 5178(a)(1)(B) and 5601(6) would be necessarily intertwined with the taxed good. If that were the case, these statutes would almost certainly be necessary and proper to assessing and collecting taxes, because the stills themselves—measured by capacity—would be subject to the tax. The government would not need to argue that these statutes "protect the revenue from fraud," because there would be an essential link between the tax and its collection. Congress could prohibit stills in a myriad of places, like it can mandate the package size of other taxable commodities. But Congress did not choose that method. Instead, Congress chose to keep the proof gallon as the measurement of tax. *See* 26 U.S.C. § 5001. And Congress has criminally prohibited the simple

21

possession of the apparatus used to produce that taxable commodity. It does so with a criminal provision that, by its own text, makes no meaningful connection to the mechanisms by which those taxes are assessed and collected.

Accordingly, the Court concludes that this arrangement is not "plainly adapted" to the execution of Congress's power to lay and collect taxes, because the prohibition is not "suitable and fitted . . . to the end proposed." *McCulloch*, 4 Wheat. at 324–25, 421. Indeed, this current arrangement is exemplary of the "distinction between those means which are incidental to the particular power, which follow as a corollary from it, and those which may be arbitrarily assumed as convenient to the execution of the power." *McCulloch*, 4 Wheat. at 365. While prohibiting the possession of an at-home still meant to distill beverage alcohol might be *convenient* to protect tax revenue on spirits, it is not a sufficiently clear corollary to the positive power of laying and collecting taxes. Accordingly, neither the Taxing Power nor the Necessary and Proper clause authorize 26 U.S.C. §§ 5178(b)(1)(A) or 5601(6) as enacted.

\* \* \*

 It should be stressed that this Opinion does not touch the countless other statutory provisions regarding the distilled spirits tax scheme. Congress may well require a still's premises to be bonded and registered, bottling in specific sizes, or approval from the Tax and Trade Bureau before distilling, along with the government's ability to inspect distilling premises—residential or not. The Court assumes without deciding that those provisions are properly reasonable as required by *Felsenheld* and its progeny. But they are not before the Court here.

## III.   The Commerce Power

Plaintiffs next contend that §§ 5601(a)(6) and 5178(a)(1)(B) cannot be sustained under Congress's commerce power either, because they do not serve a comprehensive interstate market regulation. ECF No. 17-1 at 11. On the contrary, the government contends that the Commerce Clause justifies these provisions because distilling spirits at home for personal consumption is a commercial activity that substantially affects

interstate commerce in the aggregate. ECF No. 30 at 26. For the reasons below, the Court concludes that §§ 5601(a)(6) and 5178(a)(1)(B) are not authorized by Congress's power to regulate local economic activity under the Commerce Clause.

Article I, section 8 of the Constitution grants Congress the power to "regulate commerce . . . among the several States." U.S. CONST., art. I, § 8, cl. 3. Like the taxing power, this grants Congress "broad authority under the clause." *NFIB*, 567 U.S. at 549. Under this authority, Congress can reach as far as local commercial "activities that 'have a substantial effect on interstate commerce,'" *id.* (quoting *United States v. Darby*, 312 U.S. 100, 118–19 (1941)), and even further to non-commercial activities "that [effect commerce] only when aggregated with similar activities of others." *Id.* (citing *Wickard v. Filburn*, 317 U.S. 111, 127–28 (1942)). But, contrasted with the taxing power, *see* Part II(b), the commerce power gives Congress more leeway to directly control individual behavior. *NFIB*, 567 U.S. at 574.

The commerce power has been well-established to allow Congress to regulate three things: (1) the channels of interstate commerce; (2) the instrumentalities of, and things and persons in interstate commerce; and (3) activities with a substantial effect on interstate commerce. *United States v. Morrison*, 529 U.S. 598, 608 (2000). The channels of interstate commerce are "interstate transportation routes through which persons and goods move," *Morrison*, 529 U.S. at 613 n.5, and "extends beyond the regulation of highways, railroads, air routes, navigable rivers, fiber-optic cables and the like." *Groome Res., Ltd., LLC v. Parish of Jefferson*, 234 F.3d 192, 203 (5th Cir. 2000). And the instrumentalities of commerce are the "planes, trains, and automobiles" of commerce, along with those persons associated with them. *See, e.g., United States v. Ballinger*, 395 F.3d 1218, 1226 (11th Cir. 2005) (the instrumentalities of commerce are generally held to be the people and things themselves moving in commerce, and the people who make commerce possible).

