**CASE NO. 24-10760**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

SCOTT MCNUTT,
*Plaintiff-Appellee*,

RICK MORRIS; HOBBY DISTILLERS ASSOCIATION;
THOMAS O. COWDREY, III; JOHN PRINCE, III,
*Plaintiffs-Appellees/Cross-Appellants,*

v.

U.S. DEPARTMENT OF JUSTICE; ALCOHOL AND TOBACCO TAX AND TRADE BUREAU,
A BUREAU OF THE U.S. DEPARTMENT OF THE TREASURY,
*Defendants-Appellants/Cross-Appellees*.

On Appeal from the United States District Court for the Northern District of Texas
No. 4:23-cv-1221-P
The Honorable Mark T. Pittman, U.S. District Judge, Presiding

**BRIEF OF THE CATO INSTITUTE AS *AMICUS CURIAE***
**IN SUPPORT OF PLAINTIFF-APPELLEE**
**AND PLAINTIFFS-APPELLEES/CROSS-APPELLANTS**

Thomas A. Berry
*Counsel of Record*
Brent Skorup
Clark M. Neily III
CATO INSTITUTE
1000 Mass. Ave., N.W.
Washington, DC 20001
443-254-6330
tberry@cato.org

December 12, 2024

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

CASE NO. 24-10760

The undersigned counsel of record certifies that the following listed persons and entities as described in Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Person or Entity | Connection to Case |
| --- | --- |
| Brent Skorup | Counsel to *amicus* |
| Thomas Berry | Counsel to *amicus* |
| Cato Institute | *Amicus curiae* |

*Amicus* Cato Institute is a Kansas nonprofit corporation that has no parent companies, subsidiaries, or affiliates, and does not issue shares to the public.

/s/ Thomas A. Berry

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT .......... i

TABLE OF AUTHORITIES .......... iii

INTEREST OF *AMICUS CURIAE* .......... 1

INTRODUCTION AND SUMMARY OF THE ARGUMENT .......... 1

ARGUMENT .......... 5

I. THE GOVERNMENT'S AT-HOME DISTILLING BAN IS NOT REASONABLY RELATED TO THE COLLECTION OF TAXES. .......... 5

A. The District Court Correctly Ruled that the Government's Reliance on *Felsenheld* is Misplaced. .......... 7

B. The District Court Correctly Ruled that the Government's Reliance on *Stilinovic* is Misplaced. .......... 8

II. THE SUPREME COURT REJECTS CONGRESSIONAL ATTEMPTS TO TRANSFORM ITS TAXING POWER INTO A FEDERAL POLICE POWER. .......... 10

III. LIBERTY AND FEDERALISM ARE JEOPARDIZED IF CONGRESS CAN PROHIBIT ANY TAXABLE CONDUCT BECAUSE IT OCCURS WITHIN A HOME. .......... 13

CONCLUSION .......... 15

CERTIFICATE OF COMPLIANCE .......... 16

CERTIFICATE OF SERVICE .......... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bailey v. Drexel Furniture Co.*, 259 U.S. 20 (1922) ....................12

*Berman v. Parker*, 348 U.S. 26 (1954) ....................4

*Brown v. Maryland*, 25 U.S. 419 (1827) ....................10

*Felsenheld v. United States*, 186 U.S. 126 (1902) .................... 5, 7, 8, 9

*Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau,* No. 4:23-CV-1221-P, 2024 WL 3357841 (N.D. Tex. 2024) .................... 5, 6, 7, 10

*NFIB v. Sebelius*, 567 U.S. 519 (2012) .................... 4, 5, 10

*Stilinovic v. United States*, 336 F.2d 862 (8th Cir. 1964) .................... 5, 8, 9

*United States v. Constantine*, 296 U.S. 287 (1935) ....................12

*United States v. Dewitt*, 76 U.S. 41 (1869) ....................11

*United States v. Goldberg*, 225 F.2d 180 (8th Cir. 1955) ....................6

**Statutes**

26 U.S.C. § 5001 ....................6

26 U.S.C. § 5178(a)(1)(B) .................... 2, 12, 13

26 U.S.C. § 5301(c)(1) ....................9

AN ACT IMPOSING TAXES ON DISTILLED SPIRITS AND TOBACCO AND FOR OTHER PURPOSES, § 12, Stat. 125 (1868) ....................13

