No. 24-10760

United States Court of Appeals
for the Fifth Circuit

Scott McNutt,
*Plaintiff-Appellee*,
Rick Morris; Hobby Distillers Association; Thomas O. Cowdrey, III; John Prince, III,
*Plaintiffs-Appellees/Cross-Appellants*,

v.

U.S. Department of Justice; Alcohol and Tobacco Tax and Trade Bureau, A Bureau of the U.S. Department of the Treasury et al.
*Defendants-Appellants/Cross-Appellees*.

On Appeal from The United States District Court for the Northern District of Texas
Case No. 4:23-cv-1221-P (Hon. Mark T. Pittman).

# BRIEF OF *AMICUS CURIAE* LIBERTY JUSTICE CENTER IN SUPPORT OF PLAINTIFF-APPELLEES

Reilly Stephens
*Counsel of Record*
Bridget Conlan
LIBERTY JUSTICE CENTER
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
(512) 481-4400
rstephens@ljc.org
*Attorneys for Amicus Curiae Liberty Justice Center*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record for amicus curiae certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1, in addition to those listed in the Petitioner's Certificate of Interested Persons, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

*Amicus Curiae:* The Liberty Justice Center is a not-for-profit corporation exempt from income tax under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). It does not have a parent corporation and no publicly held company has a 10% or greater ownership interest.

Date: December 18, 2024

Reilly Stephens
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
(512)481-4400
rstephens@ljc.org
*Counsel for Amicus*

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.................................... i

TABLE OF CONTENTS.................................................................... ii

INTEREST OF AMICUS CURIAE ..................................................... 1

INTRODUCTION ............................................................................ 2

SUMMARY OF THE ARGUMENT..................................................... 3

ARGUMENT.................................................................................. 5

I. The Government's interpretation of the Taxing Power would allow any regulation, no matter how sweeping, as long as it makes tax collection somewhat easier or increases the amount collected. ........... 5

A. Regulating behavior as a means of increasing total tax revenue would allow the federal government to intrude on personal choices.................................................................................... 7

B. The government's interpretation does not sufficiently protect activities that are central to ordinary life. ..................................... 12

C. The government's interpretation extends its powers over tax evasion to also apply to mere tax avoidance.................................... 16

1. Although tax evasion is illegal, regulation targeting tax evasion must still be appropriate and plainly adapted, not merely convenient....19

2. Regulation of legal tax avoidant behavior is not authorized by the Taxing Power....26

CONCLUSION....29
CERTIFICATE OF COMPLIANCE....31
CERTIFICATE OF SERVICE....32

## TABLE OF AUTHORITIES

### Cases

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
570 U.S. 205 (2013) .................................................................. 23

*Gregory v. Helvering*,
293 U.S. 465 (1935) .................................................................. 28

*Harris v. Quinn*,
573 U.S. 616 (2014) .................................................................. 10

*Hobby Distillers Ass'n v. Alocohol & Tobacco Tax & Trade Bureau*,
No. 4:23-cv-1221-P, 2024 U.S. Dist. LEXIS 120833 (N.D. Tex. July 10, 2024) .................................................... 3, 12, 13, 16, 19, 22, 29

*Janus v. AFSCME*,
138 S. Ct. 2448 (2018) .................................................................. 1

*McCulloch v. Maryland*,
17 U.S. (4 Wheat.) 316 (1819) .................................... 1, 4, 6, 18, 19, 22

*Meyer v. Nebraska*,
262 U.S. 390 (1923) .................................................................. 3, 6

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
567 U.S. 519 (2012) ....................................................... 5, 6, 18, 20, 26

*Troxel v. Granville*,
530 U.S. 57 (2000) .................................................................. 13

*United States v. Dewitt*,

76 U.S. (9 Wall.) 41 (1869) .......................................................... 28, 29

*United States v. Isham*,
84 U.S. (17 Wall.) 496 (1873) ............................................................ 28

*Wickard v. Filburn,*
317 U.S. 111 (1942) ........................................................................... 27

**Statutes**

26 U.S.C. § 5001(b) ............................................................................ 19

26 U.S.C. § 5004(a)(1) ......................................................................... 19

26 U.S.C. § 5178(a)(1)(B) ..................................................................... 3

26 U.S.C. § 5601(6) .............................................................................. 3

**Other Authorities**

Andrew Cline, *Legislature votes to decriminalize home haircuts*, The Josiah Bartlett Center for Public Policy, May 27, 2021, https://jbartlett.org/2021/05/legislature-votes-to-decriminalize-home-haircuts/ ........................................................................................ 9

Def.'s Opp'n to Mot. for Prelim. Inj., *Hobby Distillers Ass'n v. Alocohol & Tobacco Tax & Trade Bureau*, No. 4:23-cv-1221-P, 2024 U.S. Dist. LEXIS 120833 (N.D. Tex. July 10, 2024) ........................................ 5, 19

