**No. 24-10760**

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

SCOTT MCNUTT,

*Plaintiff-Appellee*,

RICK MORRIS, HOBBY DISTILLERS ASSOCIATION, THOMAS O. COWDREY III, JOHN PRINCE III,

*Plaintiffs-Appellees/Cross-Appellants*,

v.

U.S. DEPARTMENT OF JUSTICE, ALCOHOL AND TOBACCO TAX AND TRADE BUREAU, A BUREAU OF THE U.S. DEPARTMENT OF THE TREASURY,

*Defendants-Appellants/Cross-Appellees.*

---

On Appeal from the United States District Court for the Northern District of Texas, Fort Worth Division, Case No. 4:23-cv-1221

---

**BRIEF FOR SOUTHEASTERN LEGAL FOUNDATION AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLEES**

---


Braden H. Boucek
SOUTHEASTERN LEGAL FOUNDATION
560 W. Crossville Rd., Ste. 104
Roswell, GA 30075
(770) 977-2131

Thomas R. McCarthy
Tiffany H. Bates
ANTONIN SCALIA LAW SCHOOL ADMINISTRATIVE LAW CLINIC
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com

*Counsel for Amicus Curiae*


December 18, 2024

## CERTIFICATE OF INTERESTED PERSONS

Counsel certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so the judges of this court may evaluate possible disqualification or recusal.

1. Southeastern Legal Foundation, *Amicus Curiae*
2. Braden Boucek, Counsel for *Amicus Curiae*
3. Thomas R. McCarthy, Counsel for *Amicus Curiae*
4. Tiffany H. Bates, Counsel for *Amicus Curiae*
5. Consovoy McCarthy PLLC, Counsel for *Amicus Curiae*
6. Antonin Scalia Law School Administrative Law Clinic, Counsel for *Amicus Curiae*

Dated: December 18, 2024 *<u>/s/ Thomas R. McCarthy</u>*

## TABLE OF CONTENTS


Table of Authorities………………………………………………...…………iii

Interest of *Amicus Curiae*……………………………………………………..1

Introduction & Summary of the Argument…………………………………………2

Argument

I. The home distilling ban is not a necessary and proper exercise of Congress's tax power……………………………………………………………………..4

A. The original meaning of the Necessary and Proper Clause requires a "definite connection" between an enumerated power and a law implementing that power…………………………………………………………………5

B. Even under a more relaxed framework, the home distilling ban is not a necessary and proper exercise of Congress's taxing power………………………12

Conclusion……………………………………………………………………17

Certificate of Compliance……………………………………………………..19

Certificate of Service…………………………………………………………19

## TABLE OF AUTHORITIES

**CASES**

*Hobby Distillers Ass'n v. Alocohol & Tobacco Tax & Trade Bureau*,
2024 WL 3357841 (N.D. Tex. July 10, 2024) ........................................ 11, 12, 14, 16

*James Everard's Breweries v. Day*,
265 U.S. 545 (1924) ........................................................................................ 13

*Jinks v. Richland Cnty., S.C.*,
538 U.S. 456 (2003) ........................................................................................ 13

*McCulloch v. Maryland,*
17 U.S. (4 Wheat) 316 (1819) ........................................................................ *passim*

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996) .................................................................................. 14, 16

*NFIB v. Sebelius*,
567 U.S. 519 (2012) .................................................................................. *passim*

*United States v. Butler*,
297 U.S. 1 (1936) ................................................................................ 14, 15, 16

*United States v. Comstock*,
560 U.S. 126 (2010) .................................................................................... 4, 12

*United States v. Lopez,*
514 U.S. 549 (1995) ........................................................................................ 16

*United States v. Morrison*,
529 U.S. 598 (2000) .................................................................................. 14, 17

*Util. Air Regulatory Grp. v. EPA*,
573 U.S. 302 (2014) .......................................................................................... 1

