No. 24-10760

# In the United States Court of Appeals for the Fifth Circuit

———————

SCOTT MCNUTT,

*Plaintiff-Appellee,*

RICK MORRIS; HOBBY DISTILLERS ASSOCIATION;
THOMAS O. COWDREY, III; JOHN PRINCE III,

*Plaintiffs-Appellees/Cross-Appellants,*

v.

US DEPARTMENT OF JUSTICE; ALCOHOL AND TOBACCO TAX AND TRADE BUREAU,
A BUREAU OF THE U.S. DEPARTMENT OF THE TREASURY,

*Defendants-Appellants/Cross Appellees.*

———————

**On Appeal from the United States District Court for the
Northern District of Texas, Fort Worth No. 4:23-cv-1221**

———————

**BRIEF OF AMICI CURIAE ADVANCING AMERICAN FREEDOM; AMERICAN
ASSOCIATION OF SENIOR CITIZENS; AMERICANS FOR LIMITED GOVERNMENT;
EAGLE FORUM; INTERNATIONAL CONFERENCE OF EVANGELICAL CHAPLAIN
ENDORSERS; JCCWATCH.ORG; TIM JONES, FORMER SPEAKER, MISSOURI
HOUSE, CHAIRMAN, MISSOURI CENTER-RIGHT COALITION; LOUISIANA
FAMILY FORUM; MEN AND WOMEN FOR A REPRESENTATIVE DEMOCRACY IN
AMERICA, INC.; NEW JERSEY FAMILY FOUNDATION; PROJECT 21 BLACK
LEADERSHIP NETWORK; SETTING THINGS RIGHT; 60 PLUS ASSOCIATION;
STAND FOR GEORGIA VALUES ACTION; STUDENTS FOR LIFE OF AMERICA;
TRADITION, FAMILY, PROPERTY, INC.; WOMEN FOR DEMOCRACY IN AMERICA,
INC.; YOUNG AMERICA'S FOUNDATION; AND YOUNG CONSERVATIVES OF TEXAS
IN SUPPORT OF PLAINTIFFS-APPELLEES AND PLAINTIFFS-APPELLEES/CROSS-
APPELLANTS AND AFFIRMANCE**

———————

J. MARC WHEAT
  *Counsel of Record*
Timothy Harper (Admitted in DC)
ADVANCING AMERICAN FREEDOM, INC.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 780-4848
MWheat@advancingamericanfreedom.com

*Counsel for Amici Curiae*

February 5, 2025

## STATEMENT OF INTERESTED PERSONS
## FIFTH CIRCUIT RULE 29.2

The undersigned counsel certifies that the following persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal. J. Marc Wheat, General Counsel for Advancing American Freedom, Amicus Curiae. The undersigned counsel also certifies that Amici Curiae, Advancing American Freedom; American Association of Senior Citizens; Americans for Limited Government; Eagle Forum; International Conference of Evangelical Chaplain Endorsers; JCCWatch.org; Tim Jones, Former Speaker, Missouri House, Chairman, Missouri Center-Right Coalition; Louisiana Family Forum; Men and Women for a Representative Democracy in America, Inc.; New Jersey Family Foundation; Project 21 Black Leadership Network; Setting Things Right; 60 Plus Association; Stand for Georgia Values Action; Students for Life of America; Tradition, Family, Property, Inc.; Women for Democracy in America, Inc.; Young America's Foundation; and Young Conservatives of Texas are nonprofit corporations that have no parent corporations, are not publicly held corporations, and do not issue stock.

DATED: December 18, 2024    /s/ J. Marc Wheat
                            J. Marc Wheat
                            General Counsel for Advancing American Freedom

i

**TABLE OF CONTENTS**

STATEMENT OF INTERESTED PERSONS............................................................ i

TABLE OF AUTHORITIES..................................................................................... iv

STATEMENT OF INTEREST OF AMICI CURIAE ............................................. 1

INTRODUCTION ..................................................................................................... 2

ARGUMENT .............................................................................................................. 4

    I.    The Ban on Home Distilling is Unconstitutional Because it Depends on a Principle That Would Allow the Federal Government Massive Regulatory Power and Thus Undermine the Constitutional Bargain Between the People, the States, and the Federal Government ................................................................... 6

        A.    If courts adopted the Government's proposed interpretation in this case, the constitutional bargain between the people, the States, and the Federal Government would be destroyed ............................................... 6

            i.    The constitutional bargain between the people, the States, and the Federal Government was the granting of certain limited powers to the Federal Government but the reservation of the power over the vast bulk of local issues to the States ................ 6

            ii.    The Federal Government's justification for the Home-Distilling Ban, if adopted by courts, would result in a massive transfer of power from the States to the Federal Government, thus undermining the constitutional bargain ........................... 9

