No. 24-10760

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————————————

SCOTT MCNUTT,

Plaintiff-Appellee,

RICK MORRIS; HOBBY DISTILLERS ASSOCIATION; THOMAS O. COWDREY, III; JOHN PRINCE, III,

Plaintiffs-Appellees/Cross-Appellants,

v.

US DEPARTMENT OF JUSTICE; ALCOHOL AND TOBACCO TAX AND TRADE BUREAU, A BUREAU OF THE U.S. DEPARTMENT OF THE TREASURY,

Defendants-Appellants/Cross-Appellees.

————————————

On Appeal from the United States District Court
for the Northern District of Texas

————————————

**RESPONSE AND REPLY BRIEF FOR DEFENDANTS-APPELLANTS U.S. DEPARTMENT OF JUSTICE AND ALCOHOL AND TOBACCO TAX AND TRADE BUREAU**

————————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

LEIGHA SIMONTON
  *United States Attorney*

MARK B. STERN
SARAH CLARK GRIFFIN
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7216*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-8727*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................... 1

ARGUMENT ...................................................................................................... 3

I.     Plaintiffs Lack Standing ........................................................................... 3

II.    The Challenged Statutory Provisions Are a Necessary and Proper
Exercise of Congress's Tax Power. ....................................................... 14

CONCLUSION ................................................................................................. 24

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Babbitt v. United Farm Workers Nat'l Union,*
442 U.S. 289 (1979) ............................................................ 3

*Burroughs v. United States,*
290 U.S. 534 (1934) ............................................................ 23

*Gonzales v. Raich,*
545 U.S. 1 (2005) ............................................................ 22

*Heckler v. Community Health Servs. of Crawford Cty., Inc.,*
467 U.S. 51 (1984) ............................................................ 8

*Hunt v. Washington State Apple Advert. Comm'n,*
432 U.S. 333 (1977) ............................................................ 6

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ............................................................ 4, 6

*McCulloch v. Maryland,*
17 U.S. (4 Wheat.) 316 (1819) ............................................................ 14

*National Fed'n of Indep. Bus. v. Sebelius,*
567 U.S. 519 (2012) ............................................................ 14, 17, 18, 19, 20

*National Football League Players Ass'n v. National Football League,*
874 F.3d 222 (5th Cir. 2017) ............................................................ 14

*Speech First, Inc. v. Fenves,*
979 F.3d 319 (5th Cir.), *as revised* (Oct. 30, 2020) ............................................................ 10

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) ............................................................ 3, 10

*United States v. Comstock,*
560 U.S. 126 (2010) ............................................................ 3, 14, 21, 22, 23

*United States v. Darby,*
312 U.S. 100 (1941) ............................................................ 22

*United States v. Dewitt,*
76 U.S. 41 (1869) ............................................................ 20

*United States v. Goldberg,*
225 F.2d 180 (8th Cir. 1955) ................................................................ 2, 15

*United States v. LaBerge,*
267 F. Supp. 686 (1967) .......................................................................... 11

*Zimmerman v. City of Austin,*
881 F.3d 378 (5th Cir. 2018) .................................................................... 4

**Statutes:**

26 U.S.C. § 5042(a)(2)(A) ......................................................................... 8

26 U.S.C. § 5053(e) .................................................................................. 8

26 U.S.C. § 5178 ...................................................................................... 2

26 U.S.C. § 5178(a)(1)(A) ......................................................................... 15

26 U.S.C. § 5178(a)(1)(B) .......................................... 1, 2, 4, 9, 12, 15, 17

26 U.S.C. § 5178(a)(1)(C) ......................................................................... 15

26 U.S.C. § 5178(a)(2)(B) ......................................................................... 16

26 U.S.C. § 5178(a)(2)(C)(ii) .................................................................... 16

26 U.S.C. § 5178(b) .................................................................................. 15

26 U.S.C. § 5203(a) .................................................................................. 23

26 U.S.C. § 5203(b) .................................................................................. 16

26 U.S.C. § 5214(a)(12) ............................................................................ 22

26 U.S.C. § 5222(a)(1) .............................................................................. 16

26 U.S.C. § 5601(a)(6) ................................................................................ 1

**Regulations:**

27 C.F.R. § 19.51 ....................................................................................... 8

27 C.F.R. § 19.52(a) .................................................................................... 9

**Other Authorities:**

Amy Renee Leiker, *They Sold Moonshine from Their Basement;*
　　*Now They're in Trouble*, Wichita Eagle (Dec. 7, 2016),
　　https://www.kansas.com/news/local/crime/article119403558.html ..................... 12

Motion to Dismiss & Order, *United States v. Penner*,
　　No. 16-cr-10156 (D. Kan. May 10, 2018), Dkt. Nos. 29-30 ..................................... 12

