No. 24-10760

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

SCOTT MCNUTT, *Plaintiff-Appellee*,

RICK MORRIS, HOBBY DISTILLERS ASSOCIATION, THOMAS O.
COWDREY III, JOHN PRINCE III,
*Plaintiffs-Appellees/Cross-Appellants*,

v.

US DEPARTMENT OF JUSTICE,
ALCOHOL AND TOBACCO TAX AND TRADE BUREAU,
a Bureau of the U.S. Department of the Treasury,
*Defendants-Appellants/Cross-Appellees.*

On Appeal from the United States District Court for the Northern
District of Texas, Fort Worth Division Case No. 4:23-cv-1221

**CROSS-APPELLANTS' REPLY BRIEF**

Andrew M. Grossman
Kristin Shapiro
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W.
Suite 1100
Washington, D.C. 20036
(202) 861-1697
agrossman@bakerlaw.com

Devin Watkins
    *Counsel of Record*
COMPETITIVE ENTERPRISE INSTITUTE
1310 L Street NW, 7th Floor
Washington, DC 20005
(202) 331-1010
devin.watkins@cei.org

*Additional Counsel Listed on Inside Cover*

Dan Greenberg
Box 3472
Little Rock, AR 72203
dngrnbrg@gmail.com

Robert Alt
THE BUCKEYE INSTITUTE
88 East Broad Street
Suite 1300
Columbus, OH 43215
(614) 224-4422
robert@buckeyeinstitute.org

*Counsel for Plaintiffs-Appellees / Cross-Appellants*

_____

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................... iii

TABLE OF AUTHORITIES.................................................................iv

SUMMARY OF ARGUMENT ................................................................ 1

ARGUMENT ......................................................................................... 2

I.    The Government's Arguments Concerning Lack of Standing Are
      Meritless ..................................................................................... 2

    A. The Government's Acontextual Definition of "Home" Does Not
       Defeat Cross-Appellant's Standing ................................................ 3

    B. The Government Expressly Threatened Criminal and Civil
       Liability ................................................................................... 12

    C. Plaintiffs Have Standing Because the Home-Distilling Ban
       Prohibits Acquiring Permits......................................................... 17

CONCLUSION ...................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n,*
  70 F.4th 914 (5th Cir. 2023) .................................................. 16

*Ellison v. Connor*, 153 F.3d 247 (5th Cir. 1998) ..................................... 19

*Joint Heirs Fellowship Church v. Akin,*
  629 F. App'x 627 (5th Cir. 2015) ........................................ 16

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ...................... 15

*United States v. LaBerge*, 267 F. Supp. 686 (D. Md. 1967) ................... 16

*United States v. Rodriguez*, 630 F.3d 377 (5th Cir. 2011) ..................... 10

## Statutes

26 U.S.C § 5601 ...................................................................... 9

26 U.S.C. § 5601(a)(6) ................................................... 3, 10, 18

26 U.S.C. §5178(a)(1)(B) .......................................................... 3

## Other Authorities

Joseph Worcester, A Dictionary of the English Language (1860) ............ 6

Merriam-Webster.com Dictionary, Merriam-Webster (last accessed
  January 14, 2025), https://www.merriam-
  webster.com/dictionary/home ............................................... 5

Robert Gordon Latham, A Dictionary of the English Language (1835)
  (defining "Dwelling House" as "The house in which one lives.") ........... 6

Trade Investigations Division, TTB (last accessed January 17, 2025),
  https://www.ttb.gov/offices/trade-investigations-division ................. 14

iv

TTB, Home Distilling (last accessed January 15, 2025),
    https://www.ttb.gov/distilled-spirits/penalties-for-illegal-distilling ...... 8

**Rules**

27 C.F.R. § 19.51 ....................................................................................... 8

## SUMMARY OF ARGUMENT

The Defendants-Appellants/Cross-Appellees (the government) now claim that Plaintiffs lack standing based on the brand-new theory that when Plaintiffs declared their intention to distill "at home," they meant something other than where they live. The government waited to broach this brand-new theory until after the factual record in the lower court was closed—indeed, until after the lower court had entered judgment. But "home" means "dwelling house," a term used in the statute, and that is what each of the Plaintiffs obviously meant. Furthermore, the government has previously recognized "at home" to convey the conduct that is prohibited by the statute.