At issue here is the "substantial effects" doctrine, which allows Congress to reach purely local and non-economic activity that substantially affects commerce in the aggregate. *NFIB*, 567 U.S. at 549.

24-10760.598

Because this doctrine gives Congress the longest reach, it requires the most prerequisites to pass constitutional muster. It is generally settled that a regulation of local, non-commercial behavior falls within Congress's commerce power when it: (1) substantially affects interstate commerce in the aggregate, *Wickard*, 317 U.S. at 128–29; (2) serves a comprehensive statute that regulates commercial activity on its face, *Gonzalez v. Raich*, 545 U.S. 1, 19 (2005); and (3) is necessary to make that broader commercial regulation effective. *Id.* at 23–26.

Even so, Congress's reach under this doctrine is not limitless. Indeed, "[t]he Commerce Clause is not a general license to regulate an individual from cradle to grave, simply because he will predictably engage in particular transactions." *NFIB*, 567 U.S at 549. So, where regulating a purely local activity does not serve a broader, overarching statutory scheme, Congress cannot not reach it. *United States v. Lopez*, 514 U.S. 549, 567–68 (1995).

For brevity's sake, the Court assumes without deciding that the at-home distillation of beverage alcohol affects interstate commerce in the aggregate. Accordingly, and congruent with the thrust of the Parties' arguments, the Court will focus on whether the prohibition serves a comprehensive market regulation and is needed to make that regulation effective. *Raich*, 545 U.S. at 19, 23–26.

### A. The prohibition does not serve a comprehensive statute that regulates commerce on its face.

The government argues that Congress's authority to regulate at-home distilling is identical to prohibiting at-home cultivation of marijuana because "marijuana that is grown and possessed for personal use is never more than an instant from the interstate market." ECF No. 30 at 28 (quoting *Raich*, 545 U.S. at 40 (Scalia, J., concurring)). This is simply wrong, because it skips the requirement that Congress must first have an established, comprehensive regulatory regime in place.

*Raich* concerned the Comprehensive Drug Abuse Prevention and Control Act of 1970, *Raich*, 545 U.S. at 1, which completely banned all production and distribution of controlled substances unless expressly exempted by its own text. *Id.* The Act was the product of a long history

of regulating the labeling and adulteration of drugs distributed in interstate commerce; and it was the culmination of a nationwide effort to execute President Nixon's "War on Drugs." *Id.* at 10. The Act further consolidated existing drug laws into one authoritative statutory regime. *Id.* And it provided mechanisms for the government to control legitimate channels of distributing narcotics, prevent their diversion into illicit channels, and strengthen law enforcement capability to cut down illegal drug trafficking. *Id.* So, when California attempted to allow local cultivation of medicinal marijuana, the Supreme Court held that California, acting alone, could not statutorily "excise concededly valid applications of a comprehensive statutory scheme." *Id.* at 3.

Likewise, in *Wickard*, the Supreme Court ruled against Farmer Filburn's attempt to cultivate wheat for his own consumption for a similar reason. *Wickard*, 317 U.S. at 127–28. The comprehensive statutory regime at issue there was the Agricultural Adjustment Act of 1938. *Id.* at 115. In the wake of the Great Depression, the AAA was implemented to "control the volume moving in interstate and foreign commerce in order to avoid surplusages and shortages and the consequently abnormally low or high wheat prices." *Id.* In short, it was *complete control* of agricultural commodities by Congress. It allowed the Secretary of Agriculture to ascertain and prescribe yearly allotments that an individual farmer would be allowed to produce, and even allowed direct loans and payments to individual farmers in certain circumstances. *Id.* Accordingly, the Court put Filburn's challenge out to pasture, because "Congress may properly have considered that wheat consumed on the farm where grown[,] if wholly outside the scheme of regulation[,] would have a substantial effect in defeating and obstructing its purpose to *stimulate trade* therein at increased prices." *Id.* at 128–29 (emphasis added).