**Constitutional Provisions**

U.S. CONST. art I, § 8, cl. 1 ....................5

**Other Authorities**

Eugene Mcquillin, *Constitutional Validity of Zoning Under the Police Power*, 11 ST. LOUIS L. REV. 76 (1926) ....................12

WILLIAM HOGELAND, THE WHISKEY REBELLION: GEORGE WASHINGTON, ALEXANDER HAMILTON AND THE FRONTIER REBELS WHO CHALLENGED AMERICA'S NEWFOUND SOVEREIGNTY (2006) ....................1

**Regulations**

Revision of Distilled Spirits Plant Regulations, 76 Fed. Reg. 9080 (2011) ....................2

## INTEREST OF *AMICUS CURIAE*[1]

The Cato Institute is a nonpartisan public policy research foundation founded in 1977 and dedicated to advancing the principles of individual liberty, free markets, and limited government. Toward that end, Cato's Robert A. Levy Center for Constitutional Studies publishes books and studies about legal issues, conducts conferences, produces the annual *Cato Supreme Court Review*, and files *amicus* briefs in constitutional law cases. This case interests Cato because adherence to the U.S. Constitution's constraints on the national government are needed to protect individual liberty and our federal system of government. The government here intrudes on Americans' liberties because it has exceeded its limited, enumerated powers.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Americans were distilling spirits on their homesteads before this nation was founded.[2] Grain whiskey and rum were popular with colonial Americans, and by

[1] Fed. R. App. P. 29 Statement: No counsel for either party authored this brief in any part. No person or entity other than *amicus* made a monetary contribution to its preparation or submission. All parties have consented to the filing of this brief.

[2] *See*, *e.g.*, WILLIAM HOGELAND, THE WHISKEY REBELLION: GEORGE WASHINGTON, ALEXANDER HAMILTON AND THE FRONTIER REBELS WHO CHALLENGED AMERICA'S NEWFOUND SOVEREIGNTY 66 (Lisa Drew 2006) (noting that in the Revolutionary War era, "[d]istilling went on in home stillhouses, at community stills, and in large-scale commercial operations").

1770 there were over 150 distilleries in New England alone.[3] Prominent Founding Era leaders like George Washington had successful distilling businesses on their property.[4] Washington produced corn and rye whiskey near his home in Mount Vernon, and it was such a substantial commercial operation that two employees, a site manager and an assistant, lived on the premises of the distillery.[5] Today, however, the U.S. government completely bans homestead stills like Washington's. *See* Revision of Distilled Spirits Plant Regulations, 76 Fed. Reg. 9080 (2011) ("While Federal law allows for the limited home production of wine and beer, no such provision exists for distilled spirits.").

Scott McNutt, like many hobbyists, would like to engage in the American tradition of distilling spirits on his private property for his personal use. He cannot because an 1868 federal law prohibits home distilling. *See* 26 U.S.C. § 5178(a)(1)(B) (broadly prohibiting distilling in dwellings and outbuildings).[6] Operating a still in or near your home is a felony. § 5601(a)(6). McNutt faces imprisonment and substantial

---

[3] *See* Clay Risen, *Back in the Mix: New England Rum*, N.Y. TIMES (Oct. 30, 2012), https://www.nytimes.com/2012/10/31/dining/rum-returns-to-new-england.html.

[4] *See* Rachel Cooper, *George Washington's Whiskey Distillery and Gristmill at Mount Vernon*, ABOUT.COM (Sept. 13, 2008), https://web.archive.org/web/20080913052003/http://dc.about.com/od/museumsinnorthernva/a/GWGristmill.htm.

[5] *See id*.

[6] Unless noted otherwise, all citations to the U.S. Code are to Title 26.

fines for distilling, so he joined other hobbyists and sued the government, alleging the "at-home distilling" ban violates the U.S. Constitution. *See* Compl. 7–9.

The government responded and justified its distilling ban with an unusual and far-reaching argument: when a taxable event occurs in a home, the government can use its Taxing Power to prohibit Americans from engaging in that practice entirely. Br. in Opp. 2 (justifying the federal at-home distilling ban in part because "the [federal] tax on distilled spirits attaches 'as soon as this substance is in existence'") (citation omitted). The government claims, in effect, that the Taxing Power includes a broad power to regulate personal conduct, displacing local police powers and state government authority. The district court correctly held that the Taxing Power does not include the tremendous authority the government claims. The government has appealed.