Donald Bruce and Xiaowen Liu, *Tax Evasion and Self-Employment in the US: A Look at the Alternative Minimum Tax*, 2014 IRS-TPC Research Conference, https://www.irs.gov/pub/irs-soi/14rescontaxevasion.pdf ................................................................ 29

Internal Revenue Service, *The Difference Between Tax Avoidance and Tax Evasion*, https://apps.irs.gov/app/understandingTaxes/whys/thm01/les03/media/ws_ans_thm01_les03.pdf (last accessed Oct. 31, 2024) ....................... 25

Internal Revenue Service, *Worksheet Solutions: The Difference Between Tax Avoidance and Tax Evasion,* https://apps.irs.gov/app/understandingTaxes/whys/thm01/les03/media/ws_ans_thm01_les03.pdf (last accessed Oct. 31, 2024)................20, 21

Katie Lobosco, "Ignore social media. Here's what Harris' unrealized capital gains tax proposal means for you," CNN, Oct. 6, 2024, https://www.cnn.com/2024/10/06/politics/capital-gains-tax-harris-tiktok/index.html..................................................................13

Mark Norris, *From Craft Brews To Craft Booze: It's Time For Home Distillation*, 64 Case W. Rsrv. L. Rev. 1341 (2014) .............................16

Mary Whitfill Roeloffs, *How Valuable are Stay-At-Home Parents? They Do About $4500 of Unpaid Labor Per Month, New Study Says*, Forbes, April 19, 2024, https://www.forbes.com/sites/maryroeloffs/2024/04/19/how-valuable-are-stay-at-home-parents-they-do-about-4500-of-unpaid-labor-per-month-new-study-says/ ......................................................11

Mem. In Support of Mot. for Prelim. Inj., *Hobby Distillers Ass'n v. Alocohol & Tobacco Tax & Trade Bureau*, No. 4:23-cv-1221-P, 2024 U.S. Dist. LEXIS 120833 (N.D. Tex. July 10, 2024)............................25

Michael Hatfield, *Privacy in Taxation*, 44 Fla. St. U.L. Rev. 579, 611 (2018) ...............................................................................17, 18

Nancy C. Staudt, *Taxing Housework*, 84 Georgetown L.J., 1571 (May 1996) ..................................................................................9, 10, 11

Richard A. Epstein, *The Moral and Practical Dilemmas of an Underground Economy*, 103 Yale L. J., 2157-2177, 2157 (June 1994), https://www.jstor.org/stable/797043 ...................................................28

Rob Wile, "Harris plans to tax unrealized stock gains – but only for people worth $100 million," NBC News, Aug, 29, 2024,

https://www.nbcnews.com/business/taxes/harris-plans-tax-unrealized-stock-gains-only-people-100-million-rcna168819 ................................ 12

Salary.com, 2019 Mom Salary Survey (last accessed Nov. 11, 2024) https://www.salary.com/articles/mother-salary/ .................................. 15

U.S. Bureau of Labor Statistics, Labor Force Statistics, Household Data, https://www.bls.gov/webapps/legacy/cpsatab9.htm ................... 25

**Constitutional Provisions**

U.S. Const. amend. IV ........................................................................ 14

U.S. Const., art. I, § 8, cl. 1 ............................................................. 18, 22

U.S. Const., art. I, § 8, cl. 18 ............................................................... 18

## INTEREST OF AMICUS CURIAE

The Liberty Justice Center is a nonprofit, nonpartisan public-interest litigation center that seeks to protect economic liberty, private property rights, free speech, and other fundamental rights. The Liberty Justice Center pursues its goals through strategic, precedent-setting litigation to revitalize constitutional restraints on government power and protections for individual rights. *See, e.g. Janus v. AFSCME*, 138 S. Ct. 2448 (2018).

This case interests amicus because constant vigilance is necessary to protect individual liberties from the abuses of government. The power to tax is the power to destroy. *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 400 (1819).

The Liberty Justice Center files this brief pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure, and all parties to the appeal have consented to the filing of this brief. No counsel for any party authored any part of this brief, and no person or entity other than amicus funded its preparation or submission.

## INTRODUCTION

The federal government doesn't let you make gin in your basement—but not because consumption of bathtub gin can be ill-advised. Rather, the federal prohibition on home-distilled spirits is grounded not in health and safety concerns, but rather in tax-collection concerns. The government is worried that you won't pay taxes on your artisanal home-brewed gin because they won't be able to watch you make it. Likewise, the federal government says you aren't allowed to have a still in your home because you may secretly use it to produce gin or other distilled spirits for your own consumption and, in your drunken state, fail to report that production and not pay the appropriate number of cents per unit of alcohol produced.