**STATUTES**

26 U.S.C. §5178 ...................................................................................................... 2

26 U.S.C. §5601 ........................................ 2

**OTHER AUTHORITIES**

Amendment X ........................................ 14

Article I ........................................ 3, 15

Gary Lawson & David B. Kopel, *Bad News for Professor Koppelman: The Incidental Unconstitutionality of the Individual Mandate*, 121 Yale L.J. Online 267 (2011) .... 7, 8, 9

Gary Lawson & Neil S. Siegel, *Common Interpretation*, Nat'l Const. Ctr., perma.cc/J4UZ-9QXV ........................................ 5

Gary Lawson & Patricia B. Granger, *The "Proper" Scope of Federal Power: A Jurisdictional Interpretation of the Sweeping Clause*, 43 Duke L.J. 267 (1993) ........................................ 4

Gary Lawson, *The Necessary and Proper Clause and the Law of Agency*, Nat'l Const. Ctr., perma.cc/J3PP-RBKN ........................................ 4

Letter from James Madison to Spencer Roane (Sept. 2, 1819), in 8 The Writings of James Madison 447 (Gaillard Hunt ed., 1908) ........................................ 5

Noah Webster, American Dictionary of the English Language (1828) ........................................ 6, 7

Records of the Federal Convention of 1787, Vol 3 (Max Farrand, ed. 1937) ........ 10, 11

Samuel Johnson, Dictionary of the English Language (1785) ........................................ 6

Steven Calabresi et al., *What* McCulloch v. Maryland *Got Wrong: The Original Meaning of "Necessary" Is Not "Useful," "Convenient," or "Rational,"* 75 Baylor L. Rev. 1 (2023) ........................................ 6

The Debates in the Several State Conventions on the Adoption of the Federal Constitution, Vol. 2 (Jonathan Elliot, ed. 1836) ........................................ 9, 10

The Debates in the Several State Conventions on the Adoption of the Federal Constitution, Vol. 3 (Jonathan Elliot, ed. 1836) ........................................ 10

## INTEREST OF AMICUS CURIAE[1]

Southeastern Legal Foundation (SLF), founded in 1976, is a national nonprofit, public interest law firm and policy center that advocates for constitutional individual liberties, limited government, and free enterprise in the courts of law and public opinion. In particular, SLF advocates to protect individual rights and the framework set forth to protect such rights in the Constitution. This aspect of its advocacy is reflected in the regular representation of those challenging overreaching governmental and other actions in violation of the constitutional framework. *See, e.g.*, *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302 (2014), and *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617 (2018).

[1] Counsel for *amicus curiae* certifies that this brief was not authored in whole or in part by counsel for any party and that no person or entity other than *amicus curiae* or its counsel has made a monetary contribution to the preparation or submission of this brief. All parties have consented to the filing of this brief.

## INTRODUCTION & SUMMARY OF THE ARGUMENT

Plaintiffs wish to distill spirits in their homes for personal consumption. But Congress has made it unlawful to possess or use a still on a property that contains a dwelling house. 26 U.S.C. §5178(a)(1)(B). Violators are subject to a $10,000 fine or up to five years of imprisonment. *Id.* §5601. Having abandoned (without explanation) its argument that the Commerce Clause justifies this ban, the government maintains that the home-distilling ban is a necessary and proper exercise of Congress's taxing power, because it "guard[s] against efforts to elude federal taxes." Opening Br. at 16. That argument fails. Neither the original meaning of the Necessary and Proper Clause nor the looser standard urged by the government can justify the ban.

To start, the home-distilling ban exceeds Congress's taxing power under the original meaning of the Necessary and Proper Clause. Contrary to the government's contention, the Necessary and Proper Clause does not authorize Congress to regulate whenever it is "useful" or "convenient." Instead, the original meaning of the Clause requires a "definite connection" between an enumerated power and a law implementing that power—a connection that is not present here. Indeed, the home-distilling ban *costs* Congress a taxing opportunity. It does not help Congress implement its taxing power because it does not purport to raise any revenue. And Congress has enacted laws punishing fraud and tax evasion that more effectively accomplish the ban's alleged goal of enhancing tax enforcement.