        B.    Because the principle necessary to justify the Government's ban on home distilling would undermine the clear agreement reached in the text of the Constitution between the States and the Federal Government, it is inconsistent with the letter and spirit of the Constitution and thus the ban is not a proper exercise of Congress's Taxing Power ......................................11

    II.    Those Who Govern Have No Right or Authority to Change the Constitution Outside of the Article V Amendment Process......... 13

A.      The rights of the people pre-exist government ........................ 14

B.      The rights of the people are at all times threatened by human nature, whether in the hypothetical state of nature or under any government ............................................... 16

C.      Government exists to protect rights but is also a potential source of their violation. This conundrum necessitates "a government of laws and not of men" .............. 18

CONCLUSION ................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Gibbons v. Ogden*,
    22 U.S. 1 (1824)..................................................................................6

*Gozales v. Raich*,
    545 U.S. 1 (2005)................................................................................5

*INS v. Chadha*,
    462 U.S. 919 (1983)..........................................................................16

*McCulloch v. Maryland*,
    17 U.S. 316 (1819)................................................... 6, 10, 12, 19

*McDonald v. Chicago*,
    561 U.S. 742 (2010)..........................................................................18

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
    567 U.S. 519 (2012)............................................................................6

*Obergefell v. Hodges*,
    576 U.S. 644 (2015)................................................................. 14, 15

*United States v. Comstock*,
    560 U.S. 126 (2010)..........................................................................12

*Veazie Bank v. Fenno*,
    75 U.S. 533 (1869).............................................................................5

*Whitman v. Am. Trucking Ass'n, Inc.*,
    531 U.S. 457 (2001)............................................................................6

*Wickard v. Filburn*,
    317 U.S. 111 (1942)............................................................................5

*Yick Wo v. Hopkins*,
    118 U.S. 356 (1886)..........................................................................18

**Statutes & Other Authorities:**

U.S. Const. art. I, § 8, cl. 1..................................................................9

U.S. Const. art. I, § 8, cl. 3..................................................................4

iv

U.S. Const. art. II, § 1, cl. 7 .......................................................19

U.S. Const. art. VI, cl. 2 .................................................. 10, 18

U.S. Const. art. VI, cl. 3 ...........................................................19

U.S. Const. amend. IX ..............................................................15

U.S. Const. amend. X.........................................................9, 10, 11

The Declaration of Independence (U.S. 1776) ........................................2

26 U.S.C. § 5178(a)(1)(B) ...........................................................2

26 U.S.C. § 5601(6) ................................................................2

27 C.F.R. §§ 19.51-19.52 ..........................................................2

Mass. Const. pt. 1 art. XXX........................................................18

John Adams to Samuel Adams, 18 Oct. 1790 (Philip B. Kurland and Ralph
        Lerner eds., Liberty Fund 1987) ...........................................16

Aristotle, *Politics*, Book III, (Benjamin Jowett, trans. 1885)...................17

Hadley Arkes, *A Natural Law Manifesto or an Appeal from the Old
        Jurisprudence to the New*, 87 Notre Dame L. Rev. 1245 (2013)................16

Randy Barnett, *New Evident of the Original Meaning of the Commerce
        Clause*, 55 Ark. L. Rev. 847 (2003)........................................5

Randy E. Barnett, *Our Republican Constitution* (1st ed. 2016) ..................19

1 W. Blackstone, Commentaries on the Laws of England (1765) ........................15

Sir William Blackstone, *Commentaries on the Laws of England*
        (Philadelphia: J. B. Lippincott 1893), 1:40-42, OLL
        https://oll.libertyfund.org/titles/sharswood-commentaries-on-the-
        laws-of-england-in-four-books-2-vols ......................................15

Lee Edwards, *The Conservative Revolution* (Free Press 1999)......................3

Edwin J. Feulner, Jr, *Conservatives Stalk the House: The Story of the
        Republican Study Committee* (Green Hill Publishers, Inc. 1983) .............1

Thomas Jefferson, *Notes on the State of Virginia*, Query XIII (1853)............17

Gary S. Lawson, *The Rise and Rise of the Administrative State*,
        107 Harv. L. Rev. 1231 (1994) .............................................11

v

John Locke, Second Treatise on Government, § 6 (C.B. Macpherson ed., 1980) ...................................................................................................15

Montesquieu, *Spirit of the Laws*, § 11.4 (Thomas Nugent trans. 1752) (1748)..................................................................................................17

Robert G. Natelson, *The Enumerated Powers of the States* 3 Nev. L. J. 469 (2002-2003) ......................................................................................9

Robert G. Natelson, *The Founders Interpret the Constitution: The Division of Federal and State Power*, 19 Fed. Soc. Rev. 60 (2018).........................7, 8