*Perry County Man Pleads Guilty to Selling Moonshine*, Zanesville Times
　　Recorder (Sept. 9, 2018), https://perma.cc/56JB-BZRW ....................................... 12

TTB, U.S. Dep't of the Treasury, *Home Distilling* (last updated
　　Mar. 7, 2024), https://perma.cc/N9QA-QPH4) ........................................................ 9

## INTRODUCTION AND SUMMARY OF ARGUMENT

The act of distilling spirits has long been subject to an array of federal statutory requirements and limitations. Plaintiffs challenge Congress's directive, enacted well over a century ago, that distilled spirits may not be produced "in any dwelling house" or "in any shed, yard, or inclosure connected with any dwelling house." 26 U.S.C. § 5178(a)(1)(B); *see id.* § 5601(a)(6). But plaintiffs misread the provisions they challenge and misconstrue the scope of Congress's power to enact laws necessary and proper to effectuate its tax power. The district court therefore erred in sustaining plaintiffs' challenge and in enjoining the statutory provisions.

**I.** Plaintiffs lack standing. The district court's conclusion to the contrary relied on plaintiff Scott McNutt. But McNutt has never established a serious intention to distill in his dwelling house or in a shed, yard, or inclosure connected to his dwelling house. Indeed, when he distilled fuel alcohol in the past, he did so in a location that is not prohibited by the challenged provisions. Nor have any of the other plaintiffs established an intention to engage in a course of conduct forbidden by the challenged provisions, much less a threat of prosecution for violating the challenged provisions. The generic notice on which the district court relied established no such threat, and merely reminded recipients to comply with distilling requirements generally.

Plaintiffs' arguments to the contrary rely in large part on their view that distilling anywhere that might loosely be described as "at home"—even if not in a "dwelling house" or in a "shed, yard, or inclosure connected with any dwelling house"—is

forbidden. But that is not what the statute says, and the non-statutory sources that plaintiffs cite do not support their assertion that applying for a permit to distill anywhere "at home" would have been futile.

The district court independently erred by invalidating the statutory restrictions on placing a still "on board any vessel or boat," "on premises where beer or wine is made or produced, or liquors of any description are retailed," or "on premises where any other business is carried on." 26 U.S.C. § 5178(a)(1)(B). Plaintiffs lack standing to challenge those portions of the statute because they have never suggested, much less established, that they seek to distill in any of these types of locations. The district court therefore lacked subject-matter jurisdiction to invalidate those statutory restrictions.

**II.** The challenged statutory provisions are a necessary and proper exercise of Congress's tax power. Congress determined that restricting where stills may be located helps protect the government revenue that comes from the excise tax on distilled spirits. This concern is reflected in the structure of 26 U.S.C. § 5178, and the location restriction is just one part of the "elaborate system [that] has been set up by legislation and regulations thereunder to protect the revenue on distilled spirits," *United States v. Goldberg*, 225 F.2d 180, 187 (8th Cir. 1955).

On the merits, plaintiffs' arguments rely on the mistaken premise that Congress could not have acted rationally unless it expanded the number of permissible still locations in the hopes of collecting additional spirits taxes. But that premise is plainly incorrect. The restriction does not prevent plaintiffs from distilling spirits as a general

matter or from distilling spirits "at home." Nor does it follow that a provision with the side effect of limiting the number of people who are likely to engage in the taxable activity must lack a sufficient nexus to the tax itself. As the Supreme Court has made clear, the necessary and proper analysis simply asks "whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power." *United States v. Comstock*, 560 U.S. 126, 134 (2010). Plaintiffs provide no reason to conclude that the challenged provisions fail that test.

## ARGUMENT

### I.   Plaintiffs Lack Standing.

Plaintiffs lack standing to challenge the statutory provisions limiting the production of distilled spirits in certain locations. The district court therefore rightly dismissed Rick Morris, Thomas O. Cowdrey III, and John Prince III for lack of standing. It erred in failing to dismiss Scott McNutt and the Hobby Distillers Association (Association) on that basis as well.

**A.** In the pre-enforcement context, a plaintiff must show "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

McNutt fails to satisfy these requirements. McNutt has not established a serious intention to distill beverage spirits in a prohibited location. He states only that that he

"would like to distill at home for beverage purposes." ROA.112. But the statute does not apply to any location that might loosely be described as "at home." McNutt never states that he would like to distill in a "dwelling house" or in a "shed, yard, or inclosure connected with any dwelling house." 26 U.S.C. § 5178(a)(1)(B). Indeed, the record supports the contrary inference: When McNutt has distilled fuel alcohol, he has done so in a shed located 261 feet away from his house. ROA.112; *see also* ROA.166 (explaining that fuel distilling and beverage distilling are generally subject to the same premises restrictions). That shed is not a prohibited location because it is neither in a dwelling house nor connected with one, and McNutt could distill beverage alcohol there without violating the challenged provisions, assuming that he "follow[ed] the other requirements" for engaging in distilling, as he avers he would, ROA.112. In any event, a "'some day' intention[]—without any description of concrete plans, or indeed even any specification of *when* the some day will be—[does] not support a finding of the 'actual or imminent' injury that our cases require." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992); *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018) (explaining that the plaintiff's "desire to *solicit* funds . . . [did] not establish an intent to accept funds above the proscribed limit" and that, "by choosing to not solicit funds," the plaintiff had "not take[n] steps towards reaching or exceeding the aggregate limit of the kind that would demonstrate a serious intent to violate the statute").