The government also claims that the letter it sent—titled "notice of potential civil and criminal liability"—did not threaten prosecution for at-home distilling. Notably, that letter then described liability of "$500,000 and/or imprisonment for not more than 5 years, and [the possibility of] forfeiture of your real and personal property" if its recipient ever participated in any "unlawful production of distilled spirits." ROA.216. That description cannot be reconciled with the government's claim that no threat ever occurred. One kind of unlawful

production of distilled spirits is their production at an unlawful location, such as a home. The absence of prosecution might show that the government's letter successfully coerced the conduct of others; it certainly doesn't show that the government's letter wasn't a threat.

The government further claims that a permit application would not have been futile, even while surrounded by an immense collection of evidence to the contrary. This evidence includes repeated direct statements by the government, over the phone and on the agency's website, that it would not consider such a permit request; the agency's regulations prohibiting such a permit; and a direct statutory prohibition on such a permit. Plaintiffs just need to make a substantial showing of futility here; they have certainly shown it.

## ARGUMENT

### I.   The Government's Arguments Concerning Lack of Standing Are Meritless

Plaintiffs Morris, Cowdrey, and Prince are plainly injured by statutory provisions that threaten them with criminal penalties for conduct that they are ready, willing, able, and eager to undertake. The government's newfound confusion over what they meant by the language "at home" when they brought a federal lawsuit to challenge a

prohibition on distilling in or adjacent to a "dwelling house" cannot be taken seriously. Nor can the government's attempt to minimize its repeated threats of "Federal charges for serious offenses…and consequences including…up to 5 years in prison" for "producing distilled spirits at home"—to quote the Alcohol and Tobacco Tax and Trade Bureau's website as it appears today. And the government never suggests that any Plaintiff could actually obtain a permit—the statutory text clearly bars it—even as it denies that this inability provides an independent basis for standing. Ultimately, the government's tilting at sheds is nothing more than a desperate attempt to salvage a statutory prohibition that fails on the merits.[1]

## A. The Government's Acontextual Definition of "Home" Does Not Defeat Cross-Appellant's Standing

The statute at issue prohibits distilling in any dwelling house, as well as any shed, yard, or enclosure connected with any dwelling house. 26 U.S.C. §§ 5601(a)(6) , 5178(a)(1)(B). The government claims that Plaintiffs lack standing: it argues that when Plaintiffs declared under penalty of perjury that they wanted to distill at home, by "at home" the

---

[1] As discussed in Plaintiffs' opening brief, the government forfeited any objection to the scope of the remedy as to all Plaintiffs. *See* Plaintiffs Br. § III.

Plaintiffs did not mean to distill at their "dwelling house." Gov. Resp. Br. 4. Similarly, the government's claim that these statutory provisions do not "ban Plaintiffs from distilling spirits at home," Gov. Resp. Br. 16, requires an acontextual view of the meaning of "at home." In the district court before the close of the evidentiary record, the government demonstrated that it understood what Plaintiffs meant by "at home." Only now, apparently, has the government's understanding shifted. Indeed, large portions of the government's argument rest on this new interpretation, including the sole opposition to standing as the direct object of the challenged regulation.

The right way to interpret Plaintiffs' words depends in large part on the context in which they were used. Plaintiffs brought this lawsuit because they seek to distill in the locations the statute prohibits—not some other location. Each of the Plaintiffs' declarations makes clear, in context, that the Plaintiffs equated the word they used, "home," with the statutory term "dwelling house." ROA.109-17. Likewise, each declaration makes clear that they believed the conduct "at home" that they displayed an interest in was illegal under the statute. *Id.* There is

zero evidence that, in using the language "at home," Plaintiffs were referring to anything other than their homes.