Here, the interstate spirits market is policed by the Federal Alcohol Administration Act. 27 U.S.C. §§ 201 et seq. While the Act is a statutory scheme that governs commerce on its face, the Court concludes that it is not the *comprehensive* kind that justifies Congressional regulation of local behavior, like in *Wickard* and *Raich*. To be sure, the Act is "comprehensive" in the sense that it addresses just about every facet of

25

the *interstate* alcohol market. It requires alcohol "businesses" to have permits, 27 U.S.C. §§ 203, 204; regulates bulk sales and bottling, *id.* § 206; and defines and prohibits unfair competition in interstate commerce. *Id.* § 205. And subchapter II of the Act prescribes various labelling requirements for alcohol products, mindful that "the American public should be informed about the health hazards that may result from the . . . abuse of alcoholic beverages." *Id.* § 213.

But the Act is not a "comprehensive" regulation of commerce of the kind that allows Congressional intervention in *every* related local activity. This is because the Act does not directly regulate the supply and demand of alcohol, does not make Congress a production manager over each distillery to inflate prices, and is not part of a federal directive to either promote or eliminate a national marketplace for alcohol. *Compare* 27 U.S.C. § 201 et seq.; *Wickard*, 317 U.S. at 128–29; *Raich*, 545 U.S. at 1. In short, the Act is not a "comprehensive" scheme of regulation because there are many aspects of the alcohol industry that Congress has left untouched. For example, the Act does not mandate the quantity of spirits that a distillery may produce. It is silent on a label's design and aesthetics absent a required warning label. And despite providing parameters for fair competition, it does not influence how much market share a producer may obtain. There is simply no similar degree of control over the "production, distribution, and consumption" of alcohol as there was for wheat in *Wickard* or controlled substances in *Raich*.

### B. Even if the Act were comprehensive, the prohibition is not necessary to effectuate it.

The Supreme Court's reasoning in *Lopez* and *Morrison* is illustrative on this point. In *Lopez*, Congress attempted to make it "a federal offense for any individual knowingly to possess [a] firearm at a place the individual knows or has reasonable cause to believe is a school zone." *Lopez*, 514 U.S. at 549. In justifying its action, the government argued that the possession of a firearm in or near a school may result in violent crime, and that violent crime affects the national economy. *Id.* at 563–64. But the Supreme Court rejected that contention, namely because the text of the statute "contain[ed] no jurisdictional element which would

26

ensure . . . that the firearm possession in question affects interstate commerce." *Id.* at 561. As the Court explained:

> Section 922(q) is a criminal statute that by its terms has nothing to do with "commerce" or any sort of economic enterprise . . . [it] is not an essential part of larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated. It cannot, therefore, be sustained under our cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce.

*Id.*

Likewise, in *Morrison*, Congress attempted to create a private right of action for victims of "a crime of violence motivated by gender." *Morrison*, 529 U.S. at 605. As in *Lopez*, the government sought to sustain the law because gender-motivated violence substantially affected interstate commerce. *Id.* at 609. But the Supreme Court, relying on *Lopez*, disagreed. Indeed, the Court similarly held that a blanket right of action for criminal behavior, devoid of any textual but-for causation connecting that behavior to commerce, would "completely obliterate the Constitution's distinction between national and local authority." *Id.* at 615. "The regulation and punishment of intrastate [crime] that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States." *Id.* at 618 (citing *Cohens v. Virginia*, 6 Wheat. 264, 426 (1821)).

The statutory provisions at issue here are similar. Taken together, 26 U.S.C. §§ 5601(6) and 5178(a)(1)(B) form a crime of possession, solicitation, and aiding and abetting. Section 5178(a)(1)(B) prohibits the location of a

> distilled spirits plant [or for simplicity, a "still"] . . . in any dwelling house, in any shed, yard, or inclosure [sic] connected with any dwelling house, or on board any vessel or boat, or on premises where beer or wine is made or produced, or liquors of any description are retailed, or on premises where any other business is carried on [except where authorized elsewhere].