We write separately to highlight three points. First, although courts often defer to Congress's promulgation of rules that are incidental to tax statutes, prohibiting at-home distilling goes too far. The ban does not resemble other incidental tax rules the government cites as analogs, like mandatory bottle labels, affixing tax stamps to taxed products, or requiring the use of measuring instruments. Such laws directly improve tax collection efficiency. An outright prohibition on distilling spirits in dwellings and outbuildings has a far more tenuous relation to collecting revenue, and the precedents the government relies on do not apply here.

Second, the scope of Congress's taxation power is limited. The Supreme Court was clear in *NFIB* that tax provisions cannot be a roundabout way of regulating individual behavior that is not reachable via the Commerce Clause. *NFIB v. Sebelius*, 567 U.S. 519, 573–74 (2012). The Taxing Power must serve a revenue-generating purpose. *Id*. But the criminalization of at-home distilling does not raise revenue. Congress here regulates conduct—distilling at home for personal use—remote from tax collection, transforming a purported tax power into something resembling federal police powers.

Finally, the government's argument would upend our federal system of government. The government argues that it can broadly regulate conduct in Americans' homes, provided those regulations are disguised as tax provisions. But health, safety, and moral questions that do not involve the transmission of goods and services across state lines are the exclusive province of the states. *See Berman v. Parker*, 348 U.S. 26, 32 (1954). The government offers no limiting principle to its contention that it may prohibit taxable conduct that occurs within the home. The government's logic, if accepted by courts, would allow Congress tremendous discretion to displace state and local regulations and to strictly regulate private, personal conduct using the Taxing Power.

This case does not require the Court to second-guess Congress's complex policy determinations regarding convenient methods of spirits tax collection. There

is no tax collection here. The government argues that when a taxable event occurs in a home and when monitoring that event is difficult for the government, it has the equivalent of a generalized police power to regulate and prohibit that taxable event. The district court ruled that the Taxing Power cannot sweep that broadly. This Court should affirm.

## ARGUMENT

### I. THE GOVERNMENT'S AT-HOME DISTILLING BAN IS NOT REASONABLY RELATED TO THE COLLECTION OF TAXES.

The Constitution grants Congress the "[p]ower to Lay and Collect Taxes, Duties, Imposts, and Excises, to pay the Debts and provide for the Common Defence and general Welfare of the United States." U.S. CONST. art I, § 8, cl. 1. "Put simply, Congress may tax and spend." *NFIB*, 567 U.S. at 537. The government argues that its at-home distilling ban and imposition of criminal penalties are an essential part of a federal effort to prevent tax fraud. *Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau,* No. 4:23-CV-1221-P, 2024 WL 3357841, at *11 (N.D. Tex. 2024).

Although Congress's exercise of incidental powers to collect taxes receives deference, those rules must be reasonably related to the collection of taxes. *Felsenheld v. United States*, 186 U.S. 126, 134 (1902). The government relies on *Felsenheld* and a subsequent Eighth Circuit decision, *Stilinovic*, to urge deference to its broad taxing powers. *See Stilinovic v. United States*, 336 F.2d 862 (8th Cir. 1964).

However, the lower court correctly ruled that those cases are distinguishable and that, unlike the laws in those cases, a law prohibiting at-home distilling is not reasonably related to revenue collection. *Hobby Distillers Ass'n*, 2024 WL 3357841 at *17–18.

"An elaborate system has been set up by legislation and regulations thereunder to protect the revenue on distilled spirits." *United States v. Goldberg*, 225 F.2d 180, 187 (8th Cir. 1955). Many of these federal rules for spirits regulate the operations of commercial distilleries, such as rules ensuring accurate readings of "proof of gallon" (the unit used for taxation), preventing tampering with measuring gauges, and authorizing government inspections at production facilities to monitor tax compliance. *See*, *e.g.*, § 5001.[7] However, the at-home distilling ban stands apart from these types of laws and regulations. Most federal liquor tax rules have a direct effect on the inspection of taxed products or on their measurement for tax collection

---

[7] Congress has codified many distillery and liquor rules, including:

> (1) registration of stills, (2) bond for any violation, (3) requirements to construction to allow for federal inspection, (4) requirements that the distilling system be sealed to prevent unauthorized removal prior to the gauges counting produced quantities, (5) federally required gauges that measure the amount of spirits produced, (6) federally required locks, (7) authorized federal entry to examine the facilities of production, and (8) records and reports necessary to account for the amount of distilled alcohol that was made and stored.