The government asserts that these overbearing and patronizing restrictions are justified under the Taxing Power, claiming that any measures that increase total tax revenue collection, or the ease of collection, are justified as "necessary and proper" so long as they do not bump into recognized liberty interests. But such a broad interpretation would open the door to unprecedented intrusions into, or prohibitions on, any taxable activity.

If home distilling, despite its long history as a common practice of our Founding Fathers, has not earned a place of honor among "those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men" what other activities are at risk? *See Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). The prohibition on home-distilled spirits does not hold water (or bathtub gin) as a necessary and proper exercise of the Taxing Power.

## SUMMARY OF THE ARGUMENT

Under federal law, it is illegal to possess a still or produce distilled spirits at home. *See* 26 U.S.C. § 5601(6), 5178(a)(1)(B). The government claims this prohibition on home distilling is justified as an exercise of the Taxing Power, necessary and proper to collecting the federal tax on distilled spirits, in furtherance of the government's interest in raising and protecting revenue. *Hobby Distillers Ass'n v. Alocohol & Tobacco Tax & Trade Bureau*, No. 4:23-cv-1221-P, 2024 U.S. Dist. LEXIS 120833, at *17, *22 (N.D. Tex. July 10, 2024). But the government's interpretation cannot be right. The Taxing Power only authorizes the government to implement regulations that assist in collecting a tax that is owed, and even under the Necessary and Proper

Clause any regulation must be appropriate and plainly adapted to that end. *See McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 421 (1819).

The government's interpretation of the Taxing Power would justify intrusive restrictions in the home, and on commerce and the way that Americans earn income, especially given the growing prevalence of self-employment and work-from-home arrangements. Defendants dismiss the argument that their interpretation of the Taxing Power would open the door to unconscionable prohibitions and regulation of other in-home activities, and yet on the merits agree that, in their view, Congress has "the authority to enact such monitoring and enforcement measures" even when those measures have not been necessary to collect the tax in the past. *See* Def.'s Opp'n to Mot. for Prelim. Inj., at 24, *Hobby Distillers Ass'n v. Alocohol & Tobacco Tax & Trade Bureau*, No. 4:23-cv-1221-P, 2024 U.S. Dist. LEXIS 120833 (N.D. Tex. July 10, 2024) ("Def.'s Opp'n").

Under the government's interpretation, only a narrow list of specific liberty interests would ever fall outside the reach of regulation under Congress' Taxing Power. Any activity not explicitly protected by existing precedent would be vulnerable to prohibition or other oppressive regulation

at the government's whim, just as long as it increases tax revenues. But powers granted to the federal government under the Constitution "must be read carefully to avoid creating a general federal authority akin to the police power." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 536 (2012).

As the Supreme Court recognized in *NFIB v. Sebelius*, "[e]ven if the individual mandate is 'necessary' to the Act's insurance reforms, such an expansion of federal power is not a 'proper' means for making those reforms effective." *Id*. at 560. The same is true in this context: even if the prohibition on home distilling is "necessary" to ensure tax revenue collection, it is not a "proper" means of accomplishing that end. The Court should affirm the lower court and prohibit this plain case of government overreach.

## ARGUMENT

### I. The Government's interpretation of the Taxing Power would allow any regulation, no matter how sweeping, as long as it makes tax collection somewhat easier or increases the amount collected.

The government contends that any regulation that increases total revenue collection and the ease of tax collection is a "necessary and proper" exercise of the Taxing Power.

Under the government's overbroad interpretation, any number of severe restrictions on conduct would be justified under the guise of preventing both tax evasion (failing to pay taxes owed) and tax avoidance (limiting the amount of taxes owed). This would permit the government to regulate or even prohibit any activity that it could conceivably put any sort of tax on—the power to tax is, after all, "the power to destroy." *McCulloch*, 17 U.S. at 431. The government's broad reading of the Taxing Power effectively transforms it into a federal police power akin to that of the States. *See Sebelius*, 567 U.S. at 536.

Activities within the home would be particularly vulnerable to restriction under the government's justification for the ban on home stills—that the inherent privacy of a home creates a greater potential for tax evasion for the activities that occur inside. Individuals should be free to engage in "the common occupations of life" without excessive government interference, even if such activities are not explicitly protected by a recognized liberty interest. *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).

### A. Regulating behavior as a means of increasing total tax revenue would allow the federal government to intrude on personal choices.

If the government is correct in its interpretation of the Taxing Power, this would authorize significant intrusions into personal choices and household activities under the rationale of increasing tax revenue. For example, the government could require occupational licenses for all sorts of household activities and disallow tax exemptions for personal or household consumption.[1]

Activities that require an occupational license when performed professionally are typically exempt from the license requirement when performed for free or for oneself or a family member at home, but such exemptions are not universal. Until recently, New Hampshire law made it a crime to cut one's own hair, or the hair of a family member, at home (or

[1] Note: Though items produced in-home for personal consumption generally are not taxed, home-distilled spirits (if legal) would be subject to an excise tax.

anywhere) without a barber or cosmetology license.[2] This is actually less restrictive than the prohibition on home-distilling, because one could still obtain a license to cut one's own hair at home; the home-distilling prohibition will not even allow one to obtain a license.