Yet even under a more relaxed framework, Congress lacks the authority to ban home distilling. "Congress's ability to use its taxing power to influence conduct is not without limits." *NFIB v. Sebelius*, 567 U.S. 519, 572 (2012). And the Supreme Court has "policed these limits aggressively, invalidating punitive exactions obviously designed to regulate behavior otherwise regarded … as beyond federal authority." *Id.* Congress's power to tax does not include an incidental power to regulate where any taxable activity occurs to protect its revenue. If it had this power, then it could ban not only home distilling but the nearly 15 million home-based businesses across the country by deciding that a tax on goods sold online is easier to evade for sellers who stock and ship their products from home. Such a power is more like a general police power than an ability to "make all Laws which [are] necessary and proper for carrying into the Execution the [taxing power]." *See* U.S. Const. art. I, §8, cl. 18. The Necessary and Proper Clause unquestionably cannot confer upon Congress such a "great substantive and independent power." *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 411 (1819).

## ARGUMENT

### I. The home distilling ban is not a necessary and proper exercise of Congress's tax power.

Abandoning its argument that the Commerce Clause justifies the federal ban on distilling spirits at home, the government now maintains that the ban is a necessary and proper exercise of Congress's tax power. That argument fails. Founding-era evidence makes clear that the Necessary and Proper Clause is not "a grant of general legislative power." Gary Lawson & Patricia B. Granger, *The "Proper" Scope of Federal Power: A Jurisdictional Interpretation of the Sweeping Clause*, 43 Duke L.J. 267, 270-71 (1993). Instead, it requires "some obvious and precise affinity" between the implemented power and the implementing law. Gary Lawson, *The Necessary and Proper Clause and the Law of Agency*, Nat'l Const. Ctr., perma.cc/J3PP-RBKN. Yet even under a more relaxed framework, the home distilling ban is still not a necessary and proper exercise of Congress's taxing power. Although the Supreme Court has read the Clause "to give Congress great latitude in exercising its powers," *NFIB*, 567 U.S. at 537, it "does not give Congress *carte blanche*," *United States v. Comstock*, 560 U.S. 126, 158 (2010) (Alito, J., concurring). It still requires "an 'appropriate' link between a power conferred by the Constitution and the law enacted by Congress." *Id.* The government also conflates "necessary" and "proper" into one standard. Though the Supreme Court has been "very deferential to Congress's determination that a regulation is 'necessary,'" it has not given such deference to the determination that that a law is a "'*proper* [means] for carrying into Execution' Congress's enumerated powers." *NFIB*, 567 U.S. at 559 (emphasis & alteration in original).

At the very least, §§5601(6) and 5178(a)(1)(B) are not a "proper" exercise of the tax power.

### A. The original meaning of the Necessary and Proper Clause requires a "definite connection" between an enumerated power and a law implementing that power.

The Necessary and Proper Clause has long been the source of debate. Three primary views of the Clause were present at the Founding. On one hand, Thomas Jefferson believed the Clause required a "strictly essential connection" between the implemented grant of power and the implementing law, "without which the [implemented] grant to power would be nugatory." Gary Lawson & Neil S. Siegel, *Common Interpretation*, Nat'l Const. Ctr., perma.cc/J4UZ-9QXV. On the other, Alexander Hamilton believed that the Clause required only a loose connection between means and ends. *Id.* In his view, "any law that 'might be conceived to be conducive' to executing the implemented power'" would suffice. *Id.* James Madison took the middle position. He defined necessary and proper as requiring "a definite connection between means and ends," connecting implementing laws to enumerated powers "by some obvious and precise affinity." Letter from James Madison to Spencer Roane (Sept. 2, 1819), in 8 The Writings of James Madison 447, 448 (Gaillard Hunt ed., 1908).