Robert Natelson, *More News on Powers Reserved Exclusively to the States*, 20 Fed. Soc. Rev. 92 (2019) ..........................................................7, 9

Jeffrey Rosen, *The Pursuit of Happiness: How Classical Writers on Virtue Inspired the Lives of the Founders and Defined America* (Simon & Schuster 2024) ...............................................................................15

Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (Thomson/West 2012) .....................................................7

*The Debates in the Several State Conventions on the Adoption of the Federal Constitution* [Hereinafter "Elliot's Debates] (Johnathan Elliot ed., 2d ed. 1901)..................................................................8

The Federalist No. 15 (Alexander Hamilton) (George W. Carey and James McClellan, eds., The Liberty Fund 2001) ...........................................17

The Federalist No. 17 (Alexander Hamilton) (George W. Carey and James McClellan, eds., The Liberty Fund 2001) .............................................7

The Federalist No. 45 (James Madison) (George W. Carey and James McClellan, eds., The Liberty Fund 2001) .............................................8

The Federalist No. 46 (James Madison) (George W. Carey and James McClellan, eds., The Liberty Fund 2001) .........................................8, 10

The Federalist No. 48 (James Madison) (George W. Carey and James McClellan, eds., The Liberty Fund 2001) .............................................3

The Federalist No. 51 (James Madison) (George W. Carey and James McClellan, eds., The Liberty Fund 2001) ...........................................17

**STATEMENT OF INTEREST OF AMICI CURIAE**[1]

Advancing American Freedom (AAF) is a nonprofit organization that promotes and defends policies that elevate traditional American values, including the uniquely American idea that all people are created equal and endowed by their Creator with unalienable rights to life, liberty, and the pursuit of happiness. AAF "will continue to serve as a beacon for conservative ideas, a reminder to all branches of government of their responsibilities to the nation,"[2] and believes that the governmental structures established by the Constitution are necessary for the preservation of the liberty of the people. Advancing American Freedom files this brief on behalf of its 7,967 members in Texas and its 10,483 members in the Fifth Circuit.

Amici American Association of Senior Citizens; Americans for Limited Government; Eagle Forum; International Conference of Evangelical Chaplain Endorsers; JCCWatch.org; Tim Jones, Former Speaker, Missouri House, Chairman, Missouri Center-Right Coalition; Louisiana Family Forum; Men and Women for a

---

[1] All parties have consented to the filing of this brief. No counsel for a party authored this brief in whole or in part. No person other than Amicus Curiae and its counsel made any monetary contribution intended to fund the preparation or submission of this brief.

[2] Edwin J. Feulner, Jr, *Conservatives Stalk the House: The Story of the Republican Study Committee* 212 (Green Hill Publishers, Inc. 1983).

Representative Democracy in America, Inc.; New Jersey Family Foundation; Project 21 Black Leadership Network; Setting Things Right; 60 Plus Association; Stand for Georgia Values Action; Students for Life of America; Tradition, Family, Property, Inc.; Women for Democracy in America, Inc.; Young America's Foundation; and Young Conservatives of Texas believe, as did America's Founders, that the maintenance of the separation of government powers into three co-equal branches is essential to ordered liberty.

## INTRODUCTION

This case concerns the statutory and regulatory prohibition of the home distillation of spirits (the "Home-Distilling Ban") under 26 U.S.C. § 5178(a)(1)(B) and § 5601(6) and 27 C.F.R. § 19.51-19.52. This prohibition touches activity of the most local type, taking place purely in the home of an individual or family. So long as Congress is allowed to regulate that type of behavior, the constitutional bargain struck by the States when they ratified the Constitution is undermined.

The purpose of government is to "secure" the rights with which all people are "endowed by their Creator." The Declaration of Independence para. 2 (U.S. 1776). However, as the Founders understood from their reading of history, governments are frequently a source of those rights' violation. "[T]he founders recognized the darker side of human nature and attempted in the Constitution to forge a balance between

2

liberty, for which they had fought a revolution, and order, which would protect the rights of all, not just the powerful."[3] The people established the Constitution to constrain the power of government officials so that those officials could effectively protect the rights of the people while limiting the exercise of power such that the government would be less likely to threaten those very rights. There are no minor excursions beyond those boundaries. Every step over those lines, even every attempt to reach out beyond them, is usurpation. To be more than mere "parchment barriers,"[4] the Constitution's limitations on government power must be respected by those who wield it.

The Government's theories attempting to justify the Home-Distilling Ban, unsurprisingly, fall flat. The district court correctly rejected both a Commerce Clause and a Taxing Clause rationale for the ban. Now, the Government advances only the Taxing Clause argument, claiming that the ban is necessary to, and proper for, the execution of Congress's Taxing Power. However, the Ban is not a proper exercise of Congress's Taxing Power because it upsets the carefully struck constitutional balance between State and Federal power, allowing the Federal Government to reach

---

[3] Lee Edwards, *The Conservative Revolution* 322 (Free Press 1999).
[4] The Federalist No. 48 at 256 (James Madison) (George W. Carey and James McClellan, eds., The Liberty Fund 2001).

where the Constitution gives it no authority to reach, into the home of every American.