McNutt also lacks standing because he has not established a credible threat of prosecution under the challenged provisions. As explained, he has not expressed an

intention to engage in conduct that would trigger an enforcement action. *Supra* pp. 3-4. Nor has he been threatened with prosecution. In concluding otherwise, the district court relied on McNutt's receipt of a generic notice from the Alcohol and Tobacco Tax and Trade Bureau (Bureau or TTB) in 2014. ROA.581-82. But that notice simply advised the recipient that he or she must obtain the necessary permits and bonds before distilling alcohol and reminded him or her that the "[u]nlawful production of distilled spirits is a criminal offense." ROA.216. It did not mention the restriction on locating a distilled spirits plant in a dwelling house or shed, yard, or inclosure connected with a dwelling house, nor arise from any suspicion that the recipient was engaging in illegal conduct. ROA.216, 537. Unsurprisingly, therefore, the Bureau took no other action against McNutt in connection with the notice. ROA.538. A few months after receiving the notice, McNutt applied for, and was granted, a permit to distill fuel alcohol. ROA.540.

Morris, Cowdrey, and Prince lack standing for many of the same reasons. For one, they have not established a serious intention to engage in a course of conduct proscribed by the challenged provisions. Morris, for example, states that he would "distill Bourbon at [his] home" and clarifies that he has "ample space in [his] backyard and side yard to distill Bourbon [at] a safe distance from [his] house and other houses." ROA.110. Cowdrey states that he "own[s] a still that is in [his] garage," which "is near [his] house and on [his] property." ROA.116. Only Prince even mentions a prohibited location, stating that he has "space on [his] property that [he] could, hypothetically, use

to distill alcohol. That space is in [his] four-wall garage that is attached to [his] house."
ROA.114. These statements do not establish that plaintiffs have an intention, much less
a serious intention to violate the challenged provisions. *See Lujan*, 504 U.S. at 564;
*Zimmerman*, 881 F.3d at 389. Moreover, the district court rightly concluded that Morris,
Cowdrey, and Prince had not established a credible threat of prosecution under the
challenged provisions—they had not even received the generic notice that McNutt had
received. *See* ROA.582.

Because none of the members of the Association has established standing to sue
in his own right, the Association lacks standing as well. *See Hunt v. Washington State Apple
Advert. Comm'n*, 432 U.S. 333, 343 (1977) (describing the requirements of associational
standing).

**B.** Plaintiffs' arguments to the contrary are unavailing.

**1.** In attempting to show that they intend to engage in a course of conduct
proscribed by the challenged provisions, plaintiffs argue that the challenged provisions
prevent them from obtaining distilling permits and that applying for such permits would
have been futile. Br. 28-37. Plaintiffs' theory is premised on a fundamental error:
Throughout their brief, plaintiffs suggest that distilling anywhere "at home"—even if
not in a "dwelling house" or in a "shed, yard, or inclosure connected with any dwelling
house"—is forbidden. But that is not what the statute says, and plaintiffs make no real
attempt to argue otherwise. *See* Br. 36 (arguing only that the statute confirms that the
agency will deny permits to individuals seeking to engage in prohibited conduct).

Instead, plaintiffs rely on a handful of non-statutory sources to support their assertion that applying for a permit to distill anywhere "at home" would have been futile. But these sources do not—and could not—countermand the clear statutory text.

Plaintiffs rely heavily on an informal phone call between their counsel and a representative at the Bureau call center to show that it would have been futile for any of them to apply for distilling permits. *See* Br. 33-35. But the district court rightly did not rely on that evidence, which does not support plaintiffs' misreading of the statutory provisions. In that phone call, plaintiffs' counsel informed the call center representative that his "clients [were] interested in getting a permit to distill alcohol at home," and asked the staff member whether that was "something that TTB would consider." *See* ROA.517. The call center representative responded that the Bureau would consider permit applications "but not at a home." *See* ROA.517. He continued: "Not in a residence. It's illegal to distill spirits at a residence." *See* ROA.517. Plaintiffs' counsel responded that he understood and asked, "So a permit request for distilling at home would not be something that TTB would consider." *See* ROA.517. To which the call center representative said, "They would not. It's against the law." *See* ROA.517. Plaintiffs' counsel then asked, "Do you allow alcohol to be distilled for fuel purposes at home?" *See* ROA.517. The call center representative responded, "I believe, like, an alcohol fuel plant permit can be issued, but it has to be—I want to say it has to be in a rural area. It can't be, like, in a residential area." *See* ROA.517. And when plaintiffs' counsel purported to restate that response by saying that "you guys might consider a

permit for the manufacture of fuel alcohol, but you won't consider a permit for the manufacture of beverage alcohol," the call center representative replied, "Correct." *See* ROA.517.