The government never provides a serious account of what it takes the word "home" to mean, nor does it provide an accurate account of how the Plaintiffs use the term. Gov. Resp. Br. 1 (alleging that Plaintiffs viewed the zone of prohibited distillery as "anywhere that might loosely be described as 'at home' "). Plaintiffs understood the word "home" as entirely conventional and non-mysterious, but the government misconstrues Plaintiffs' understanding. When Plaintiffs said they wished to distill "at home," Plaintiffs understood the word "home" as a dwelling house, including such a house's garage. People routinely plan to—or announce that they intend to—conduct certain activities at home, and a home's boundaries in any such case are easily determinable from context. This is what the word "home" means in ordinary usage. *See, e.g.*, Merriam-Webster.com Dictionary, Merriam-Webster (last accessed January 30, 2025), https://www.merriam-webster.com/dictionary/home (defining home as "one's place of residence: domicile").

"Home," as used by Plaintiffs, is simply a more modern way of saying "dwelling house." When the words "dwelling house" were first included in the relevant statutes, contemporaneous dictionaries confirm that sense of the term. Joseph Worcester, A Dictionary of the English Language (1860) (defining "dwelling house" as "A house built for the purpose of being dwelt in or inhabited; a house in which one resides."); Robert Gordon Latham, A Dictionary of the English Language (1835) (defining "Dwelling House" as "The house in which one lives.").

The phrase "at home," as used by Plaintiffs, includes Plaintiffs' dwelling house as well as any connected shed, yard, or enclosure. This is the well-understood plain meaning of the phrase. Indeed, the meaning is so plain that even the government understood it, until its appellate counsel came up with a new argument premised on misunderstanding the obvious.

The government understood Plaintiff's meaning in the lower court. Notably, in the lower court the government never argued that Plaintiffs lacked standing because the word "home" meant anything besides "dwelling house"; furthermore, the government never argued that "at home" might extend anywhere beyond Plaintiffs' dwelling houses and

any connected shed, yard, or enclosure. The government never made such claims; that is because it understood the ordinary meaning of Plaintiffs' words. Any reasonable reader of the government's district court brief, in the paragraph that begins "Here, Plaintiffs do not allege…," ROA.161, would concur that the government understood this ordinary meaning: indeed, the Plaintiffs used the phrase "at home" to mean the conduct prohibited by the statute. In district court, the government merely argued that Plaintiffs took insufficient steps to realize their goal, although it appears that the government no longer disputes this, except that it claims that a permit request is required. (See Section I.C below, which explains why such a permit request would be futile and therefore is unnecessary.)

In short, everyone involved knows that the meaning of "at home" is sufficiently unambiguous. The government's own agent had no difficulty understanding that "home" meant "dwelling house" and "at home" included any connected shed, yard, or enclosure. ROA.517 (recorded phone call). There is no other reason for the government's agent to describe distilling "at home" as necessarily illegal—or to explain that a permit for such an activity could not be considered—

unless that agent, like the Plaintiffs, thought the statute prohibited distilling "at home."

Even the Defendant agency, the U.S. Alcohol and Tobacco Tax and Trade Bureau (TTB), agrees in practice that a "home" is just the same as a "dwelling house"—and that "at home" is just the same as a dwelling house and its connected shed, yard, or enclosure—as a matter of policy. In 2011, the TTB issued a regulation, still in force today, that interprets one of the statutes at issue to mean "[a] person may not produce distilled spirits *at home* for personal use." 27 C.F.R. § 19.51 (which cites as its basis, among others, 26 U.S.C § 5601—including the criminal prohibition on distilling in a dwelling house or connected shed, yard, or enclosure) (emphasis added). The TTB's website also states: "While individuals of legal drinking age may produce wine or beer *at home* for personal or family use, Federal law strictly prohibits individuals from producing distilled spirits *at home*." ROA.14; TTB, Home Distilling (last accessed January 30, 2025), https://www.ttb.gov/distilled-spirits/penalties-for-illegal-distilling (emphasis added). The TTB interprets the phrase "at home" in just the same way every reasonable person does—by examining the context

where the phrase occurs. Here, it pertains to a dwelling house and its connected shed, yard, or enclosure. To state the obvious, that's Plaintiffs' interpretation too.

The government argues that TTB's regulations or statements purport to "change the scope of the statutory location restriction." Gov. Resp. Br. 9. That isn't just wrong: it's irrelevant. What those statements demonstrate is that even the TTB recognizes that the phrases "at home" (used by Plaintiffs) or "residence" are modern synonyms of "dwelling house," and that "at home" refers to the places prohibited by the statute.