26 U.S.C. § 5178(a)(1)(B). And section 5601(6) makes it a federal offense for anyone who "uses, possesses with intent to use, any still, boiler, or other utensil for the purpose of producing distilled spirits, or aids or assists therein, or causes or procures the same to be done, in any [location prohibited by § 5178(a)(1)(B)." *Id.* § 5601(6).

Beginning and ending with the text, neither of these provisions connect the prohibited behavior to interstate commerce. And no reasonable construction of the statutes can insert language that does. *Hooper*, 155 U.S. at 657. Like *Lopez* prohibited the knowing possession of a firearm at or near a school, §§ 5601(6) and 5178(a)(1)(B) prohibit the possession of a still with the intent to produce beverage alcohol in or near a residence, boat, vessel, or any site of business. 26 U.S.C. §§ 5601(6), 5178(a)(1)(B). The statute does not, for instance, prohibit the possession of a still with intent to imbibe *where the still's components travelled in interstate commerce. Compare* 18 U.S.C. § 922, et seq. Nor does it prohibit the possession of a still with intent to produce beverage alcohol *for distribution in interstate commerce. Id.* While the statutes may *anticipate* that one who distills liquor at home may attempt to distribute it in violation of some other federal law, the text remains the text. These provisions are simply "criminal statute[s] that by [their] terms" have no commerce-clause jurisdictional hook to bring the behavior Congress seeks to regulate within its authority. *Lopez*, 514 U.S. at 561.

Accordingly, the Commerce Clause does not authorize 26 U.S.C. §§ 5601(6) or 5178(a)(1)(B) as enacted.

## IV.   Plaintiffs' request for a permanent injunction.

Having concluded that §§ 5601(6) and 5178(a)(1)(B) are unconstitutional, the Court lastly turns to Plaintiffs' request for a permanent injunction.

Plaintiffs are not automatically entitled to an injunction merely because they win a declaratory judgment. *See Harrisonville v. W.S. Dickey Clay Mfg. Co.*, 289 U.S. 334, 337–38 (1933) ("[A]n injunction is not a remedy which issues as of course.") Declaratory judgments and injunctions are separate remedies with distinct standards. *See*

*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (collecting cases).

Thus, to obtain injunctive relief, these Plaintiffs must demonstrate that:

> (1) [they] have suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

*First,* Plaintiffs have suffered irreparable harm because the loss of constitutional freedoms, "for even minimal periods of time . . . unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). This is so because constitutional harms are those that "cannot be undone by money damages" or are "especially difficult" to compute. *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328. 338 (5th Cir. 1981). While the government contends that no "right to distill" has been recognized, that's not the Plaintiffs' injury. Rather, their injury is being subjected to the enforcement of a federal law that Congress had no power to enact. And there is no monetary standard which could compute those damages. Indeed, not even a declaratory judgment that these provisions are unconstitutional will afford adequate relief to Plaintiffs absent the Court's injunction against their enforcement. That's the point of the whole suit.

*Second*, and for the same reasons, Plaintiffs' have demonstrated that there is no adequate legal remedy for their injury. *eBay*, 547 U.S. at 391. Courts often analyze the "irreparable harm" and "inadequate legal remedy" requirements for injunctive relief together because "equity has always acted *only* when legal remedies are inadequate." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959). Because there is no adequate monetary standard to compute Plaintiffs' damages here, and the Court's declaratory judgment alone will not stop the enforcement of

24-10760.604

unconstitutional statutes, Plaintiffs have demonstrated that there is no legal remedy that would redress their injury.

*Third* and *fourth*, Plaintiffs must show that the balance of hardships and the public interest weigh in favor of injunctive relief. *eBay*, 547 U.S. at 391. These factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Thus, the Court focuses on whether the Parties' and the public's interest in an injunction outweighs the government's interest in maintaining a statute roughly 130 years old.