Compl. at 9.

purposes. The at-home distilling ban effects neither, and the cases the government relies on do not support its broad interpretation of the Taxing Power.

### A. The District Court Correctly Ruled that the Government's Reliance on *Felsenheld* is Misplaced.

The government relies on the Supreme Court's decision in *Felsenheld,* 186 U.S. at 126, to support the constitutionality of its prohibition. *See* Br. in Opp. 11. But, as the court below correctly ruled, the at-home distilling ban bears no resemblance to the law challenged in *Felsenheld*. *Hobby Distillers Ass'n,* 2024 WL 3357841 at *17. *Felsenheld* involved a tax law that bluntly prohibited "foreign articles" in tobacco pouches. 186 U.S. at 126. The law was passed in response to tobacco producers' practice of inserting prizes, "such as pen knives," into packages. *Id*. at 126–27. Pursuant to that law, federal tax officials seized hundreds of packages of tobacco from a tobacco seller because he had inserted paper coupons conferring prizes into each package. *Id*. at 127–28. The tobacco seller challenged the constitutionality of the foreign articles ban, *id*. at 127, but the Court upheld the statute as consistent with the Taxing Power. *Id*. at 134.

The government cites dicta in that decision about the broad reach of tax laws. Br. in Opp. 11 (citing *Felsenheld*, 186 U.S. at 132 (remarking that for manufactured goods that are taxed, "Congress may prescribe any rule or regulation which is not, in itself, unreasonable")). But the holding in *Felsenheld* is narrow. The Court merely held that "it is within the power of Congress to prescribe that a package of any article

which it subjects to tax . . . shall contain only the article which is subject to the tax." *Felsenheld*, 186 U.S. at 134. Further, in its holding and analysis, the Court clearly contemplated that "reasonable" tax regulations are those clearly directed at protecting revenue collection. *See id*. at 126–33. In *Felsenheld*, the connection between the foreign articles ban and revenue collection was apparent. The addition of foreign objects, like pen knives and trinkets, complicated assessing the tare weight of tobacco products for tax purposes. *Id*. at 126–31.

The government fails to identify an analogous and direct connection to spirits tax collection in this case. Instead, the government stretches the broad dicta in *Felsenheld* beyond its breaking point. *See* Br. in Opp. 11. The at-home distilling ban is nothing like the foreign articles ban. In *Felsenheld* there remained a product to be taxed. Here, however, the government bans outright the production of a taxable product. Nowhere in *Felsenheld* did the Court suggest that Congress's power to enact reasonable tax regulations includes broad authority to prohibit the manufacture and private use of taxed goods.

### B. The District Court Correctly Ruled that the Government's Reliance on *Stilinovic* is Misplaced.

Likewise, *Stilinovic* does not help the government. 336 F.2d at 862. In *Stilinovic*, the Eighth Circuit upheld a federal statute that prohibited liquor sellers, like bar owners and restaurateurs, from "plac[ing] in any liquor bottle any distilled spirits whatsoever other than those contained in such bottle at the time of stamping."

*Id*. at 863 (citing § 5301(c)(1)). In that case, a bar owner was convicted under that anti-refilling statute and then challenged the power of Congress to criminalize the combining of two partially used bottles of taxed whiskey. *Id*. The Eighth Circuit upheld the refilling ban as a constitutional exercise of the Taxing Power. *Id*. at 865.