Likewise, the federal government could prohibit or directly tax any number of valuable services traditionally performed within the household, by and for family members who generally have not been taxed:

> Although the courts and Congress have not explicitly exempted income from household activities, there is a widely held but unstated distinction between gains received in the market context and gains received in the family context. Gains obtained in the formal, informal, and illegal markets are all taxable, while the economic benefits received from self-supplied services or services from a family member are exempt from taxation.

Nancy C. Staudt, *Taxing Housework*, 84 Georgetown L.J., 1571, 1576 (1996). Childcare duties, shopping for and cooking family meals, and cleaning the family home are all valuable services traditionally provided by homemakers, who have neither been taxed nor required to have an occupational license.

---

[2] Andrew Cline, *Legislature votes to decriminalize home haircuts*, The Josiah Bartlett Center for Public Policy, May 27, 2021, https://jbartlett.org/2021/05/legislature-votes-to-decriminalize-home-haircuts/

Declining to tax the value of these household services provides a tax benefit to families with stay-at-home spouses who obtain the value of household labor tax-free; if they had to pay a professional to perform these tasks, they would have to use after-tax income to pay them, and that person would pay income tax on their earned wage. *Id.* at 1589. This tax exemption operates to discourage women, especially those with young children, from entering the labor force if they would have to use their after-tax income to pay someone else to provide childcare and perform household tasks. *Id*. Congress could begin taxing housework directly, or alternatively could require an occupational license to perform these services; either approach is likely to increase tax revenue collections.

The value of household labor contributions is far from paltry and would contribute significantly to the tax base. "Stay-at-home parents of two children in the United States do roughly 200 combined hours of" household labor each month "that would cost between $4,000 and $5,200 per month to outsource in

a handful of American cities,"[3] amounting to nearly $1 million in untaxed value per household over the course of the 20 years it takes to raise a child.

Congress has so far left household activities untaxed due to difficulties with "valuation, liquidity, and commodification." Staudt*, supra*, at 1579. But Medicaid has already commodified and placed a dollar value on these services through the operation of home services programs that pay "personal assistants" to perform domestic in-home services for an aging, ill, or injured citizen. *See Harris v. Quinn*, 573 U.S. 616, 620-21 (2014). The paid "personal assistant" is often a family member of the person they are paid to assist, and the household tasks they perform, much like those of a stay-at-home parent or homemaker, do not require medical training. *Id.* The prevalence of online marketplaces that facilitate hiring out nearly every traditional household task, from Instacart for grocery shopping, to DoorDash for meal preparation, to Care.com for childcare services, illustrates that commodification concerns

---

[3] Mary Whitfill Roeloffs, *How Valuable are Stay-At-Home Parents? They Do About $4500 of Unpaid Labor Per Month, New Study Says*, Forbes, April 19, 2024, https://www.forbes.com/sites/maryroeloffs/2024/04/19/how-valuable-are-stay-at-home-parents-they-do-about-4500-of-unpaid-labor-per-month-new-study-says/

are outdated. This also solves the valuation predicament, as these online marketplaces conveniently gather dynamic and voluminous pricing data that can be tailored geographically to account for regional price differences.

Further, a government that has threatened to tax unrealized capital gains[4] is unlikely to be concerned with difficulties in "valuation" or "liquidity" that would accompany an attempt to tax the value of homemakers' in-home labor. The IRS has not previously tracked the annual changes in value that would be necessary to implement a tax on unrealized capital gains,[5] nor the value of homemakers' in-home labor, but what would stop it from doing so in the name of increasing gender equality?

Taxing housework would likely require government intrusion into the personal details of family life, but intrusive investigations have been deemed

---

[4] Rob Wile, "Harris plans to tax unrealized stock gains – but only for people worth $100 million," NBC News, Aug, 29, 2024, https://www.nbcnews.com/business/taxes/harris-plans-tax-unrealized-stock-gains-only-people-100-million-rcna168819

[5] Katie Lobosco, "Ignore social media. Here's what Harris' unrealized capital gains tax proposal means for you," CNN, Oct. 6, 2024, https://www.cnn.com/2024/10/06/politics/capital-gains-tax-harris-tiktok/index.html

acceptable in the name of tax revenue collection when auditing individual's claims for deductions for everything from medical expenses to home offices.

If the government can regulate behavior in the name of increasing tax revenue collection, it can justify intrusions into any personal choice that carries tax consequences, including the provision of in-home labor by homemakers. Such intrusions are unconscionable, and the government's theory that the Taxing Power would allow such intrusions should be swatted away by this Court just as it was by the court below.