Madison's definition best reflects the Founding-era meaning of the Necessary and Proper Clause. *See* Lawson, *The Necessary and Proper Clause and the Law of Agency*, *supra* (explaining that Madison's view "captures the Founding-era conception of necessity" "much better" than the others). To start, the original meaning of the word "necessary"

did not mean merely useful or convenient, as Hamilton urged. In 1785, Samuel Johnson's Dictionary of the English Language defined "necessary" to mean "[n]eedful; indispensably requisite," "[n]ot free; fatal; impelled by fate," and "[c]onclusive; decisive by inevitable consequences." Samuel Johnson, Dictionary of the English Language (1785); *see* Steven Calabresi et al., *What* McCulloch v. Maryland *Got Wrong: The Original Meaning of "Necessary" Is Not "Useful," "Convenient," or "Rational,"* 75 Baylor L. Rev. 1, 44-45 (2023). That definition remained in common parlance for decades, as evidenced by Webster's 1828 Dictionary, which defined "necessary" as "[i]ndispensable; requisite; essential; that cannot be otherwise without preventing the purpose intended." *See* Noah Webster, American Dictionary of the English Language (1828). As the first dictionary of American English, Webster's demonstrates that "ordinary Americans ... were still reading 'necessary' to mean 'needful' or 'congruent and proportional,' and not to mean 'useful' or 'convenient'"—some four decades after ratification. Calabresi, *supra*, 46. And an analysis of contemporary usage has also shown that "ordinary American (and British) English speakers in fact used the word 'necessary' in a manner consistent with the dictionary definitions." *Id.* at 48.

Like "necessary," the original meaning of "proper" requires the government to pursue a legitimate goal under one of its constitutionally enumerated powers. The Necessary and Proper Clause requires an "obvious and precise affinity" between a law and an enumerated power. *See* Madison Letter to Roane, *supra*. While "proper" had "several meanings that have been part of common English usage since at least the mid-

eighteenth century," two widely used ones stand out. Lawson & Granger, *The "Proper" Scope of Federal Power*, *supra*, at 291. Both the 1755 and 1785 definitions in Samuel Johnson's dictionary defined "proper" as "Peculiar; not belonging to more; not common" and "Fit; accommodated; adapted; suitable; qualified." Johnson, *supra*. The first definition "was widely in use around the time of the Framing in contexts involving the allocation of governmental powers." Lawson & Granger, *The "Proper" Scope of Federal Power*, *supra*, at 291. Thus "[t]his usage suggests that a 'proper' law is one that is within the peculiar jurisdiction or responsibility of the relevant governmental actor." *Id.* And the second definition suggests that "proper" was understood to require a connection between basic principles and practice.

These definitions also support an "agency-law" understanding of the Necessary and Proper Clause that was present at the Founding. "The law of agency was central to legal and economic life in the Founding era," and the "general contours of agency law were familiar to a wide range of eighteenth-century Americans." Gary Lawson & David B. Kopel, *Bad News for Professor Koppelman: The Incidental Unconstitutionality of the Individual Mandate*, 121 Yale L.J. Online 267, 272 (2011). The Necessary and Proper Clause was drafted by a "Committee of Detail consisting of four practicing lawyers familiar with writing agency documents and a businessman familiar with applying them." Lawson, *The Necessary and Proper Clause and the Law of Agency*, *supra*. Under agency law, legal documents were used to create agency relationships that "would expressly identify the main, or principal, powers to be exercised by the agents." *Id.* Because "[q]uestions would

naturally arise about whether the agents could exercise implied, or incidental, powers in carrying out their tasks," an agency-creating document would often include "a general clause outlining the scope of the agent's incidental powers, informed by established customs and traditions setting baselines for the incidental powers of agents in different contexts." *Id.* As Gary Lawson and David Kopel explain,

> The bedrock obligation of the eighteenth-century agent was to act only within granted authority. The express terms of an agency instrument could, of course, be the sole source of the agent's granted authority if the instrument so specified. But in the absence of such a clear specification, the background assumption was that grants of authority carried with them certain incidental or implied powers for executing the express powers. As William Blackstone put it, "A subject's grant shall be construed to include many things, besides what are expressed, if necessary for the operation of the grant."