The founding generation did not—and would not have—ratified a constitution that gave the Federal Government the power to prohibit this sort of minutiae of local life. The Constitution they did ratify limits Congress to those powers specifically enumerated. Because no enumerated power supports the statute at issue in this case, it must be struck down.

**ARGUMENT**

The Government in this case does not argue in its brief before this Court that its prohibition of home distilling is justified by the power of Congress "[t]o regulate Commerce with foreign Nations and among the several States." U.S. Const. art. I, § 8, cl. 3. The district court rightly found that, under the Supreme Court's current interpretation, the Commerce Clause does not justify the home distilling ban. *Hobby Distillers Association v. Alcohol and Tobacco Tax and Trade Bureau*, No. 4:23-cv-1221-P at 22-28 (N.D. Tex. July 10, 2024). That the ban is not justified by the Commerce Clause is even clearer when the original meaning of the clause is considered. The Commerce Clause allows Congress to regulate trade across state

4

lines.[5] The home distilling ban prohibits local, noncommercial activity. Therefore, it cannot be justified by the Commerce Clause.

Instead, the government is relegated to relying on Congress's Taxing Power. The lack of an enforceable taxing power under the Articles of the Confederation was one of the chief motivations for the proposal of the new Constitution. *See, e.g.*, *Veazie Bank v. Fenno*, 75 U.S. 533, 540 (1869) ("The General Government, administered by the Congress of the Confederation, had been reduced to the verge of impotency by the necessity of relying for revenue upon requisitions on the States, and it was a leading object in the adoption of the Constitution to relieve the government, to be organized under it, from this necessity, and confer upon it ample power to provide revenue by the taxation of persons and property."). The Constitution grants Congress the Taxing Power to ensure that the Federal Government can raise the revenue it needs to fulfill its constitutional functions without depending on the generosity of the States.

By abandoning its Commerce Clause argument, the Government effectively acknowledges that Congress has no power to ban home-distilling. "Congress . . .

---

[5] *See generally*, Randy Barnett, *New Evident of the Original Meaning of the Commerce Clause*, 55 Ark. L. Rev. 847 (2003); Amici of Advancing American Freedom, et al., *Davidson v. Gensler*, No. 6:24-cv-00197 (W.D. Tex. 2024) available at https://advancingamericanfreedom.com/davidson-v-gensler/. The Supreme Court has rightly limited the reasoning of its broadest reading of the Commerce Clause, *Wickard v. Filburn*, 317 U.S. 111 (1942), in its reasoning expressed in *Gozales v. Raich*, 545 U.S. 1 (2005) and elsewhere.

does not . . . hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'n, Inc.*, 531 U.S. 457, 468 (2001). Neither did the drafters or ratifiers of the Constitution. The Taxing Power is not a repository of broad regulatory power. The Home-Distilling Ban is outside of the scope of that Power.

**I.    The Ban on Home Distilling is Unconstitutional Because it Depends on a Principle That Would Allow the Federal Government Massive Regulatory Power and Thus Undermine the Constitutional Bargain Between the People, the States, and the Federal Government.**

*A. If courts adopted the Government's proposed interpretation in this case, the constitutional bargain between the people, the States, and the Federal Government would be destroyed.*

The Federal "[G]overnment is acknowledged by all, to be one of enumerated powers." *McCulloch v. Maryland*, 17 U.S. 316, 405 (1819). An "enumeration of powers is also a limitation of powers, because '[t]he enumeration presupposes something not enumerated." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 534 (2012) (alteration in original) (quoting *Gibbons v. Ogden*, 22 U.S. 1, 9 (1824)). Yet if courts adopt the interpretation of the taxing power advanced by the Government here, the limitation inherent in enumeration largely would be destroyed.

 i. The constitutional bargain between the people, the States, and the Federal Government was the granting of certain limited powers to the Federal Government but the reservation of the power over the vast bulk of local issues to the States.