This phone call does not support plaintiffs' assertion of injury. Impromptu and tentative statements from a call center representative in response to vague hypotheticals plainly do not convey official agency guidance regarding the scope of a particular statutory provision or a determination regarding the application of that provision to a specific set of facts. The phone call does not, and cannot, show that the statutory provisions in question prevent plaintiffs from distilling beverage alcohol on their residential property as a whole. As a result, it does not assist plaintiffs in establishing standing. *See Heckler v. Community Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 63 (1984) (reaffirming the long-standing principle that an individual may not rely on a government agent's misapprehension of the law).

Nor do regulatory provisions or website excerpts support plaintiffs' assertions of futility. The regulatory statement that "[a] person may not produce distilled spirits at home for personal use" is part of a provision stating that distilled spirits are always subject to tax and may only be produced in conformance with the statutory registration requirements. *See* 27 C.F.R. § 19.51. This is in contrast to beer and wine, which are exempt from taxation if produced for "personal or family use." 26 U.S.C. §§ 5042(a)(2)(A), 5053(e). The Bureau website's statement that, "[w]hile individuals of legal drinking age may produce wine or beer at home for personal or family use, Federal

law strictly prohibits individuals from producing distilled spirits at home," references this distinction as well. Br. 35-36 (quoting TTB, U.S. Dep't of the Treasury, *Home Distilling*, https://perma.cc/N9QA-QPH4). These statements cannot—and do not purport to—change the scope of the statutory location restriction. Indeed, as plaintiffs recognize, both the regulations and the website reference that restriction, noting that, "[u]nder 26 U.S.C. 5178(a)(1)(B), a distilled spirits plant may not be located in a residence or in sheds, yards, or enclosures connected to a residence." TTB, *Home Distilling*, *supra*; *see* 27 C.F.R. § 19.52(a) ("A person who intends to establish a distilled spirits plant may not locate it in any of the following places: (a) In any residence, shed, yard, or enclosure connected to a residence . . . ."). The fact that these statements use the term "residence" instead of "dwelling house" does not expand or contract the plain meaning of the statute, nor render it futile to apply for a permit anywhere else "at home."

Plaintiffs' argument that they have standing because they are the object of the challenged provisions (Br. 16-28) fails for similar reasons. According to plaintiffs, each plaintiff "has the 'serious intention to engage in conduct proscribed by law'" because each declared that "he would distill at home." Br. 17-18. But a vague reference to "home" does not necessarily refer to a prohibited location. *Supra* pp. 4, 6. Plaintiffs now suggest that, when McNutt said he wanted to distill "at home," he meant "in his home." Br. 20. But this belated clarification, not made in district court, does not align with

McNutt's history of distilling fuel alcohol in a shed set apart from his house. *See* ROA.112.

Nor are plaintiffs' plans sufficiently concrete to support standing. Plaintiffs complain that there is nothing more they could do that "would not expose [them] to legal jeopardy." Br. 19. That is plainly not the case. McNutt, for example, could apply at any time for a permit to distill beverage spirits using his fuel still. Applying for a permit so would not expose him to legal jeopardy, even if it were denied. And again, there is no reason to think that it would be, as the fuel still is in a permissible location.

**2.** For similar reasons, plaintiffs have also failed to show that "there exists a credible threat of prosecution" under the challenged provisions, *Susan B. Anthony List*, 573 U.S. at 159. As a preliminary matter, plaintiffs are wrong to suggest that this requirement does not apply to them. *See* Br. 21, 27. Plaintiffs cite *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir.), *as revised* (Oct. 30, 2020)), for the proposition that, in a facial challenge, there is no need to show any likelihood that the statute will be applied to them in particular. Br. 26-27. But *Speech First* and the cases it cites involved restrictions on expressive activity—a special context. 979 F.3d at 335. The district court rightly applied the normal standard to the present case.

Plaintiffs' arguments that there is nevertheless a credible threat of prosecution against them are without substance. As the government has explained, the notice from the Bureau did not threaten prosecution, much less prosecution of a violation of the location restriction. *Supra* p. 5. The same is true of the press release attached to the

10

notice, which stated that a joint operation with Florida state authorities "targeting illegal possession of stills and illegal production of distilled spirits" had resulted in arrests and seizures. ROA.217. The press release made no mention of the location restriction and did not suggest that any of the arrests were for improperly placed stills. ROA.217. And, in fact, the joint operation did not result in any federal charges. ROA.536-37. The phone call between plaintiffs' counsel and the Bureau's call center (Br. 26) does not provide any more of a credible threat—as explained above, tentative answers in response to incomplete hypotheticals provide no meaningful guidance on the scope of the statute or the likelihood of prosecution.