The government even concedes that Plaintiff Prince asserts that he wishes to distill at a location prohibited by the statute. Gov. Resp. Br. 5. Why doesn't that qualify for standing? The government doesn't say. Furthermore, the government's argument is without any explanation of why the backyard of Plaintiff Morris' house cannot qualify as a "yard . . . connected with such dwelling house." 26 U.S.C. § 5601(a)(6). All of the Plaintiffs have declared that they want to distill in prohibited locations. ROA.109-17. That makes standing to challenge that criminal prohibition.

In their initial motion, Plaintiffs relied on TTB's longstanding interpretation of the statute that any yard or structure on the property of a dwelling is somehow "connected to" that dwelling. ROA.100. Although Plaintiffs raised TTB's longstanding interpretation of the statute in their initial motion for a preliminary injunction, ROA.100, the government never disputed that interpretation in the lower court. ROA.144-175. However, the government has now repudiated its own lower-court understanding on appeal. It doesn't matter which enclosures are "connected to" Plaintiffs' dwelling: the Plaintiffs have declared their desire to distill in their dwelling or their backyard, ROA.109-117, both of which are expressly prohibited by the statute.

In determining that Plaintiffs have standing, the district court interpreted the meaning of the word "home" in Plaintiffs' declarations as synonymous with "dwelling house." ROA.580-83. Likewise, the district court interpreted Plaintiffs' use of the phrase "at home" to refer to the conduct prohibited by the statute. *Id.* To overturn the district judge's factual interpretation of the words in Plaintiffs' declarations could only be done by a showing of clear error. *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011) ("We review for clear error

the factual findings a district court makes in support of its decision."). The government's brief provides no evidence of such clear error by the district court.

The government contends that because Plaintiffs could want to distill at some other location and Plaintiff McNutt had done so before, Gov. Resp. Br. 4, this somehow shows that all Plaintiffs (even those without such a shed) lack the intention to distill at home. The government's argument here is without any factual or legal basis. Furthermore, that argument is an impressively pointless maneuver: all that will happen if the government wins on this point is that, after the case is remanded back down, Plaintiffs will file new declarations that state the obvious (e.g., "By 'home', I meant 'my house' "); it is unclear what could be accomplished by the government's insistence on this point beyond a delay in appellate resolution.

The government's sole basis for rejecting Cross-Appellant's claim for standing as a direct object of the challenged provision is the government's assertions that " 'home' does not necessarily refer to a prohibited location." Gov. Resp. Br. 9. Given, as shown above, home and dwelling house are synonyms, this is not correct. As this is the sole

opposition to the theory of direct object standing, this provides the Court the easiest route to standing.

In short, the government's word games are inconsistent with the agency's own understanding of the word "home"; its attempts to dismiss the case for lack of standing are meritless.

## B. The Government Expressly Threatened Criminal and Civil Liability

Cross-Appellants have standing due to the agency's threats of prosecution, including the letter sent by the government to McNutt. The government has argued that the letter it sent did not threaten prosecution. The government's argument is based on three propositions: (1) the letter "did not mention the restriction on locating a distilled spirits plant," (2) the letter did not "arise from any suspicion that the recipient was engaging in illegal conduct," and (3) "the Bureau took no other action against McNutt in connection with the notice." The first two propositions are incorrect, and none of the three propositions demonstrate that the letter wasn't a threat. Cross-Appellants are under threat of prosecution because of the statute, the government's website, the agency regulations, and the letter sent to McNutt.

The title alone of the government's letter suggests a threat of prosecution: it is a "notice of potential civil and criminal liability." ROA.216. Any reasonable reader would fear such liability, and the letter is most reasonably read in the context of its title.

The letter then directly threatened "$500,000 and/or imprisonment for not more than 5 years, and [the possibility of] forfeiture of your real and personal property" if its recipient ever participated in any "unlawful production of distilled spirits." ROA.216. Distilling at home, a prohibited premise, is one example of unlawful production of distilled spirits—it is that act, *inter alia,* which the government threatened with criminal prosecution. Therefore, the letter did indeed threaten to prosecute conduct, and one category of threatened conduct was "the restriction on locating a distilled spirits plant." Gov. Resp. Br. 5. Any reasonable reader of that letter would have understood it as threatening prosecution of a participant in the unlawful production of distilled spirits.