"The provisions of the Constitution are not time-worn adages or hollow shibboleths . . . they are the rules of government." *Trop v. Dulles*, 356 U.S. 86, 103–04 (1958). And Plaintiffs have met their burden to demonstrate that a currently enforced statute has no constitutional backing. In other words, they've shown that Congress and the TTB have not been playing by the rules of government. And the judicial responsibility to "enforce the paramount commands of the Constitution" is not removed simply because an agency has been playing by the wrong rules for a long time. *Id.* at 104. ("We cannot push back the limits of the Constitution merely to accommodate challenged legislation.") When the courts fail their responsibility to enforce the Constitution, "[its words] become little more than good advice." *Id.*

Because "[t]here is generally no public interest in the perpetuation of unlawful agency action," *Texas v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021) (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)), and Plaintiffs have demonstrated the lack of constitutional authority for the statutes at issue, the Court finds that the balance of equities between the Parties and the public's interest in enjoining unconstitutional laws outweighs the government's interest in keeping them on the books. To the extent that the government retains a reliance interest in the continuity of the prohibition at issue, it is a de minimis one, because these provisions do not raise revenue for the government, nor are plainly adapted to protecting other revenue. *See* Part II. Accordingly, Plaintiffs' motion for a permanent injunction is **GRANTED.**

## CONCLUSION

The judiciary has long been hesitant to abrogate the actions of Congress absent the clearest abuse of its power. *United States v. Harris*, 106 U.S. 629, 635 (1883) ("This presumption [that Congress will pass no act not within its power] should prevail unless the lack of constitutional authority . . . is clearly demonstrated."). Indeed, the invalidation of an act by the people's representatives ought to be one of the most reluctant decisions of a federal judge. *See, e.g., Blodgett v. Holden*, 275 U.S. 142, 148 (1927) (holding that, when given the choice between reading a statute as violative of the Constitution or not, the judiciary's plain duty is to adopt the reading that saves the act); *Hooper*, 155 U.S. at 657 ("Every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.").

But "[the Court's] deference in matters of policy cannot, however, become abdication in matters of law." *NFIB*, 567 U.S. at 538. Indeed, the Constitution is *written* to prevent societal amnesia of the defined limits it places on this government *of and by* the people. *See Marbury*, 1 Cranch at 176. That is where the judiciary must declare when its coequal branches overstep their Constitutional authority. Congress has done so here.

Accordingly, having advanced Plaintiffs' motion to the merits, the Court **GRANTS** Plaintiffs' request for relief (ECF No. 17) and **DECLARES** that 26 U.S.C. § 5601(6) and 26 U.S.C. § 5178(a)(1)(B) are **UNCONSTITUTIONAL**.

The United States Government is hereby **PERMANENTLY ENJOINED** from enforcing 26 U.S.C. § 5178(a)(1)(B); 26 U.S.C. § 5601(6); or any regulation promulgated thereunder, against Individual Plaintiff Scott McNutt, Associational Plaintiff Hobby Distillers Association, or the Association's members. But the Court **DISMISSES** Individual Plaintiffs Thomas Cowdrey, John Prince, and Rick Morris for lack of standing.

However, the Court hereby **STAYS** the applicability of this Opinion and Order for **fourteen days from the date of this Order** to allow

24-10760.606

the federal government to seek emergency relief at the appellate level, should they choose to do so.

**SO ORDERED** on this **10th day of July 2024.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

**TAB 5**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**HOBBY DISTILLERS ASSOCIATION,
ET AL.,**

    Plaintiffs,

v.                              **No. 4:23-cv-01221-P**

**ALCOHOL AND TOBACCO TAX AND TRADE
BUREAU, ET AL.,**

    Defendants.

### FINAL JUDGMENT

This Judgment is issued as required by Federal Rule of Civil Procedure 58. In accordance with the Court's order granting Plaintiffs' motion for a permanent injunction and declaratory relief, this case is **DISMISSED with prejudice.**

Because the Court concludes that the government's legal position was not substantially unjustified, as required for an award of attorney's fees under the Equal Access to Justice Act, *see* 28 U.S.C. § 2414(d)(1)(A), each party shall bear its own costs and attorney's fees.

The Clerk shall transmit a true copy of this judgment to the parties.

**SO ORDERED** on this **11th day of July 2024.**

*Mark T. Pittman*

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2024, I electronically filed the foregoing with

the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by

using the appellate CM/ECF system. Participants in the case are registered CM/ECF

users.

*s/ Sarah Clark Griffin*
Sarah Clark Griffin