*Stilinovic* is not binding on this court and, further, it is distinguishable from the issues here. The statute in *Stilinovic* contains what the Court in *Felsenheld* characterized as "rules and regulations for the manufacture and handling of goods which are subjected to an internal revenue tax." *Felsenheld*, 186 U.S. at 132. The rule prohibits refilling distilled spirit bottles after they've been stamped "tax-paid." *Stilinovic*, 336 F.2d at 864–65. The refilling ban clearly and directly makes inspections of commercial premises and their sales of taxed liquors easier for tax collectors to assess. The at-home distilling ban, in contrast, operates in a non-commercial, non-taxable context—production for one's personal use. Although the government argues that the at-home distilling ban prevents the concealment of tax fraud, that's only because the ban prevents home distillers from production altogether. There are no inspections, as in *Stilinovic*, nor taxed products to weigh and assess.

As the court below noted, the laws upheld in *Felsenheld* and *Stilinovic* were rules or regulations "integrally connected to the procedures for executing the tax at

issue." *Id*. at 17. In contrast, the at-home distilling ban regulates "behavior separate from the logistics of liquor taxes." *Hobby Distillers Ass'n*, 2024 WL 3357841 at *19.

## II. THE SUPREME COURT REJECTS CONGRESSIONAL ATTEMPTS TO TRANSFORM ITS TAXING POWER INTO A FEDERAL POLICE POWER.

Whether citizens should be able to distill spirits in the privacy of their own homes is a health, safety, and moral question reserved for the states to govern with their police powers. *See Brown*, 25 U.S. at 443. Criminalizing at-home distilling under the Taxing Power punishes people not subject to a tax and allows Congress to circumvent the limitations of the Constitution. The Supreme Court has rejected such distortions of the Taxing Power.

The Supreme Court made clear in *NFIB* that the Taxing Power is narrow and must be directed at revenue generation: "Congress's authority under the taxing power is limited to requiring an individual to pay money into the Federal Treasury, no more." 567 U.S. at 574. The Court added: "If a tax is properly paid, the Government has no power to compel or punish individuals subject to it." *Id*. Even more relevant to at-home distilling, the Court remarked that "[t]he proposition that Congress may dictate the conduct of an individual today because of prophesied future activity finds no support in our precedent." *Id*. at 557.

The government seems to contend that banning home distilling might increase tax revenue from the commercial production of distilled spirits by increasing the

sales of taxed spirits. *See* Br. in Opp. 12–13 (stating that the law "prevent[s] diversion of the revenue"). If that is indeed the government's argument, the Supreme Court rejected this "hydraulic theory of tax collection" in *United States v. Dewitt*, 76 U.S. 41, 44 (1869). In *Dewitt*, the government defended a ban on the sale of certain illuminating oils as an exercise of the Taxing Power because the ban would increase the price (and thus taxes collected) on other, taxable illuminating oils. *Id*. The Court first rejected the government's Taxing Power argument for the selective ban because "no tax is imposed on the oils the sale of which is prohibited." *Id*. That left only the government's hydraulic theory of tax collection, which, the Court unanimously held, is "too remote and too uncertain to warrant us in saying that the prohibition is an appropriate and plainly adapted means for carrying into execution the power of laying and collecting taxes." *Id*.

Since the at-home distilling ban does not tax an item, as in *Dewitt*, there's no need for a Necessary and Proper inquiry—the statute falls outside the scope of Congress's Taxing Power. The distilling ban, like the illuminating oils ban, lacks any direct connection to revenue generation and thus is "a police regulation, relating exclusively to the internal trade of the state[.]" *Id*. at 45. It is not an exercise of the Taxing Power.

Congress is frequently tempted to aggrandize its power and dress up a health, safety, or moral regulation as a tax enforcement measure. For that reason, courts

must evaluate the characteristics of a purported tax, not merely examine which title the law falls under or Congress's stated intent. *See United States v. Constantine*, 296 U.S. 287, 294 (1935) ("If in reality a penalty it cannot be converted into a tax by so naming it . . . ."). So, for instance, the Supreme Court struck down a statute purportedly taxing labor because the law had the "characteristics of regulation and punishment." *Bailey v. Drexel Furniture Co.*, 259 U.S. 20, 38 (1922). The "tax law" was unconstitutional because it functioned as a labor regulation and intruded on powers reserved to the states. *Id*. at 39.

Examination of the at-home distilling ban also reveals Congress's true purposes—to exercise police powers and displace state and local powers. The statute reads,

> No distilled spirits plant for the production of distilled spirits shall be located in any dwelling house, in any shed, yard, or inclosure connected with any dwelling house, or on board any vessel or boat, or on premises where beer or wine is made or produced, or liquors of any description are retailed, or on premises where any other business is carried on . . . .