### B. The government's interpretation does not sufficiently protect activities that are central to ordinary life.

As the government would have it, Congress may prohibit any activity that carries the potential to decrease tax collection, so long as it is not explicitly protected by a recognized liberty interest. But "Congress cannot do whatever it likes until it bumps into one's rights; it can only do what the Constitution says it can." *Hobby Distillers Ass'n,* 2024 U.S. Dist. LEXIS 120833, at *30**.**

The government believes that it can prohibit home-distilling because "no court has recognized a liberty interest in making booze at home" and "home-distilling is not long recognized at common law as essential to the orderly

pursuit of happiness." *Id.* at *29. But is there a recognized liberty interest in baking bread, mowing your lawn, or knitting a sweater for a family member? Many activities central to ordinary life lack a recognized liberty interest and have the potential for tax-generation, leaving them vulnerable to prohibition or oppressive regulation under the government's interpretation.

The right to parent may protect some components of the traditional homemaker role, such as child-rearing, from regulation, but it is unlikely to protect every domestic task undertaken by homemakers. *See Troxel v. Granville*, 530 U.S. 57 (2000) ("the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court"). Modern calculations of the value of a stay-at-home mom include roles such as dietitian, tailor, network administrator, social media specialist, janitor, and recreational therapist.[6] Can these modern homemaker roles be fairly said to enjoy greater constitutional protection than home-distilling at common law?

---

[6] Salary.com, 2019 Mom Salary Survey (last accessed Nov. 11, 2024) https://www.salary.com/articles/mother-salary/

There is a long history of Americans practicing home distilling. "From the very first settlements until the tail end of the eighteenth century, Americans were free to brew their own beer and distill their own spirits," and the social and economic significance of alcohol in Colonial America led to the "Whiskey Rebellion" in response to the imposition of an excise tax on alcohol. Mark Norris, *From Craft Brews To Craft Booze: It's Time For Home Distillation*, 64 Case W. Rsrv. L. Rev. 1341, 1347 (2014). It would take significant analogizing to demonstrate a similar history and tradition in support of Mom's role as the family's "social media specialist."

Further, it is not clear that even the narrow set of explicitly recognized liberty interests have been safe from government intrusion. Indeed, the government has shown apathy when tax regulations come dangerously close to "bumping into" liberty interests.

For example, although the Constitution protects the right to be free from unreasonable searches of one's person, home, papers, and effects, U.S. Const. amend. IV, individual audits conducted by the IRS trample this right. "There are an extraordinary number of private details about personal lives that may be tax relevant," and have been demanded as part of an audit. Michael

Hatfield, *Privacy in Taxation*, 44 Fla. St. U.L. Rev. 579, 611 (2018). Rhiannon O'Donnabhain, a 65-year old transgender woman, was audited after she claimed a medical expense deduction. The IRS demanded details about "her perception of her genitalia, her gender, her relationship with her children, and her discussions with her therapist." *Id.* at 618. "O'Donnabhain was not a criminal; she was not a would-be tax evader; and she was not even wrong to claim the deduction . . . But, because she was part of the 1% who are audited, she was obligated to reveal to the IRS whatever information the IRS considered relevant." *Id.* at 618.

Similarly, Katia Popov, a professional violinist who claimed a "home office" deduction "had to describe not only her practice routines at home, but also the layout of her apartment, the furnishings in her dining and living room, whether her four-year-old daughter was allowed to play in the living room, and . . . that she, her husband, her daughter, and, on occasion, her Bulgarian mother-in-law slept in the same bedroom." *Id.* at 620-621. These taxpayers suffered privacy invasions because they were chosen for an audit. Historically, "[t]axpayer privacy has been protected by an under-resourced IRS that is consequently limited to auditing less than 1% of individual

income tax returns," but if the IRS were given greater resources, or became more efficient through the use of AI-auditors, all individuals could be subject to the intrusions of an audit in the name of government convenience and revenue collection. *Id*. at 618. The government has demonstrated that it cannot be trusted to responsibly wield a broadly defined Taxing Power; the government will not self-moderate by showing sensitivity to the people's liberty interests. It is the duty of the judicial system to prevent government abuses and to remind the government that "it can only do what the Constitution says it can." *Hobby Distillers Ass'n,* 2024 U.S. Dist. LEXIS 120833, at *30**.**

### C. The government's interpretation extends its powers over tax evasion to also apply to mere tax avoidance.

The government's interpretation does not cabin its Taxing Power to the collection of tax obligations that have already been incurred; the prohibition on in-home stills prevents citizens from ever producing the taxable output in the first place, and tax evasion can only occur after a tax arises. Thus, the prohibition is rooted in targeting tax *avoidance*, not tax *evasion* and this overreaches the scope of the Taxing Power.