Lawson & Kopel, *supra,* at 272-73.

Under this framework, the "initial question" is "whether the law represents exercise of a truly incidental power or instead tries to exercise a principal power that would need to be specifically enumerated." Lawson, *The Necessary and Proper Clause and the Law of Agency*, *supra*. Private law provides an example. In the late eighteenth century, "the power to manage a farm presumptively included as an incident the power to lease the farm, but it did not presumptively include the power to sell the farm." *Id.* To empower an agent to sell the farm, one "needed to spell that out as a principal power in the document." *Id.* So too "under the Necessary and Proper Clause one must always ask whether Congress is trying to exercise … 'a great substantive and independent power, which cannot be implied as incidental to other powers' or is instead employing 'means

not less usual, not of higher dignity, not more requiring a particular specification than other means.'" *Id.* (quoting *McCulloch,* 17 U.S. (4 Wheat) at 411, 421).

Evidence from the state constitutional ratifying conventions supports this view of the Necessary and Proper Clause. In fact, evidence suggests that some cautioned against the very argument that the government advances here. Mr. Williams of New York feared that the Necessary and Proper Clause, combined with Congress' taxing power would give Congress broad power to regulate the lives of Americans in ways the Constitution does not contemplate. He complained that the taxing power, along with the Necessary and Proper Clause, "comprehends an excise on all kinds of liquors, spirits, wine, cider, beer, &c.; indeed, on every necessary or convenience of life, whether of foreign or home growth or manufacture." The Debates in the Several State Conventions on the Adoption of the Federal Constitution, Vol. 2, 330 (Jonathan Elliot, ed. 1836). "[I]t will lead," he continued, "to the passing of a vast number of laws, which may affect the personal rights of the citizens of the states, and put their lives in jeopardy." *Id.* at 330-31. And "[i]t will open a door to the appointment of a swarm of revenue and excise officers, to prey upon the honest and industrious part of the community." *Id.* at 331.

But other members dismissed these concerns, explaining that the Necessary and Proper Clause bore a narrower interpretation. In Pennsylvania, ratifiers assured critics that the Necessary and Proper Clause gives Congress "no further powers than those already enumerated." *Id.* at 537. In fact, they argued that "no person can, with a tolerable

face, read the clauses over, and infer that" the Clause gives Congress principal powers beyond those enumerated. *Id.* at 537-38. In Virginia, Mr. Nicholas echoed this response. "Does this [clause] give any new power?," he asked. The Debates in the Several State Conventions on the Adoption of the Federal Constitution, Vol. 3, 245 (Jonathan Elliot, ed. 1836). "I say not," he continued, "[t]his clause only enables them to carry into execution the powers given to them, but gives them no additional power." *Id.* at 245-46. Mr. Pendelton of Virginia agreed. *Id.* at 441. He explained, "I understand that clause as not going a single step beyond the delegated powers … If they should be about to pass a law in consequence of this clause, they must pursue some of the delegated powers, but can by no means depart from them, or arrogate any new powers; for the plain language of the clause is, to give them power to pass laws in order to give effect to the delegated powers." *Id.* The state ratification debates thus bolster the view that the Constitution's ratifiers largely understood the Clause to authorize Congress to pass only those laws incidental to its enumerated powers.