Whether the Federal Government was given too much power under the proposed Constitution was one of the core public concerns at the time leading up to

ratification. Proponents, in response, repeatedly assured the public that the federal government would concern itself with national, not local, issues.[6]

Alexander Hamilton, who after the adoption of the Constitution, clashed with Madison and others when he advocated for an expanded view of federal power, wrote as an advocate for the Constitution's adoption, in Federalist 17, "The administration of private justice between the citizens of the same State, the supervision of agriculture and of other concerns of a similar nature, all those things, in short, which are proper to be provided for by local legislation, can never be desirable cares of a general jurisdiction."[7]

---

[6] These statements, further, are not mere commentary. "The Federalists clearly intended these lists to induce public reliance. They were published and republished. They also evince a certain amount of coordination, for when the enumerations [of powers reserved to the States] overlapped they remained remarkably consistent." Robert G. Natelson, *The Founders Interpret the Constitution: The Division of Federal and State Power*, 19 Fed. Soc. Rev. 60, 60 (2018). *See also*, Robert Natelson, *More News on Powers Reserved Exclusively to the States*, 20 Fed. Soc. Rev. 92, 92 n. 4 (2019) ("As today, representations of meaning by a measure's sponsors carried far more weight than allegations by opponents. Such representations bound the sponsors later."). Maxims of construction prohibited a "bait and switch" of offering one interpretation to get a measure passed or ratified and another interpretation after its adoption. *See id.* While the subjective intentions of the Framers, whether individually or as a whole, are not legally binding, the public statements that were intended to induce reliance on the part of the ratifiers should be given weight in determining the original public meaning of the Constitution. Original meaning is "[t]he understanding of a text, esp. an important text such as the Constitution, reflecting what an informed, reasonable member of the community would have understood at the time of adoption according to then-prevailing linguistic meanings and interpretive principles." Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 435 (Thomson/West 2012). An informed, reasonable ratifier would have read the proposed Constitution in light of the explanations provided by proponents.
[7] The Federalist No. 17 at 80-81 (Alexander Hamilton) (George W. Carey and James McClellan, eds., The Liberty Fund 2001).

James Madison wrote that the power of the Federal Government would, "be exercised principally on external objects, as war, peace, negotiation, and foreign commerce," while, "[t]he powers reserved to the several states [would] extend to all the objects, which, in the ordinary course of affairs, concern the lives, liberties and properties of the people; and the internal order, improvement and prosperity of the state."[8] Madison assured the public that "the most convincing evidence," showed "that the powers proposed to be lodged in the federal government are as little formidable to those reserved to the individual States, as they are indispensably necessary to accomplish the purposes of the Union."[9] At the Virginia ratifying convention, "he identified as outside the sphere . . . anything that would 'subvert the whole system of state laws.'"[10]

Later Supreme Court Justice James Iredell, "[a]t the North Carolina ratifying convention and in other venues . . . emphasized that all authority not granted to the federal government was reserved exclusively to the states and the people."[11] This

---

[8] The Federalist No. 45 at 241 (James Madison) (George W. Carey and James McClellan, eds., The Liberty Fund 2001).

[9] The Federalist No. 46 at 248 (James Madison) (George W. Carey and James McClellan, eds., The Liberty Fund 2001).

[10] Natelson, *The Founders Interpret the Constitution*, *supra* note 6 at 61 (quoting *The Debates in the Several State Conventions on the Adoption of the Federal Constitution* [Hereinafter "Elliot's Debates] 620 (Johnathan Elliot ed.,2d ed. 1901)).

[11] *Id*. at 63.

8

included the "punishment of crimes other than treason, offenses against the law of nations, or felonies on the high seas."[12]

This bargain was made explicit with the adoption of the Tenth Amendment: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." <u>U.S. Const. amend. X</u>.

    ii.    The Federal Government's justification for the Home-Distilling Ban, if adopted by courts, would result in a massive transfer of power from the States to the Federal Government, thus undermining the constitutional bargain.

At issue in this case is a statutory ban the government argues is designed to ensure the payment of an "excise tax[] on spirits per gallon." Opening Br. for Defs.-Appellants U.S. Department of Justice and Alcohol and Tobacco Tax and Trade Bureau at 15. The Supreme Court has held that Congress's Article I Section 8 Taxing power "is broad," finding that "[n]othing in the Constitution limits the kinds of taxes that Congress may impose." *Moore v. U.S.*, No. 22-800 at 4 (June 20, 2024) (Thomas, J., dissenting). The Constitution also grants Congress the power to "make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers." <u>U.S. Const. art. I, § 8</u>, cl. 1. The Government in this case argues

---

[12] *Id*. (quoting Elliot's Debates at 219). And there are many more such statements. *See generally*, *id*.; Natelson, *More News on Powers Reserved Exclusively to the States*, *supra* note 6; Robert G. Natelson, *The Enumerated Powers of the States* 3 Nev. L. J. 469 (2002-2003).

9

the Home-Distilling Ban is a necessary and proper execution of Congress's Taxing Power. It is not.