Plaintiffs identify three distilling-related cases as support for the proposition that "the government prosecutes people for the crime of distilling at home." Br. 22. Those cases show no such thing. They all involved the sale of distilled spirits—an activity that plaintiffs have disavowed any intention of conducting. *See* ROA.110, 115-16; *cf.* ROA.113. Moreover, none of the cases involved charges for violating the location restriction. Plaintiffs identify one district court case from 1967, in which the defendants were prosecuted for unlawful possession of a still, failure to be bonded, unauthorized distilling, and unlawful possession of distilled spirits without proper stamps—not for violating the location restriction. *See United States v. LaBerge*, 267 F. Supp. 686, 690 (D. Md. 1967). In addition, they identify one 2018 guilty plea for selling unauthorized and unlabeled distilled spirits and one 2016 indictment (which resulted in a deferred prosecution and dismissal) of a couple who made and sold moonshine out of the

basement of their house for possession of an unregistered still, unauthorized distilling, and failure to be bonded. *See* Br. 22-23; *Perry County Man Pleads Guilty to Selling Moonshine*, Zanesville Times Recorder (Sept. 9, 2018), https://perma.cc/56JB-BZRW; Amy Renee Leiker, *They Sold Moonshine from Their Basement; Now They're in Trouble*, Wichita Eagle (Dec. 7, 2016), https://www.kansas.com/news/local/crime/article119403558.html; Motion to Dismiss & Order, *United States v. Penner*, No. 16-cr-10156 (D. Kan. May 10, 2018), Dkt. Nos. 29-30. Plaintiffs' inability to identify any cases involving the type of conduct at issue here underscores the hypothetical nature of the prosecutions they assertedly fear.

**C.** The district court also erred in invalidating the statutory restrictions on placing a still "on board any vessel or boat," "on premises where beer or wine is made or produced, or liquors of any description are retailed," or "on premises where any other business is carried on" (except where authorized by the Secretary of the Treasury). 26 U.S.C. § 5178(a)(1)(B). As the government explained in its opening brief (at 13-14), plaintiffs have never even suggested that they have a desire to distill on board a vessel or boat, on premises where beer or wine is produced or liquors retailed, or on premises where other business is carried on. *See, e.g.*, ROA.109-17. Plaintiffs' failure to establish standing is particularly stark with regard to these provisions.

Plaintiffs' only response is that their complaint's prayer for relief asked the court to enjoin 26 U.S.C. § 5178(a)(1)(B), full stop, rather than a subset of that provision. Br. 71 (citing ROA.21). But even accepting that reading, plaintiffs do not have standing to

challenge provisions that do not bear on their alleged conduct. In any event, the complaint purports to challenge only the "prohibition on at-home distilling." ROA.14 (capitalization altered); *accord* ROA.12 (stating that plaintiffs "seek to distill alcohol at home" and seek relief from "the federal statutes prohibiting such distilling"); ROA.18-21 (challenging the "at-home distilling ban"). Plaintiffs' motion for a preliminary injunction echoes that focus, asking the court "to prevent the enforcement of the federal ban on at-home distilling." ROA.76; *accord, e.g.*, ROA.83 ("Plaintiffs move this Court to preliminarily enjoin enforcement of the federal at-home distilling prohibition in 26 U.S.C. § 5601(6) and 26 U.S.C. § 5178(a)(1)(B) . . . ."); *see also* ROA.79 (table of contents to motion). Like the complaint, the preliminary injunction motion did not argue that Congress lacks the authority to restrict distilling on board a vessel or boat, on premises where beer or wine is produced or liquors retailed, or on premises where other business is carried on.

Plaintiffs suggest that the government has forfeited any objection to the scope of the district court's relief by failing to raise the issue in district court. Br. 71. But plaintiffs' filings did not put the government on notice that plaintiffs sought to enjoin the statutory restrictions on distilling on board a vessel or boat, on premises where beer or wine is produced or liquors retailed, or on premises where other business is carried on. Nor was it reasonable to anticipate that the district court would declare unconstitutional or enjoin portions of the statute that had barely been mentioned by plaintiffs, much less overtly challenged. Nor could the government forfeit this

objection, as the court lacked subject-matter jurisdiction to enjoin portions of the statute which plaintiffs lack standing to challenge. *See National Football League Players Ass'n v. National Football League*, 874 F.3d 222, 225 (5th Cir. 2017) (per curiam) ("Questions of subject matter jurisdiction cannot be forfeited or waived . . . .").