Another important contextual fact is that the letter was signed by the Director of the TTB's Trade Investigations Division. ROA.216. The Trade Investigations Division is composed of "investigators who ensure

industry compliance with the laws and regulations TTB administers."
Trade Investigations Division, TTB (last accessed January 30, 2025),
https://www.ttb.gov/offices/trade-investigations-division. If the letter
just consisted of a friendly reminder of statutory requirements, one
might expect such a note to originate from the Assistant Administrator
of Permitting and Taxation or the National Revenue Center, not the
Trade Investigations Division.

The government claims the letter is not a threat because the
"Bureau took no other action against McNutt in connection with the
notice." Gov. Resp. Br. 5. As everyone knows, a bare notice can be, by
itself, a threat. A hooligan who warns "Your money or your life" cannot
seriously argue that an additional action was necessary in order to
transform that statement into a threat. Similarly, Plaintiffs did not
perform the threatened conduct of unlawful production of distilled
spirits after receipt of the threat of prosecution.

The government asserts that the threat letter did not "arise from
any suspicion that the recipient was engaging in illegal conduct." This
is belied by the first line of the letter, which states: "It has come to the
Alcohol and Tobacco Tax and Trade Bureau's (TTB) attention that you

may have purchased a still capable of producing alcohol and/or equipment and materials that may be used in the manufacture of a still." ROA.216. Although purchasing a still designed for distilling alcohol is not a crime, doing so without the required permit would naturally raise suspicions of illegal distilling. As the government notes, it wasn't until "[a] few months after receiving the notice, McNutt applied for, and was granted, a permit to distill fuel alcohol." Gov. Resp. Br. 5. At the time the letter was sent, no request for the permit had been made. Based on this fact, it is hard to argue that the government lacked any suspicion of illegal conduct when the letter was sent.

The letter threatening prosecution for "unlawful production of distilled spirits" is applicable to Cross-Appellants' standing because Cross-Appellants intend to engage in the same conduct that the government threatened to prosecute in the letter. "[P]ast enforcement against the same conduct is good evidence" for a "threat of prosecution." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014). And that is especially so in cases like this one pressing facial challenges, which necessarily raise no question about the "range of enforcement actions" that evidence threatened enforcement. *Braidwood Mgmt., Inc. v. Equal*

*Emp. Opportunity Comm'n*, 70 F.4th 914, 929 (5th Cir. 2023). In other words, because the government is threatening to enforce the statute against anyone, the government must be presumed willing to enforce it against others engaged in similar conduct. *See e.g., Joint Heirs Fellowship Church v. Akin*, 629 F. App'x 627, 631 (5th Cir. 2015). That's why Cross-Appellants have standing for a letter sent to Plaintiff McNutt. Nothing in the letter limits jeopardy to McNutt: the jeopardy could just as easily attach to any and all Cross-Appellants.

The government also provides a further argument against the credible threat of prosecution: the government argues that—of the cases cited by Plaintiff—"none of the cases involved charges for violating the location restriction." Gov. Resp. Br. 11. The government's argument here is poorly grounded. In one of the cases the government rests its argument on, *United States v. LaBerge*, 267 F. Supp. 686 (D. Md. 1967), the court specifically cited the prohibition on at-home distilling in 26 U.S.C. § 5601(a)(6) as "a completely independent reason for finding the [defendant] guilty beyond a reasonable doubt under counts one, two and three." *Id.* at 690. The court found "the fact that the illegal operation took place in 'an inclosure connected to the dwelling' is relevant in

connection with counts one, two and three in this case." *Id.* at 691 n.2. Contrary to the government's description (Br. 12), not only did *LaBerge* "involv[e] the type of conduct at issue here," but in that case the statutory prohibition on home distilling was an independent reason for finding the defendant guilty beyond a reasonable doubt. Moreover, the government arbitrarily dismisses the relevance of other cases on the basis that the defendants there were prosecuted for *unpermitted* home distilling, where the provisions challenged here bar at-home distilling permits.