§ 5178(a)(1)(B). Although Congress characterizes this language as a tax collection measure, the law focuses on the type of premises and whether it is commercial or residential, thus more closely resembling a zoning regulation. And zoning is a power reserved to the states and their municipalities. Eugene Mcquillin, *Constitutional Validity of Zoning Under the Police Power*, 11 ST. LOUIS L. REV. 76, 78 (1926). The zoning aspects of the ban are even more apparent in the original 1868 law banning

at-home distilling that the government cites, Br. in Opp. 12, to emphasize the long pedigree of the ban. AN ACT IMPOSING TAXES ON DISTILLED SPIRITS AND TOBACCO AND FOR OTHER PURPOSES, § 12, 15 Stat. 125, 130 (1868). That section in the 1868 law prohibits distilling "where liquors of any description are retailed, or where any other business is carried on, *nor within six hundred feet from any premises authorized to be used for rectifying.*" *Id*. (emphasis added).

The government maintains, then, that lurking in the Taxing Power (with some assistance from the Necessary and Proper Clause) is a powerful grant of authority that includes prescribing which products can be produced on every private parcel in America. The government offers no limit to this de facto federal police power, and the district court properly rejected the government's expansive conception of the Taxing Power.

## III. LIBERTY AND FEDERALISM ARE JEOPARDIZED IF CONGRESS CAN PROHIBIT ANY TAXABLE CONDUCT BECAUSE IT OCCURS WITHIN A HOME.

The statute preempts local zoning rules with a federal, nationwide prohibition on distilling spirits in residential structures. § 5178(a)(1)(B). Even if a local government were inclined to allow distilling in residences or in outbuildings, those on-premises operations are criminalized by the federal government.

The government argues that its prohibition does "not comprise a ban on distilled spirits, but rather restrictions on the permissible premises for distilled spirits

plants, enacted to prevent diversion of the revenue." Br. in Opp. 13. However, this statement misrepresents McNutt's argument and restates the unconstitutional purpose of the statute: to regulate private conduct and home production, even for personal use. Although the government argues that its rule is intended for tax revenue protection, the actual character of the rule is that of a federal police power. There is no limit to the federal government's reach if the elimination of potential tax fraud is the primary justification needed to displace state and local police powers.

The government justifies the at-home distilling ban as necessary due to the "distinct features of the excise tax on distilled spirits that make diversion or concealment of the revenue particular risks." Br. in Opp. 15. This is an apparent reference to the fact that it is difficult for federal tax collection officials to assess whether distilling hobbyists comply with federal laws in the privacy of their homes. But *any* conduct that occurs in the home is susceptible to similar concerns of tax "diversion" or "concealment." If Congress can prohibit any "concealable" taxable event *because* it occurs in the home, Congress has the power prohibit home conduct like babysitting a grandchild, growing fruits and vegetables in a garden, homeschooling children, and making family meals. Individual liberty and our federalist system of government are in jeopardy if courts defer to Congress's decision to tax and prohibit in-home conduct—whether distilling or baking or homeschooling—because it has "distinct" features that facilitate tax evasion.

## CONCLUSION

The government's defense of the at-home distilling ban transforms the Taxing Power into a federal police power. For the forgoing reasons, the district court correctly granted Scott McNutt's motion for a permanent injunction and this Court should affirm the decision below.

Respectfully submitted,

*/s/ Thomas A. Berry*

Dated: December 12, 2024

Thomas A. Berry
*Counsel of Record*
Brent Skorup
Clark M. Neily III
CATO INSTITUTE
1000 Mass. Ave., N.W.
Washington, DC 20001
443-254-6330
tberry@cato.org

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and Fed. R. App. P. 32(a)(7)(B) because it contains 3,437 words, excluding the parts exempted by Fed. R. App. P. 32(f).
2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface in Times New Roman, 14-point font.

/s/ *Thomas A. Berry*

December 12, 2024

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court, who will enter it into the CM/ECF system, which will send a notification of such filing to the appropriate counsel.

/s/ *Thomas A. Berry*

January 10, 2025