The government's justification for the prohibition of in-home stills and the practice of home-distilling is to avoid the potential "diversion of revenue" (revenue being the tax collected on distilled spirits) by restricting "the permissible premises for distilled spirits plants." *See* Def.'s Opp'n, at 22. "[D]iversion of revenue" can be avoided by decreasing tax avoidance or decreasing tax evasion. But the government does not have equal power over these two categories because, as the IRS explains, "tax evasion is illegal" while "tax avoidance is perfectly legal." Internal Revenue Service, *Worksheet Solutions: The Difference Between Tax Avoidance and Tax Evasion.*[7]

Tax avoidance is "an action taken to lessen tax liability and maximize after-tax income." *Id*. This can be something complex like estate planning, or something simple like choosing to purchase gas in the town with a lower gas tax rate. Tax evasion is "the failure to pay or a deliberate underpayment of taxes," including by "failing to report all or some of [one's] income," whereas tax avoidance is an action taken to prevent the tax liability from ever coming

---

[7]https://apps.irs.gov/app/understandingTaxes/whys/thm01/les03/media/ws_ans_thm01_les03.pdf (last accessed Oct. 31, 2024).

into existence. *Id*. Regulations targeting tax evasion focus on making sure individuals pay the correct amount of taxes that they owe. It is impossible for one to evade a tax that one does not owe—before a tax is incurred you can only avoid it, you cannot evade it.

The Constitution grants Congress the power to "lay and collect taxes, duties, imposts and excises," otherwise known as the Taxing Power. U.S. Const., art. I, § 8, cl. 1. The Necessary and Proper Clause, U.S. Const., art. I, § 8, cl. 18, authorizes Congress to make laws that execute its enumerated powers by "means which are appropriate," and "which are plainly adapted to that end." *McCulloch*, 17 U.S. (4 Wheat.) at 421. "Congress's authority under the taxing power is limited to requiring an individual to pay money into the Federal Treasury, no more. If a tax is properly paid, the Government has no power to compel or punish individuals subject to it." *Sebelius,* 567 U.S. at 574. Because Congress's taxing power is authoritative only from the time a tax liability arises to the point at which it is paid, it cannot be used to justify regulation of tax avoidance, only tax evasion. *Id*. at 557.

### 1. Although tax evasion is illegal, regulation targeting tax evasion must still be appropriate and plainly adapted, not merely convenient.

By definition, tax evasion can only occur once a tax liability has come into existence; otherwise, there is nothing to "evade" or underpay. Under the Taxing Power the government can implement regulations to compel individuals to pay the taxes they owe. However, such regulation must be appropriate and plainly adapted to satisfy the Necessary and Proper Clause. *See McCulloch*, 17 U.S. (4 Wheat.) at 421. "[T]he valid incidental power to punish defrauding the government, or making false statements under oath, does not mean Congress can prohibit *every* behavior which may *result* in fraud—especially if it is not within Congress's incidental power." *Hobby Distillers Ass'n,* 2024 U.S. Dist. LEXIS 120833, at *29 (emphasis in original).

When distilling alcohol, under 26 U.S.C. §§ 5001(b), 5004(a)(1), tax liability is not incurred until the moment that distilled spirits are produced. *See Hobby Distillers Ass'n,* 2024 U.S. Dist. LEXIS 120833, at *29 (internal citations omitted); 26 U.S.C. § 5001(b). The still itself is not taxed. Therefore,

it would be impossible to engage in tax evasion related to the distillation of spirits until after the still enters the home and produces taxable spirits.

Attempting to target tax evasion by prohibiting the tax from being incurred in the first place is plainly nonsensical and inappropriate. For instance, the government could strictly forbid all Americans from earning income, by any means, in the name of preventing income tax evasion. Such a policy would eradicate income tax evasion but that would not be plainly adapted to accomplish the goal of the Taxing Power—increasing tax revenue collections. Likewise, the prohibition on in-home stills does not increase tax revenue collection by thwarting nonexistent tax *evasion*, but by preventing tax *avoidance*. A regulation prohibiting the taxable substance from ever coming into existence cannot be a Necessary and Proper exercise of the Taxing Power because the Taxing Power is only authoritative once the tax liability arises. *Sebelius,* 567 U.S. at 557.