The post-ratification evidence further supports this understanding of the Necessary and Proper Clause. During a debate on the floor of the United States Senate in 1800, Senator Abraham Baldwin of Georgia recalled the convention discussion about the Clause. *See* Records of the Federal Convention of 1787, Vol 3, 384 (Max Farrand, ed. 1937). He explained that the Necessary and Proper Clause speaks only "of the use of the powers vested by the Constitution" and its application could not be extended beyond those powers. *Id.* Later, in 1830, James Madison wrote to Speaker of the House

Andrew Stevenson about the power of Congress to indefinitely appropriate money. *Id.* at 493. In that letter, Madison observed that the express power to raise an army implied a power to spend money for that purpose. *Id.* If any doubt remained as to that implied power, the "power to pass all laws necessary and proper in such cases" would remove it. *Id.* In such a case, power that was necessary and proper related back to the enumerated power.

Based on this history, the original meaning of the Necessary and Proper Clause cannot justify a ban on home distilling. It is not *necessary*. There is no "definite connection" between the ban's means and ends and no "obvious and precise affinity" between the ban and Congress' taxing power. *See* Madison Letter to Roane, *supra*. To be *proper* as incidental to Congress' taxing power, the ban must have an appropriate connection to raising revenue. Nor can the ban create any new powers. Yet as the district court observed, the ban fails on both grounds. *Hobby Distillers Ass'n v. Alocohol & Tobacco Tax & Trade Bureau*, 2024 WL 3357841, at *8 (N.D. Tex. July 10, 2024). First, the ban, on its own, does not raise revenue. *Id.* (noting that "the production of revenue" is "any tax's 'essential feature'") (quoting *NFIB*, 567 U.S. at 564). Instead, §5178(b)(1)(A) bans the placement of a "distilled spirits plant ... in any dwelling house" and §5601(6) "makes it a felony to violate §5178." *Id.* at *1, *8. At the very least, it is unclear how the ban has any connection to the ends of raising revenue.

Second, even if the ban could be connected to raising revenue, it is not a "precise" connection. *See* Madison Letter to Roane, *supra*. By banning spirits, the

government is losing the opportunity to tax and raise revenue. While the government claims that the challenged provisions are necessary and proper because they prevent individuals from evading taxes, Congress has already enacted laws that punish fraud and tax evasion. *Id.* at *11-12. The ban does neither. No tax liability attaches to an individual until spirits are created. *Id.* But by barring the placement of a still in a home, the challenged provisions allow Congress to prohibit activity that may never create a tax liability. It thus "punish[es] individuals Congress cannot" otherwise "reach." *Id.* at *12.

Any connection between the ban's grant of new power to punish wholly private activity before it creates a tax liability and Congress' taxing power is neither obvious nor precise. Thus §5178(b)(1)(A) and §5601(6) cannot be sustained as necessary or proper exercises of Congress' taxing power consistent with the Clause's original meaning.

**B. Even under a more relaxed framework, the home distilling ban is not a necessary and proper exercise of Congress's taxing power.**

The government urges that a law is necessary and proper if it is "'convenient' or 'useful' for carrying an enumerated power into execution." Opening Br. at 15 (citing *Comstock*, 560 U.S. at 133-34; *McCulloch*, 17 U.S. (4 Wheat.) at 413). That is the improper test for two reasons. First, although the Supreme Court has often read the Necessary and Proper Clause "to give Congress great latitude in exercising its powers," *NFIB*, 567 U.S. at 537, the "Clause does not give Congress *carte blanche*," *Comstock*, 560 U.S. at 158 (Alito, J., concurring). It still requires "an 'appropriate' link between a power conferred

by the Constitution and the law enacted by Congress." *Id.* Second, the government conflates "necessary" and "proper" into one standard. Although the Supreme Court has been "very deferential to Congress's determination that a regulation is 'necessary,'" it has not given such deference to the determination that that a law is a "'*proper* [means] for carrying into Execution' Congress's enumerated powers." *NFIB*, 567 U.S. at 559 (emphasis and alteration in original). At the very least, then, that challenged provisions are not "proper" within the meaning of the Clause.