When the Federal Government exercises the "powers delegated to the United States by the Constitution," US. Const. amend. X, the resulting law supersedes and displaces State law where the two are in conflict. U.S. Const. art. VI, cl. 2; *McCulloch*, 17 U.S. at 316 ("The government of the Union, though limited in its powers, is supreme within its sphere of action, and its laws, when made in pursuance of the constitution, form the supreme law of the land."). Thus, if the Taxing Power includes the power to ban home-distilling and any other purely local, yet federally taxed, activity, then the Taxing Power includes the authority to displace State regulation of all such activities.[13] The result would be that a great mass of regulatory power is held in reserve by the States unless and until the Federal Government decides to tax and regulate that activity. The interpretation of the Taxing Power advanced by the Government here would thus result in an enormous shift of regulatory power from the States to the Federal Government, undermining the constitutional bargain struck by the founding generation and made explicit in the

---

[13] The implications of the Government's proposed principle here are unbelievable. The Government's theory, for example, would presumably mean that Congress could levy a tax on all production of food for human consumption and then ban at home food production, forcing Americans to eat at restaurants where the Federal Government could ensure that the excise tax on cooking was paid. The point, of course, is not the Congress would ever pass such a law; the point is that any theory of constitutional application that entails such vast federal power over the minutiae of local daily life would undermine what all involved believed they were agreeing to in proposing and ratifying the Constitution of the United States.

Tenth Amendment. The Home-Distilling Ban rests on a principle that would make the powers of the Federal Government incredibly "formidable to those reserved to the individual States."[14]

*B. Because the principle necessary to justify the Government's ban on home distilling would undermine the clear agreement reached in the text of the Constitution between the States and the Federal Government, it is inconsistent with the letter and spirit of the Constitution and thus the ban is not a proper exercise of Congress's Taxing Power.*

The Home-Distilling ban is not a proper means of exercising Congress's Taxing Power, both because its justification depends on a massive transfer of power to the Federal Government inconsistent with the letter and spirit of the Constitution and because it abuses the Taxing Power to accomplish what the Federal Government otherwise would have no legitimate power to accomplish.

The scope of the powers vested in Congress by the Necessary and Proper Clause is limited by "the word 'proper' [which] in this context requires executory laws to be distinctively and peculiarly within the jurisdictional competence of the national government -- that is, *consistent with the background principles of separation of powers, federalism, and individual rights.*"[15]

---

[14] Madison, Federalist No. 46, *supra* note 9.

[15] Gary S. Lawson, *The Rise and Rise of the Administrative State*, 107 Harv. L. Rev. 1231, 1234-35 (1994) (emphasis added).

Chief Justice John Marshall famously explained the Necessary and Proper Clause in *McCulloch v. Maryland*, writing, "Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional." 17 U.S. 216, 421 (1819). As Justice Clarence Thomas has explained, *McCulloch* establishes two requirements for a law to be necessary and proper:

> First, the law must be directed toward a "legitimate" end, which *McCulloch* defines as one "within the scope of the [C]onstitution"— that is, the powers expressly delegated to the Federal Government by some provision in the Constitution . . . Second, there must be a necessary and proper fit between the "means" (the federal law) and the "end" (the enumerated power or powers) it is designed to serve . . . The means Congress selects will be deemed "necessary" if they are "appropriate" and "plainly adapted" to the exercise of an enumerated power, and "proper" if they are not otherwise "prohibited" by the Constitution and not "[in]consistent" with its "letter and spirit."

*United States v. Comstock*, 560 U.S. 126, 160-61 (2010) (Thomas, J., dissenting) (alteration in original) (quoting *McCulloch*, 17 U.S. at 421). Thus, an act of Congress is not "proper" if it is "otherwise 'prohibited by the Constitution'" or is "'[in]consistent' with its 'letter and spirit.'" *Id*.

Upholding the Home-Distilling Ban would upend the balance between the Federal and State governments by transferring massive power to the Federal Government contrary both to the bargain struck by the ratifying generation and the

12

explicit language of the Tenth Amendment. The Home-Distilling Ban is thus not a proper exercise of Congress's Taxing Power because it is inconsistent with the letter and the spirit of the Constitution.

Similarly, upholding the Home-Distilling Ban would allow the Federal Government to abuse the Taxing Power to accomplish ends not otherwise available to the Federal Government. As the Government has effectively recognized by failing to raise any grounds justifying the ban other than the Taxing Power, the ban is not supported by any of Congress's other powers. If the Taxing Power, which on its face allows Congress to raise revenue, were really the seat of massive regulatory power touching even local and private activity, the Constitution would not have been ratified. The Home-Distilling Ban is thus both prohibited by the Constitution and inconsistent with its letter and spirit. For these reasons, it is an improper exercise of the Taxing Power. This Court should affirm the district court's decision holding it unconstitutional.

## II. Those Who Govern Have No Right or Authority to Change the Constitution Outside of the Article V Amendment Process.