## II.     The Challenged Statutory Provisions Are a Necessary and Proper Exercise of Congress's Tax Power.

**A.** As the government explained in its opening brief, the location restriction is necessary and proper to effectuate Congress's tax power. The Necessary and Proper Clause "give[s] Congress great latitude in exercising its powers" by "vest[ing] Congress with authority to enact provisions 'incidental to the [enumerated] power, and conducive to its beneficial exercise.'" *National Fed'n of Indep. Bus. v. Sebelius* (*NFIB*), 567 U.S. 519, 537, 559 (2012) (third alteration in original) (quoting *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 418 (1819)). A law is necessary and proper if it is "convenient" or "useful" for carrying an enumerated power into execution. *United States v. Comstock*, 560 U.S. 126, 133-34 (2010) (quotation marks omitted); *McCulloch*, 17 U.S. (4 Wheat.) at 413. Congress thus acts within the scope of its necessary and proper authority if the "means [chosen] . . . [are] rationally related to the implementation of a constitutionally enumerated power" and are not otherwise prohibited by the Constitution. *Comstock*, 560 U.S. at 134.

Regulating the location of distilled spirits plants facilitates the government's ability to inspect distilling operations and guard against efforts to elude federal taxes. A distiller can more easily conceal a spirit's strength (and thus avoid the proper tax rate)—

or conceal a distilling operation altogether—if his still is in his house or connected with it. Unsurprisingly, therefore, the location restriction ties regulation of the "premises" of a still to the need to avert "jeopard[y]" to "the revenue," by expressly cross-referencing subsection (b), which in turn permits the Secretary to "authorize the carrying on of such other businesses . . . on premises of distilled spirits plants, as he finds will not jeopardize the revenue." 26 U.S.C. § 5178(b); *see also id.* § 5178(a)(1)(B) (forbidding locating a distilled spirits plant "on premises where any other business is carried on (except when authorized under subsection (b))"). The two subparagraphs that bookend the location restriction reinforce this conclusion by further tethering regulation of a still's "location" to "afford[ing] adequate security to the revenue." *Id.* § 5178(a)(1)(A) ("The Secretary shall prescribe such regulations relating to the location, construction, arrangement, and protection of distilled spirits plants as he deems necessary to facilitate inspection and afford adequate security to the revenue."); *id.* § 5178(a)(1)(C) ("[T]he Secretary may approve the location, construction, arrangement, and method of operation of any establishment which was qualified to operate on the date preceding the effective date of this section if he deems that such location, construction, arrangement, and method of operation will afford adequate security to the revenue.").

Indeed, the location restriction is just one part of the "elaborate system [that] has been set up by legislation and regulations thereunder to protect the revenue on distilled spirits." *United States v. Goldberg*, 225 F.2d 180, 187 (8th Cir. 1955). In addition to the location restriction, Congress has authorized the Secretary to require "such fastenings,

locks, and seals to be part of any of the stills, tubs, pipes, tanks, and other equipment, as he may deem necessary to facilitate inspection and afford adequate security to the revenue," 26 U.S.C. § 5178(a)(2)(C)(ii); required that distilling systems be "designed and constructed . . . as to prevent the unauthorized removal of distilled spirits before their production gauge," *id.* § 5178(a)(2)(B); prohibited distilling materials from being produced outside of the bonded premises of a distilled spirits plant or removed from those premises before being distilled, except as authorized by the Secretary, *id.* § 5222(a)(1); and authorized internal revenue officers to enter and examine a distilled spirits plant at any time, day or night, and take inventory as necessary, *id.* § 5203(b).

**B. 1.** Plaintiffs argue that the location restriction is not a proper exercise of the tax power because it "*criminalizes* taxable activity and *prevents* Plaintiffs from actually paying the tax on distilled spirits." Br. 42. Not so. As explained above, plaintiffs' attempts to characterize the location restriction as a flat "ban" are inconsistent with the plain text of the statute. *Supra* p. 6. The location restriction does not ban plaintiffs from distilling spirits full stop. Nor does it ban them from distilling spirits at home. It simply limits where on an individual's property he may place his still. *Id.* The location restriction thus does not "eviscerate[] a category of taxable activity." Br. 43. It simply regulates the manner in which plaintiffs go about that taxable activity, as do the numerous other statutory provisions governing distilling.