In short, the government's arguments that the Plaintiffs never faced a credible threat of prosecution are meritless.

## C. Plaintiffs Have Standing Because the Home-Distilling Ban Prohibits Acquiring Permits

All Plaintiffs have standing because the Home-Distilling Ban clearly precludes them from obtaining the permits necessary for them to distill at home. The government does not dispute that inability to obtain a permit supports standing. Nor does the government dispute that if such permit submission were futile, no permit request would be necessary. Despite the explicit statutory prohibition on issuance of the

permit, the government still asserts that it is possible such a permit would be granted in violation of the statute.

First, the government argues that Plaintiffs' arguments are "premised on a fundamental error." That alleged error is that "plaintiffs suggest that distilling anywhere 'at home'—even if not in a 'dwelling house' or in a 'shed, yard, or inclosure connected with any dwelling'—is forbidden." Gov. Resp. Br. 6. The government's accusation is mysterious because Plaintiffs have never made such an argument. As discussed at some length above, Plaintiffs have always understood "at home" to refer to a dwelling house; a connected shed, yard, or inclosure; or some combination of these things.

Second, the government claims that the phone recording Plaintiffs provided—in which the government expressly told Plaintiffs that the agency would not consider their permit request—does "not support plaintiffs' assertion of injury." Gov. Resp. Br. 8. That's because— according to the government—the recording contains nothing more than "[i]mpromptu and tentative statements from a call center representative in response to vague hypotheticals." *Id.*

18

This line of argument is eyebrow-raising. The government has designated an official means of public contact, so that citizens can request assistance in complying with the law; the government employs specialists to provide such assistance and answer questions. In the case at hand, the government's designated subject-matter expert clearly and unequivocally stated, three times, that the agency would not consider Plaintiffs' permit request for distilling at home. The government's line of argument, to the effect that the statements of its agent shouldn't actually be relied upon, is both unserious and mildly disturbing.

In any event, the phone recording is just one piece of evidence that supports Plaintiffs' assertion of futility. Notably, Plaintiffs are not required to prove that submitting a permit request "would have been futile"; they are only required to make a "substantial showing." *See Ellison v. Connor*, 153 F.3d 247, 255 (5th Cir. 1998). Even the government effectively acknowledges (at 5) that Prince succeeded in doing that by specifically identifying "a prohibited location" for distilling. In addition to the phone recording, Plaintiffs have provided agency regulations (27 C.F.R. § 19.52(a)), the agency's website (TTB, Home Distilling (last accessed January 30, 2025),

https://www.ttb.gov/distilled-spirits/penalties-for-illegal-distilling), and the statute at issue. Summed up, these facts show almost conclusively that submitting a permit request to distill at home would be futile; these facts provide far more than the "substantial showing" of futility that Plaintiffs were required to make. The government's arguments to the contrary are meritless.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's holding that the Cross-Appellants lack standing and remand to the district court to consider the appropriate remedy for Cross-Appellants.


Dated: January 31, 2025

Respectfully submitted,

/s/ *Devin Watkins*
Devin Watkins
COMPETITIVE ENTERPRISE INSTITUTE
1310 L Street NW, 7th Floor
Washington, DC 20005
(202) 331-1010
devin.watkins@cei.org

Dan Greenberg
Box 3472
Little Rock, AR 72203

dngrnbrg@gmail.com

Andrew M. Grossman
Kristin Shapiro
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W.
Suite 1100
Washington, D.C. 20036
(202) 861-1697
agrossman@bakerlaw.com

Robert Alt
THE BUCKEYE INSTITUTE
88 East Broad Street
Suite 1300
Columbus, OH 43215
(614) 224-4422
robert@buckeyeinstitute.org


*Counsel for Plaintiffs-Appellees/Cross-Appellants*

## CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rules of Appellate Procedure 27(d)(2)(A) because it contains 3709 words, excluding the parts exempted by Rule 32(f); and (2) the typeface and type style requirements of Rule 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word (the program used for the word count).

/s/ *Devin Watkins*
Devin Watkins

## CERTIFICATE OF SERVICE

I, Charles Devin Watkins, hereby certify that this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1.

/s/ *Devin Watkins*
Devin Watkins