The prohibition on engaging in home-distilling decreases tax evasion only to the extent that an individual with an at-home still would produce distilled spirits and then choose not to report and pay the excise tax due on those spirits. But in-home distilling requires no greater level of voluntary

compliance than is generally required in our tax system of "voluntary compliance," which, according to the IRS, relies on the honesty of "individual citizens to report their income freely and voluntarily, calculate their tax liability correctly, and file a tax return on time."[8] Approximately 16.2 million Americans, or 10% of the American workforce, is self-employed.[9] Self-employed individuals report their income to the IRS annually, usually without close monitoring. If individuals can be trusted to file their own taxes, based on self-reported income, why is it so difficult to trust that they will accurately self-report and pay an excise tax on home-distilled spirits when the Plaintiffs in this case have expressed their willingness to pay the excise tax? *See* Mem. In Support of Mot. for Prelim. Inj., at 13, *Hobby Distillers Ass'n v. Alocohol & Tobacco Tax & Trade Bureau*, No. 4:23-cv-1221-P, 2024 U.S. Dist. LEXIS 120833 (N.D. Tex. July 10, 2024). Apparently, in the case of

---

[8] Internal Revenue Service, *The Difference Between Tax Avoidance and Tax Evasion*, https://apps.irs.gov/app/understandingTaxes/whys/thm01/les03/media/ws_ans_thm01_les03.pdf (last accessed Oct. 31, 2024).

would-be home-distillers the government has cast aside that time-honored maxim: “Innocent until proven guilty.”

The government has argued that prohibiting possession of at-home stills is justified by the need to thwart potential tax evasion, but as the court below explained, this prohibition is merely “convenient,” falling short of the requirement that restrictions be appropriate and plainly adapted to the Taxing Power. *Hobby Distillers Ass’n,* 2024 U.S. Dist. LEXIS 120833, at *23. “‘[A]ppropriate’ or ‘conducive’ does not just mean convenient for the end Congress has in mind.” *Id.* (citing *McCulloch,* 17 U.S. (4 Wheat.) at 367).

If the convenience of the government were a sufficient justification for prohibiting an activity, as the government argues, the government would be authorized to enact a host of disturbing regulations under the guise of decreasing tax evasion. The government could ban anything it can tax—and the Constitution empowers it to tax anything for the “general welfare.” U.S. Const. Art. I, §8, cl. 1; *See Agency for Int'l Dev. v. All. for Open Soc'y Int'l,*

---

[9] U.S. Bureau of Labor Statistics, Labor Force Statistics, Household Data, https://www.bls.gov/webapps/legacy/cpsatab9.htm

*Inc.*, 570 U.S. 205, 213 (2013) ("The Clause provides Congress broad discretion to tax and spend for the 'general Welfare.'")

According to the government, the prohibition on home-distilling "facilitates the government's ability to inspect distilling operations and guard against efforts to elude federal taxes. A distiller can more easily conceal a spirit's strength (and thus avoid the proper tax rate)— or conceal a distilling operation altogether—if his still is in his house or connected with it." *See* Opening Brief of Defendants-Appellants at 16.

But similar, or greater, risks exist for many other taxable activities—why stop at distilled spirits? Surely home offices present an even greater risk of tax evasion than stills, since the output related to office work is often intangible and therefore even easier to hide from the government. From this perspective, the risk of tax evasion is all around us. "All sorts of activities, some desirable and some unsavory, are part of the underground economy. The physician who takes cash for a Saturday office visit is working off the books; so is the waiter who reports some but not all tips as income; so too is

the maid who pays no taxes on her wages."[10] Prohibiting self-employment, remote work, cash tips (or even cash payments), and any other arrangement that makes a tax obligation easier to conceal would decrease the risk of tax evasion and therefore might be "necessary and proper" to protect the collection of revenue under the government's interpretation.

The government says it is easier to reliably collect the distilled spirits excise tax from commercial producers that "facilitate" inspection, rather than from individuals who home-distill. But then criminalizing cash tips would better facilitate inspection of service worker's incomes. Indeed, the same logic would apply to the reporting and collection of any other taxes. Analysis of the available data demonstrates that individual taxpayers "bunch" just below the threshold income level that would incur a greater income tax liability. "[T]axpayers might underreport their income as they move toward the [increased tax] threshold" and "[t]he self-employed have more opportunities

---

[10] Richard A. Epstein, *The Moral and Practical Dilemmas of an Underground Economy*, 103 Yale L. J., 2157-2177, 2157 (June 1994), https://www.jstor.org/stable/797043.

than wage earners to avoid the [increased tax threshold]."[11] If the government is correct that commercial producers are more trustworthy than individuals in reporting and paying taxes, then it could be "necessary and proper" to prohibit self-employment and require that all individuals be employed by a trustworthy corporation that will accurately report to the IRS.

And if it is easier to collect from a specified group of commercial producers, then it must be even simpler to collect from a smaller group, a duopoly—or better yet a monopoly. It would be more convenient for the government to collect all taxes on automobiles from one automobile manufacturer, all taxes on bananas from one banana farmer, and all taxes on widgets from one widget-maker. Who needs competition, when you can have perfect tax compliance and stream-lined tax collection instead?