Even under a more relaxed framework, the home distilling ban is not a necessary and proper exercise of Congress's taxing power. Today, to determine whether a statute is valid under the Necessary and Proper Clause, courts apply the test from *McCulloch*. 17 U.S. (4 Wheat) at 421. The government frames that test as blessing any law "'convenient' or 'useful' for carrying an enumerated power into execution." Opening Br. at 15. But *McCulloch* required more. Not only must a "necessary" law be "conducive to" the enumerated power, but it must also be "'plainly adapted' to that end." *Jinks v. Richland Cnty.*, S.C., 538 U.S. 456, 462 (2003); *see McCulloch*, 17 U.S. (4 Wheat) at 421 ("Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are *plainly adapted to that end*, which are not prohibited, but consist[ent] with the letter and spirit of the constitution, are constitutional.") (emphasis added). Put another way, the means must have a "real or substantial relation to the enforcement" of the enumerated power. *James Everard's Breweries v. Day*, 265 U.S. 545, 560 (1924).

Here, the district court correctly concluded that the home-distilling ban was not plainly adapted to Congress's tax power. The "assessment or collection" of a tax refers to "the *execution* of a specific tax obligation." *Hobby Distillers Ass'n,* 2024 WL 3357841, at *11. Yet here, Congress "regulated behavior separate from the logistics of liquor taxes." *Id.* Indeed, Congress "criminally prohibited the simple possession" of a home-distilling apparatus "used to produce [a] taxable commodity," that "by its own text, makes no meaningful connection to the mechanisms by which those taxes are assessed and collected." *Id.* at *12. And the government make no effort on appeal to explain how the home-distilling ban is plainly adapted to collecting federal taxes. Thus, the ban cannot be "necessary" to carry out Congress's tax power.

But even if a law is "necessary," that does not make it "proper." A law cannot be "proper" within the meaning of the Necessary and Proper Clause if it yields a "great substantive and independent power beyond those specifically enumerated." *See NFIB*, 567 U.S. at 559-60 (cleaned up) (quoting *McCulloch*, 17 U.S. (4 Wheat) at 411). The federal government "possesses only limited powers" and "can exercise only the powers granted to it" by the Constitution. *Id.* at 533-35 (quoting *McCulloch*, 17 U.S. (4 Wheat) at 405). "The same proposition, otherwise stated, is that powers not granted are prohibited." *United States v. Butler*, 297 U.S. 1, 68 (1936). The Constitution "withhold[s] from Congress a plenary police power." *United States v. Morrison*, 529 U.S. 598, 618 (2000). Such a power is reserved to the states. *See* U.S. Const. amend. X; *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996).

The Constitution provides Congress with the power to "lay and collect Taxes." U.S. Const. art. I., §8, cl. 1. But "Congress's ability to use its taxing power to influence conduct" has "limits." *NFIB*, 567 U.S. at 572. Indeed, the Supreme Court has "policed these limits aggressively, invalidating punitive exactions obviously designed to regulate behavior otherwise regarded … as beyond federal authority." *Id.* (citing *Butler*, 297 U.S. at 56). Congress cannot, for example, tax farmers to indirectly regulate local agricultural production. *See Butler*, 297 U.S. at 68-69. After all, "the attainment of a prohibited end may not be accomplished under the pretext of the exertion of powers which are granted." *Id.; see also McCulloch,* 17 U.S. (4 Wheat) at 423 ("[S]hould Congress, under the pretext of executing its powers, pass laws for the accomplishment of objects not entrusted to the government; it would be the painful duty of this tribunal … to say[] that such an act was not the law of the land.").