The founding generation understood the purpose of government to be the protection of the natural rights of the people. Because government can violate those rights, the Framers understood that government itself had to be restrained. That is

13

why the legislative power of the Federal Government was limited and only expandable through a constitutional amendment process that would require broad national consensus. When government officials usurp the power to alter the constitutional bargain between the Federal Government and the States and the people, they advance their private volition at the expense of the rule of law and the freedoms of the American people, freedom that depends on the rule of law.

    *A.     The rights of the people pre-exist government.*

The rights of the people pre-exist government and come from man's Creator. The Declaration of Independence, which imbues meaning into the Constitution, expresses the fundamental philosophy of American government: "Governments are instituted among Men," to secure "certain unalienable rights," which come from man's Creator and among which "are Life, Liberty, and the pursuit of Happiness." The Declaration of Independence para. 2 (U.S. 1776). These provisions of the Declaration of Independence "refer[] to a vision of mankind in which all humans are created in the image of God and therefore of inherent worth." *Obergefell v. Hodges*, 576 U.S. 644, 735 (2015) (Thomas, J., dissenting).

The Declaration, though perhaps revolutionary in its clarity and universality, was not espousing entirely new ideas. Rather, it echoes the reasoning of William Blackstone and John Locke, among many others. According to Blackstone, absolute

rights are those "which are such as appertain and belong to particular men, merely as individuals or single persons."[16] The Declaration shows its indebtedness to the ideas of Locke, who wrote, "no one ought to harm another in his life, health, liberty, or possessions: for men being all the workmanship of one omnipotent, and infinitely wise maker; all the servants of one sovereign master, sent into the world by his order, and about his business" are "made to last during his, not one another's pleasure."[17]

The Constitution, "like the Declaration of Independence before it—was predicated on a simple truth: One's liberty, not to mention one's dignity, was something to be shielded from—not provided by—the State." *Obergefell*, 576 U.S. at 736 (Thomas, J., dissenting). The Ninth Amendment reinforces the idea that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. In other words, the people were to retain their *pre-existing* rights,[18] both enumerated and unenumerated, under the new government.

---

[16] 1 W. Blackstone, Commentaries on the Laws of England 119 (1765). *See also,* Jeffrey Rosen, *The Pursuit of Happiness: How Classical Writers on Virtue Inspired the Lives of the Founders and Defined America* 112 (Simon & Schuster 2024) (quoting Sir William Blackstone, *Commentaries on the Laws of England* (Philadelphia: J. B. Lippincott 1893), 1:40-42, OLL https://oll.libertyfund.org/titles/sharswood-commentaries-on-the-laws-of-england-in-four-books-2-vols ("According to Blackstone, 'This is the foundation of what we call ethics, or natural law,' which is 'binding over all the globe in all countries, and at all times'—and superior to all human laws. Blackstone says that our powers of reason will help us pursue 'our own substantial happiness' as opposed to rushing to gratify our immediate desires.").

[17] John Locke, Second Treatise on Government, § 6 at 9 (C.B. Macpherson ed., 1980).

[18] "The American Founders understood that there was nothing distinctly American then about the idea of a rule of law, or the principles that barred ex post facto laws, or established the wrongness

*B.     The rights of the people are at all times threatened by human nature, whether in the hypothetical state of nature or under any government.*

The Founders' view of government "was rooted in a general skepticism regarding the fallibility of human nature." *See INS v. Chadha*, 462 U.S. 919, 949 (1983). As John Adams wrote to Samuel Adams, "I think that [education in knowledge, virtue, and benevolence,] will confirm mankind in the opinion of the necessity of preserving and strengthening the dikes against the ocean, its tides and storms. Human appetites, passions, prejudices, and self-love will never be conquered by benevolence and knowledge alone, introduced by human means."[19]

In a state of anarchy, people's rights are real but are subject to violation by the strong. Under a government, people's rights are real but are subject to the whims of those exercising governmental power. According to Montesquieu, "constant experience shows us that every man invested with power is apt to abuse it, and to

---

of bills of attainder. They understood that these principles would not be brought into being by the Constitution they were framing. Those principles had to be in place as we were guided in the framing of a legal structure. The Founders knew they could draw then on what Blackstone called the 'laws of Nature and reason.' In that vein, Jefferson famously remarked that everything was changeable in human affairs, except the unalienable rights of mankind. Those were not subject to change, because they were rooted in something enduring either in the nature of man or in the principles of right themselves." Hadley Arkes, *A Natural Law Manifesto or an Appeal from the Old Jurisprudence to the New*, 87 Notre Dame L. Rev. 1245, 1248 (2013).