For similar reasons, the location restriction does not run afoul of the Supreme Court's warning that a tax must "leave[] an individual with a lawful choice to do or not

do a certain act, so long as he is willing to pay a tax levied on that choice." Br. 49 (quoting *NFIB*, 567 U.S. at 574). Plaintiffs do not contend that the tax itself removes their choice to distill spirits—on the contrary, they state that they plan to pay the tax if they distill spirits in the future. ROA.109-17. Plaintiffs instead contend that the location restriction removes their choice to distill at home and therefore their "choice to pay the tax." Br. 49. But again, plaintiffs could choose to distill at home provided they do not do so in a dwelling house or in any shed, yard, or inclosure connected to a dwelling house. 26 U.S.C. § 5178(a)(1)(B). And they could also distill in any other permissible location. The fact that a statutory restriction removes some element of an individual's choice as to the manner in which they engage in a taxable activity is not a basis for invalidation. Nor do plaintiffs carry their logic to its conclusion. The statutory bond requirements, for example, could be framed as "prohibit[ing] the ability of the Plaintiffs to distill" outside bonded premises. *See* Br. 49. But plaintiffs agree that the bond requirements are permissible. *See* Br. 57. So too is the location restriction.

Plaintiffs' fears regarding the implications of upholding the location restriction (Br. 46-48) do not advance their case. Plaintiffs express concern, for example, that the government could justify any ban on "in-home activity" by imposing a tax on that activity and then banning the activity on the basis that an individual might conceal it and evade the tax. Br. 46-47. They similarly assert that "the hypothetical existence of a future tax coupled with discretionary authority to waive it" could empower the government to "ban any activity it wishes." Br. 48. These scenarios provide no basis for

invalidating the location restriction at issue here, nor does it follow from the government's position in this case that such maneuvers would be permissible. Congress has not paired its spirits tax with a blanket ban on distilling spirits nor attempted to use a hypothetical future tax as pretext for banning a given activity. Instead, Congress has simply imposed a spirits tax and, over time, developed a number of requirements to ensure that, when spirits are distilled, the tax is paid. Plaintiffs' parade of horribles does not render Congress's actions impermissible.

Nor are plaintiffs correct to assert that Congress can never use its necessary and proper power to address future events. *See* Br. 44 (relying on *NFIB*'s discussion of Congress's commerce power). In *NFIB*, the Court explained that Congress can anticipate the effects of an economic activity on commerce but cannot "anticipate that activity itself in order to regulate individuals not currently engaged in commerce." 567 U.S. at 557. In other words, Congress cannot rest its commerce power on the basis of predicted future economic activity. Plaintiffs do not explain why this logic would extend to the scope of Congress's necessary and proper power or its tax power. But even assuming it does, the location restriction only applies to individuals engaged in the taxable activity—distilling spirits. It does not extend further on the basis that individuals with no current intention to distill spirits might do so in the future. Moreover, plaintiffs' objection proves too much. Plaintiffs agree that other revenue-protecting provisions— the requirement of locks and fastenings, for example, and inspections—are permissible (Br. 56-59). But those provisions also aim to reduce the risk that distillers will evade the

spirits tax. And it would be odd indeed if, as plaintiffs suggest, Congress could not consider the risk of future tax evasion in exercising its authority to legislate. *See NFIB*, 567 U.S. at 567 ("[T]axes that seek to influence conduct are nothing new.").

Plaintiffs suggest in passing that the location restriction poses a federalism problem. *See* Br. 46 ("[T]he government's prohibition of an activity offends core state police powers . . . ."); Br. 49 ("It is the states, not the federal government, that should decide if distilling spirits should be banned at home"). Even accepting plaintiffs' characterization of the location restriction, the federal government has long played an active role in the taxation and regulation of distilling operations. There is no basis to conclude that the location restriction offends any principles of federalism. Nor do plaintiffs explain why the location restriction would offend those principles any more than any of the other distilling provisions.

**2.** Plaintiffs further argue that the location restriction is not necessary because it does not bear a sufficient relationship to the tax on distilled spirits. Br. 50-62. Specifically, plaintiffs argue that "[p]rohibiting a person from incurring a tax liability is essentially unrelated to collecting taxes." Br. 51. According to plaintiffs, the location restriction is categorically different from all other distilling regulations "because it criminalizes a taxable activity and actually prevents Plaintiffs from distilling and paying the resulting tax." Br. 56. As a preliminary matter, it does not follow that a provision with the side effect of limiting the number of people who are likely to engage in the taxable activity must lack a sufficient nexus to the tax itself. Any type of distilling

regulation could in theory deter an individual from distilling spirits and therefore from paying the resulting tax. *See NFIB*, 567 U.S. at 567. In any event, plaintiffs' argument relies on the same faulty logic addressed above. The location restriction does not prohibit them from incurring tax liability because they could choose to do their distilling in a non-prohibited location, including "at home." Plaintiffs' argument also ignores the fact that the location restriction applies to all potential distillers, not just plaintiffs.