If any increase in tax compliance is enough, then the federal government has the power to do anything in the name of tax compliance. This

---

[11] Donald Bruce and Xiaowen Liu, *Tax Evasion and Self-Employment in the US: A Look at the Alternative Minimum Tax*, 165, 178, 2014 IRS-TPC Research Conference, https://www.irs.gov/pub/irs-soi/14rescontaxevasion.pdf

interpretation transforms the Taxing Power into a far-reaching police power; it cannot withstand scrutiny.

### 2. Regulation of legal tax avoidant behavior is not authorized by the Taxing Power.

Tax avoidance is an activity that occurs *before* tax liability is incurred. The Taxing Power cannot reach tax avoidant behavior because it is "limited to requiring an individual to pay money into the Federal Treasury," (ie. enforcing the collection of a tax liability) it cannot apply to "prophesied future activity." *See Sebelius*, 567 U.S. at 574, 557.

"[I]mposition of a tax nonetheless leaves an individual with a lawful choice to do or not do a certain act, so long as he is willing to pay a tax levied on that choice." *Id*. at 574. The home-distilling prohibition targets tax avoidance by removing the option to make your own distilled spirits, forcing the consumer to shift their transaction to the commercial-retail sphere, which incurs a higher overall tax liability. A homeowner who wants to imbibe but finds himself banned from producing his own distilled spirits for personal

consumption is effectively required to purchase his spirits from a commercial producer or go without.[12] This transaction comes with an increased price to compensate the commercial producer for its time, labor, and overhead costs. On top of the excise tax, the commercial producer pays payroll taxes, income taxes, and any other tax required of him. This increases the total amount of taxes owed, because in the absence of the home-distilling prohibition the homeowner could have produced the spirits for himself and only needed to pay the excise tax on the spirits without incurring additional costs. Therefore, the prohibition decreases tax avoidance by increasing the total taxes owed.

But tax avoidance has long been recognized as permissible. In *United States v. Isham*, the Supreme Court noted that the taxpayer has the right to use "devices to avoid the payment of duties" if the method chosen is "not

---

[12] While *Wickard v. Filburn,* 317 U.S. 111 (1942), dealt with growing wheat for personal consumption, that decision focused on the government's powers under the Commerce Clause, not the Taxing Power. The district court in the present case determined that the prohibition on in-home distilling was also outside the scope of Congress' power under the Commerce Clause because distilling spirits at home for personal consumption is a purely local and non-economic activity lacking a sufficient connection to interstate commerce.

illegal," and provided the example that a person would have a legal right to avoid paying a tax on checks written for more than $20 by writing two checks for $10 instead. *United States v. Isham*, 84 U.S. (17 Wall.) 496, 506 (1873). "The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted." *Gregory v. Helvering*, 293 U.S. 465, 469 (1935).

The government asserts that this prohibition targeting tax avoidant behavior can be justified under the Taxing Power because it increases the collection of tax revenue. But when the Supreme Court considered a similar issue in *United States v. Dewitt*, it held that a prohibition that merely increases production of substitute products and revenue derived from them by excluding the other kind from the market cannot be justified by the Taxing Power. 76 U.S. (9 Wall.) 41 (1869). In *Dewitt*, the government prohibited the sale of a certain type of "illuminating oil" under the justification that the prohibition was "in aid and support of the internal revenue tax imposed on other illuminating oils." *Id.* at 44. Because no tax was imposed on the prohibited oils, the only relation between taxation and the prohibition was "merely that of increasing the production and sale of

other oils, and, consequently, the revenue derived from them, by excluding from the market the particular kind described." *Id*. "This consequence is too remote and too uncertain to warrant us in saying that the prohibition is an appropriate and plainly adapted means for carrying into execution the power of laying and collecting taxes." *Id*.

Like the illuminating oil in *Dewitt*, the stills that produce spirits are *not* taxed. "The government is arguing that such provisions are justified under the taxing power even though the provisions at issue "criminalize conduct of persons not subject to the tax, because the tax liability exists only 'from the time the spirits are in existence until such tax is paid.'" *Hobby Distiller Ass'n*, 2024 U.S. Dist. LEXIS 120833, at *31 (internal citation omitted). The government is criminalizing mere tax avoidance in its quest to increase tax collection.

## CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's determination that the prohibition on home distilling is unconstitutional.

Dated: December 18, 2024

Respectfully submitted,
/s/ Reilly Stephens______________
Reilly Stephens
LIBERTY JUSTICE CENTER
*Attorney for Liberty Justice Center*
750 Rialto Blvd.
Suite 1-250
Austin, TX 78735
(512) 481-4400
rstephens@ljc.org

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7) because the brief contains 5,179 words, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f).
2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Version 16.62 in 14-point Century Schoolbook font.

/s/Reilly Stephens
Attorney for amicus curiae Liberty Justice Center

Date: December 18, 2024

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on December 18, 2024.

/s/Reilly Stephens
Attorney for amicus curiae Liberty Justice Center

Date: December 18, 2024