Yet that is precisely what Congress attempts to do here by relying on the power of securing revenue to ban home distilling. The taxing power "is limited to requiring an individual to pay money into the Federal Treasury, no more." *NFIB*, 567 U.S. at 574. The government's purported authority to regulate "the location of distilled spirit plants," Opening Br. at 16, is "in no way an authority that is narrow in scope or incidental to the exercise of the [tax] power," *NFIB*, 567 U.S. at 560 (cleaned up). As Plaintiffs explain, the home-distilling ban "exercises 'direct control' over Plaintiffs personal conduct and is not 'strictly incidental' to the collection of the distilled spirits tax." Resp. Br. at 46. Instead, the home-distilling ban "criminalize[s] conduct of persons not subject

to the tax, because the tax liability exists only 'from the time the spirits are in existence until such tax is paid.'" *Hobby Distillers Ass'n,* 2024 WL 3357841, at *12. Rather than collecting revenue, the challenged provisions ban conduct before tax liability is even created. *Id.* Thus the government's interpretation of the Necessary and Proper Clause would "work a substantial expansion of federal authority." *NFIB*, 567 U.S. at 560.

Nor does the government offer any limiting principle when it claims the authority to ban an activity for fear of future tax avoidance. The government impliedly defends the home-distilling ban on grounds that it can regulate where any taxable activity may occur on pain of criminal liability. *See* Opening Br. at 15-16. But if the government has this power, it could effectively ban not only home distilling but the roughly 15 million home-based business across the country. *See* Chris Edwards, *Entrepreneurship and Home Businesse*s, Cato Institute (Dec. 15, 2022), bit.ly/3CF0Dv1. Under the government's logic, Congress could ban an entire sector of the economy if it decided that its tax on goods sold online is easier to evade for sellers who stock and ship their products from home. *See* Opening Br. at 16. That ability resembles a state's police power, which provides it "great latitude" to legislate on matters of "production, [and] manufacturing." *See Medtronic, Inc.*, 518 U.S. at 475; *United States v. Lopez*, 514 U.S. 549, 554 (1995) (cleaned up). A power that rivals a state's police power is a "great substantive and independent power" which cannot be supported by the Necessary and Proper Clause. *See McCulloch*, 17 U.S. (4 Wheat) at 411; *see also Butler*, 297 U.S. at 70 (noting that "that the power to

tax could not justify the regulation of the practice of a profession, under the pretext of raising revenue”).

At the very least, the government’s choice to purportedly raise revenue by banning an activity it could otherwise directly tax should raise suspicion that it is pursuing “the accomplishment of objects not entrusted to the government” under “the pretext of executing its powers.” *McCulloch*, 17 U.S. (4 Wheat) at 423. In this case, the “objects not entrusted” to the federal government is nothing less than the creation of federal police powers to prohibit conduct that states are perfectly capable of policing if they so desire.

At bottom, the Necessary and Proper Clause cannot bear the meaning the government asserts. It is not a grant of general legislative power but requires an appropriate connection between the implemented power and the implementing law. The Constitution distinguishes “between what is truly national and what is truly local.” *Morrison*, 529 U.S. at 599. And enforcing the proper definition of the Necessary and Proper Clause helps maintain that critical distinction.

## CONCLUSION

For these reasons, the Court should affirm the decision below.

Respectfully submitted,

*/s/ Thomas R. McCarthy*

Thomas R. McCarthy
Tiffany H. Bates
ANTONIN SCALIA LAW SCHOOL
ADMINISTRATIVE LAW CLINIC
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com

*Counsel for Amicus Curiae*

Braden H. Boucek
SOUTHEASTERN LEGAL
FOUNDATION
560 W. Crossville Rd., Ste. 104
Roswell, GA 30075
(770) 977-2131

Dated: December 18, 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(c) because it contains 4,329 words, excluding the parts that can be excluded. This brief also complies with Fed. R. App. P. 32(a)(5)-(6) and Circuit Rule 32(b) because it has been prepared in a proportionally spaced face using Microsoft Word in 14-point Garamond font.

Dated: December 18, 2024 *<u>/s/ Thomas R. McCarthy</u>*

## CERTIFICATE OF SERVICE

I e-filed this brief with the Court, which will email everyone requiring notice.

Dated: December 18, 2024 *<u>/s/ Thomas. R. McCarthy</u>*