[19] John Adams to Samuel Adams, 18 Oct. 1790 at 352 (Philip B. Kurland and Ralph Lerner eds., Liberty Fund 1987).

carry his authority as far as it will go."[20] In thousands of years of recorded human history, that nature has not changed.[21]

The Founders were familiar with the abuse of government power. The "government [is] the greatest of all reflections on human nature[.]"[22] As Madison explained:

> If men were angels, no government would be necessary. If angels were to govern men, neither external nor internal controls on government would be necessary. In framing a government which is to be administered by men over men, the great difficulty lies in this: you must first enable the government to control the governed; and in the next place oblige it to control itself.[23]

Yet someone must govern. Virtually no one would suggest that American government should be ruled by the one or the few. But the Framers also feared the tyranny of the majority. As Madison put it, while "[a] dependence on the people is, no doubt, the primary controul on the government," "experience has taught mankind the necessity of auxiliary precautions."[24]

---

[20] Montesquieu, *Spirit of the Laws*, § 11.4 (Thomas Nugent trans. 1752) (1748).

[21] Thomas Jefferson, *Notes on the State of Virginia*, Query XIII, 136 (1853) at 130 ("Human nature is the same on every side of the Atlantic, and will be alike influenced by the same causes. The time to guard against corruption and tyranny is before they shall have gotten hold on us. It is better to keep the wolf out of the fold, than to trust to drawing his teeth and talons after he shall have entered.").

[22] The Federalist No. 51 at 269 (James Madison) (George W. Carey and James McClellan, eds., The Liberty Fund 2001). *See also*, The Federalist No. 15 at 73 (Alexander Hamilton) (George W. Carey and James McClellan, eds., The Liberty Fund 2001). ("[T]he passions of men will not conform to the dictates of reason and justice, without constraint.")

[23] *Id*.

[24] *Id*. *See also*, Aristotle, *Politics*, Book III, 1287a (Benjamin Jowett, trans. 1885) (350 BC) ("[H]e who bids the law rule may be deemed to bid God and Reason alone rule, but he who bids man rule

*C.     Government exists to protect rights but is also a potential source of their violation. This conundrum necessitates "a government of laws and not of men."*

*Quis custodiet ipsos custodes*? John Adams suggested the answer in the Massachusetts Constitution. Proper government does not impose the rule of one man, nor of the few or the many. Under proper government, the *law* must rule. *See* Mass. Const. pt. 1 art. XXX. Citing this provision of the Massachusetts Constitution, the Supreme Court in *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886) wrote that the idea of a person's rights held "at the mere will of another, seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself."

The law that must rule is the Constitution. The Declaration describes the higher law upon which government is based, and the truths explicated therein, including the reality of "inalienable rights" that are "embedded in our constitutional structure." *McDonald v. Chicago*, 561 U.S. 742, 807 (2010) (Thomas, J., concurring in part and concurring in the judgment). The Constitution, in turn, is "the supreme Law of the Land." U. S. Const. art. VI, cl. 2. It is also "the law that governs those who govern [the people]," and "is put in writing so that it can be enforced against

---

adds an element of the beast; for desire is a wild beast, and passion perverts the minds of rulers, even when they are the best of men. The law is reason unaffected by desire.").

18

the servants of the people."[25] Those who administer American government swear an oath to uphold and defend it.[26]

When those same people alter the constitutional bargain without the consent of the people, that is, outside of the constitutional amendment process, available only through the constitutional amendment process, they elevate themselves above the law, undermining the structures that are essential to the preservation of liberty.

Congress, constrained as it is by the Constitution, can only exercise those powers the Constitution has granted it. As Chief Justice John Marshall wrote, "This government is acknowledged by all, to be one of enumerated powers." *McCulloch v. Maryland*, 17 U.S. 316, 405 (1819). Later in that same paragraph, he noted that the question of the extent of those powers "is perpetually arising, and will probably continue to arise, so long as our system shall exist." *Id.*

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court and rule for Plaintiffs-Appellees.

/s/ J. Marc Wheat
J. MARC WHEAT
  *Counsel of Record*
ADVANCING AMERICAN FREEDOM, INC.
801 Pennsylvania Avenue, N.W.

---

[25] Randy E. Barnett, *Our Republican Constitution* 23 (1st ed. 2016).
[26] U. S. Const. art. II, § 1, cl. 7; U. S. Const. art. VI, cl. 3.

Washington, D.C. 20004
(202) 780-4848
MWheat@advancingamericanfreedom.com

*Counsel for Amici Curiae*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2025, a true and correct copy of the foregoing Brief of Amici Curiae for was served via electronic filing with the Clerk of Court and all registered ECF users.


Dated: February 5, 2025

/s/ J. Marc Wheat
J. MARC WHEAT

## CERTIFICATE OF COMPLIANCE

This brief has been prepared using 14-point, proportionately spaced, serif typeface, in Microsoft Word.  Excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 4958 words.


//s/ J. Marc Wheat
J. MARC WHEAT