The Supreme Court has not "rejected the notion that a prohibition similar to the Home-Distilling Ban was plainly adapted under the Necessary and Proper Clause." Br. 53 (citing *United States v. Dewitt*, 76 U.S. 41 (1869)). In *Dewitt*, the Court struck down a prohibition on the sale of "oil made from petroleum for illuminating purposes." 76 U.S. at 42. Critically, there was no tax on such oils. *Id.* at 44. The government had argued that the prohibition nevertheless "was in aid and support of the internal revenue tax imposed on other illuminating oils." *Id.* at 44. In so arguing, the government analogized to the statutes regulating distilling. *Id.* The Court rejected this argument. Unlike the distilling provisions, it reasoned—which were "restricted to the very articles which are the subject of taxation, and are plainly adapted to secure the collection of the tax imposed"—the restriction on petroleum illuminating oil was not so limited. *Id.* The consequences to tax revenue were therefore too remote to support the challenged statute. *Id.* Far from supporting plaintiffs' position, *Dewitt* only underscores that there is a close connection between the location restriction and the spirits tax.

**3.** Finally, plaintiffs reprise their assertion that there is an insufficient causal connection between the location restriction and the tax power, arguing that the location restriction is not "rationally related to the implementation of" the tax power. Br. 63; *see also* Br. 64-71. This argument fails for many of the reasons discussed above. *Supra* pp. 14-16, 19-20.

Plaintiffs further suggest that, in establishing this causal connection, the government should have "provide[d] empirical evidence" that leads an "objective observer to conclude . . . that the exercise of the enumerated power would be compromised if those means were not employed." Br. 64. They urge that the government was required to submit "facts that would demonstrate to the district court that home distilling was easier to conceal than other locations," Br. 70, citing for support Justice Kennedy's concurrence in *Comstock*, 560 U.S. at 150 (Kennedy, J., concurring in the judgment). The *Comstock* majority had stated without qualification that, "in determining whether the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, we look to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power." *Id.* at 134 (majority opinion) (upholding the challenged law as necessary and proper to effectuate Congress's commerce power). Justice Kennedy responded with his own view of the scope of that test, suggesting that "under the Necessary and Proper Clause, application of a 'rational basis' test should be at least as exacting as it has been in the Commerce Clause cases, if not more so," and

that "[t]he rational basis referred to in the Commerce Clause context is a demonstrated link in fact, based on empirical demonstration." *Id.* at 151-52 (Kennedy, J., concurring in the judgment). There is no requirement to provide empirical evidence in defending facial challenges to Commerce Clause enactments, nor did Justice Kennedy's concurrence create such a requirement in the commerce or tax contexts or in the necessary and proper context.

Plaintiffs also propose various reasons why they believe that the location restriction is "irrational." Br. 68; *see also* Br. 65-67. They express confusion, for example, as to why fuel distilling is sometimes subject to different requirements than beverage distilling. Br. 66-67. Distilled beverage spirits are always subject to the excise tax, whereas distilled fuel alcohol are not subject to taxation when withdrawn from the distilling premises in compliance with federal statute and regulation. *See* 26 U.S.C. § 5214(a)(12). That Congress did not enact identical provisions for each product does not cast doubt on the rationality of Congress's requirements. Rather, "the relevant inquiry is simply 'whether the means chosen are "reasonably adapted" to the attainment of a legitimate end under the commerce power' or under other powers that the Constitution grants Congress the authority to implement." *Comstock*, 560 U.S. at 135 (first quoting *Gonzales v. Raich*, 545 U.S. 1, 37 (2005) (Scalia, J., concurring in the judgment), and then quoting *United States v. Darby*, 312 U.S. 100, 121 (1941)).

Plaintiffs also urge that the act of obtaining a permit publicizes the existence of the distilling operation and that the location restriction is unnecessary because permit-

holders are already required to make their premises available for inspection. Br. 65-66 (citing 26 U.S.C. § 5203(a)). But Congress chose to impose a suite of requirements on distillers rather than relying on self-identification and self-reporting. Plaintiffs' invitation for the Court to substitute its own judgment for that of Congress should be rejected. As the *Comstock* Court warned, "the Constitution 'addresse[s]' the 'choice of means' 'primarily . . . to the judgment of Congress." 560 U.S. at 135 (alterations in original) (quoting *Burroughs v. United States*, 290 U.S. 534, 547-48 (1934)). "If it can be seen that the means adopted are really calculated to attain the end," then "the degree of their necessity, the extent to which they conduce to the end, the closeness of the relationship between the means adopted and the end to be attained, are matters for congressional determination alone." *Id.* (quoting *Burroughs*, 290 U.S. at 547-48).

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed as to plaintiffs McNutt and the Association and affirmed as to the remaining plaintiffs.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

LEIGHA SIMONTON
*United States Attorney*

MARK. B. STERN

*s/ Sarah Clark Griffin*
SARAH CLARK GRIFFIN
*Attorneys, Appellate Staff*
*Civil Division, Room 7216*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-8727*
*sarah.c.griffin@usdoj.gov*

JANUARY 2025

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users.

*s/ Sarah Clark Griffin*
Sarah Clark Griffin

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,202 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.


*s/ Sarah Clark Griffin*
Sarah Clark Griffin